**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| _____ | ) | |
| MICHAEL T. DREHER, | ) | |
| *Individually and on behalf of a class of* | ) | |
| *similarly situated persons*, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 3:11-CV-00624-JAG |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC., | ) | |
| CARDWORKS, INC., and | ) | |
| CARDWORKS SERVICING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF AUTHORITIES

**Page**

CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................8

*Birmingham v. Experian Info. Solutions, Inc.*,
    633 F.3d 1006 (10th Cir. 2011) ....................................................12, 17

*Guimond v. Trans Union Credit Info. Co.*,
    45 F.3d 1329 (9th Cir. 1995) ........................................................11, 13

*Levine v. World Fin. Network Nat'l Bank*,
    554 F.3d 1314 (11th Cir. 2009) ...............................................9, 11, 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..................................................................................8

*Murray v. GMAC Mortgage Co.*,
    532 F. Supp. 2d 938 (N.D. Ill. 2007) ................................................12

*Murray v. New Cingular Wireless Servs., Inc.*,
    523 F.3d 719 (7th Cir. 2008) .................................................................9

*News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*,
    597 F.3d 570 (4th Cir. 2010) .................................................................8

*Safeco Insurance Co. of America v. Burr*,
    551 U.S. 47 (2007)........................................................................ passim

*Sheldon v. Experian Info. Solutions, Inc.*,
    No. 08-5193, 2010 WL 3768362 (E.D. Pa. Sept. 28, 2010)...................12

*Underland v. Alter*,
    No. 10-3621, 2011 BL 332419 (E.D. Pa. Sept. 9, 2011) .......................4

STATUTES

15 U.S.C. § 1681 *et seq.*..............................................................................1

15 U.S.C. § 1681a(d) ...................................................................................2

15 U.S.C. § 1681a(f) ....................................................................................2

15 U.S.C. § 1681e(b) .................................................................................16

15 U.S.C. § 1681g(a)(2) ............................................................................................ passim

OTHER AUTHORITIES

16 C.F.R. pt. 600 app. ...........................................................................................11

Fed. R. Civ. P. 26(a)(1) ......................................................................................7, 8

Fed. R. Civ. P. 56(a) ...............................................................................................8

Federal Deposit Insurance Corporation, *Report No. MLR-11-002, Material Loss Review*
*of Advanta Bank Corp., Draper, Utah* ................................................................2, 3

FTC, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report*
*with Summary of Interpretations* (July 2011), *available at*
http://www.ftc.gov/os/2011/07/110720fcrareport.pdf ........................................11

CFPB, Guidance Documents, http://www.consumerfinance.gov/guidance ................................12

FCRA – Staff Opinion Letters, http://www.ftc.gov/os/statutes/fcra/index.shtm ..........................12

## I.      INTRODUCTION

Experian Information Solutions, Inc. ("Experian") moves for partial summary judgment on Plaintiffs' Class Claims (Counts One, Two, and Three) as to the issue of willful noncompliance with the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*  Plaintiff cannot satisfy the stringent summary judgment threshold for FCRA willfulness claims established by *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007).  Under *Safeco*, the defendant is entitled to summary judgment unless the plaintiff can show that the alleged conduct violated *clearly established law—i.e.*, unless the defendant's conduct was plainly unlawful under (1) "pellucid" statutory text or (2) federal Court of Appeals rulings or authoritative agency interpretation, the defendant is entitled to summary judgment as a matter of law.

The plaintiff cannot even arguably make that required showing here.  Plaintiff alleges that Experian failed to properly disclose "[t]he source[] of the information," 15 U.S.C. § 1681g(a)(2), for debts on Advanta Bank Corp. credit cards after Advanta Bank Corp. went into receivership.  Plaintiff contends that Experian erred by reporting the source of information for these debts as "Advanta Bank" rather than reporting "CardWorks," the name of the new *servicer* of Advanta Bank Corp. originated accounts.  This claim fails to establish *any* violation of the FCRA, let alone a willful violation.

First, Experian's identification of "Advanta Bank" as the source of Advanta credit card debts was entirely reasonable and proper under § 1681g(a)(2).  The name "Advanta" was far more likely to be helpful to consumers in identifying the debt at issue, as consumers would be far more likely to recognize Advanta, which issued the credit cards, than CardWorks, a mere servicer that did not issue the cards or own the accounts.  Reporting CardWorks as the source of information for Advanta Bank Corp. originated accounts would only confuse consumers.

Second, even assuming *arguendo* that this interpretation of § 1681g(a)(2) is incorrect, Experian is indisputably entitled to summary judgment under *Safeco*.  At the times relevant to the complaint (and continuing to today), there was *no* authority—let alone "pellucid" statutory text or binding court or agency authority, as required by *Safeco*—establishing that a servicer is the "source" of the information in a consumer's file, rather than the name of the originating credit card issuer.  Under those circumstances, *Safeco* requires summary judgment for the defendant on an FCRA willfulness claim.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.   Experian Reported Advanta Account Information On Plaintiff's Consumer Report

1.     Experian is a consumer reporting agency ("CRA"), within the definition of 15 U.S.C. § 1681a(f), that regularly engages in the business of assembling, evaluating, and disbursing consumer reports, as defined in 15 U.S.C. § 1681a(d).   Dkt. No. 22 (Experian's Answer to Pl.'s Second Am. Compl. ¶ 8).

2.     On November 16, 2010, Experian sent consumer report #0141-8051-78 to Plaintiff, which contained the trade line[1] "Advanta Bank."  *Id.* ¶ 13.

### B.   Advanta Bank Corp. Had A Complicated Business Model

3.     Advanta Bank Corp., Draper, Utah, issued small business credit cards ("Advanta Bank Corp. originated accounts").  Clark Decl., Ex. A (Office of Material Loss Reviews, Federal Deposit Insurance Corporation, *Report No. MLR-11-002, Material Loss Review of Advanta Bank Corp., Draper, Utah* 2 (October 2010) ("*Material Loss Review*")).

---

[1] A "trade line" is an entry in a consumer's credit history that describes a consumer's account status and activity.  *See* Henke Decl. ¶ 9.

4.     Advanta Bank Corp. was wholly-owned by Advanta Corp., located in Spring House, Pennsylvania, and had one subsidiary, Advanta Business Receivables Corp.  *Id.*

5.     Advanta Business Receivables Corp. acquired certain of Advanta Bank Corp.'s receivables pursuant to a Receivables Purchase Agreement, dated August 1, 2000.  Clark Decl., Ex. B (Underwriting Agreement among Advanta Business Receivables Corp., Advanta Bank Corp., and Deutsche Bank Securities Inc. and Greenwich Capital Markets, Inc., each as a representative of the Underwriters, section 1 (Oct. 31, 2007) ("Underwriting Agreement")).

6.     Advanta Business Receivables Corp. then transferred those receivables to the Advanta Business Card Master Trust, pursuant to a Transfer and Servicing Agreement, dated August 1, 2000.  *Id.*

7.     The Advanta Business Card Master Trust was a common law trust formed pursuant to a Trust Agreement, dated August 1, 2000, between the Advanta Business Receivables Corp. and Wilmington Trust Company, as owner trustee.  *Id.*

8.     The Advanta Business Card Master Trust issued asset backed notes pursuant to a Master Indenture, dated August 1, 2000, between the Advanta Business Card Master Trust and Deutsche Bank Trust Company Americas, as indenture trustee.  *Id.*  As the issuer of notes, the Advanta Business Card Master Trust is referred to as the "Issuer."  *Id.*

9.     The assets of the Advanta Business Card Master Trust included the receivables and payments thereon in a portfolio of MasterCard and VISA revolving business purpose credit card accounts originated by Advanta Bank Corp.  *Id.*

10.     The Transfer and Servicing Agreement, dated August 1, 2000, among Advanta Business Receivables Corp., Advanta Bank Corp., and the Advanta Business Card Master Trust, named Advanta Bank Corp. as the servicer of the receivables transferred to the Advanta Business

Card Master Trust. *Id.*  As the servicer of the receivables, Advanta Bank Corp. is referred to as the "Servicer." *Id.*

11.     Advanta Bank Corp. received cash upon the sale of the above-mentioned receivables to the Advanta Business Card Master Trust, but retained an interest in the receivables. *Underland v. Alter*, No. 10-3621, 2011 BL 332419, at *2 (E.D. Pa. Sept. 9, 2011).

12.     Advanta Bank Corp. granted a security interest in the receivables to Deutsche Bank Trust Company Americas for the benefit of the Noteholders pursuant to a letter agreement dated August 1, 2000, between Advanta Bank Corp. and Deutsche Bank Trust Company Americas.  Clark Decl., Ex. B (Underwriting Agreement, section 1).

**C.     CardWorks Began Servicing Advanta Bank Corp. Originated Accounts After The Bank Went Into Receivership**

13.     On March 19, 2010, the Utah Department of Financial Institutions closed Advanta Bank Corp. and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. Clark Decl., Ex. A (*Material Loss Review* at 1).

14.     The appointment of the FDIC as receiver for Advanta Bank Corp. caused a "Servicer Default" under the Transfer and Servicing Agreement, dated August 1, 2000.  Clark Decl., Ex. C (Notice of Termination of Advanta Bank Corp. as Servicer and Appointment of Successor Servicer (July 20, 2010) (Nowell Dep. Ex. 2, at CWS 1395–98)).

15.     As the Indenture Trustee, and with consent and agreement of the FDIC, Deutsche Bank Trust Company Americas appointed CardWorks, Inc. and CardWorks Servicing, LLC to act jointly as the "Successor Servicer." *Id*. at CWS 1396.

16.     As the Successor Servicer, neither CardWorks Servicing, LLC nor CardWorks, Inc. is the owner of the Advanta Bank Corp. originated accounts being serviced. *See* Clark Decl., Ex. C (Nowell Dep. 62:5–25).

-4-

17.     Before November 12, 2010, Vion Holdings II, LLC bid and won the right to the revenue stream associated with the assets of the Advanta Business Card Master Trust—*i.e.*, Vion Holdings became the "owner" of the cash flow from certain Advanta Bank Corp. originated accounts.  *See id*. at 62:17–63:7.

**D.     Credit Reporting For Advanta Bank Corp. Originated Accounts Involves Many Players**

18.     In its role as servicer, CardWorks Servicing manages the credit reporting process for Advanta Bank Corp. originated accounts.   *See id*. at 71:12–19; s*ee also*  Dkt. No. 29 ( CardWorks Servicing, LLC's Answer to Pl.'s Second Am. Compl. ¶¶ 3, 10).

19.     First Data Resources ("FDR") is the system of record for Advanta Bank Corp. originated accounts.  *See* Clark Decl., Ex. C (Nowell Dep. 80:11–17).

20.     Based on automatic settings within the system, FDR supplies electronic information regarding Advanta Bank Corp. originated accounts to Experian and other credit reporting agencies.  *See id*. at 78:22–79:13.

21.     The service of transmitting account information to CRAs is part of First Data's financial services segment, which has over 50 million accounts in its pipeline.  *See* Clark Decl., Ex. D (First Data Corporation, Form 10-K, at 7 (Mar. 5, 2012)).

22.     FIS provides a lockbox service for Advanta Bank Corp. originated accounts.  *See* Clark Decl., Ex. C (Nowell Dep. 81:7–12).

23.     As a lockbox provider, FIS receives and posts payments to the system of record— *i.e.*, FIS posts payments to Advanta Bank Corp. originated accounts and sends the electronic files with such information to FDR.  *See id*. at 80:22–81:16.

**E.      Like The FDIC And CardWorks, Experian Used The Name Consumers Would Likely Recognize**

24.      After CardWorks Servicing, LLC began performing its duties as the Successor Servicer for certain Advanta Bank Corp. originated accounts, Tom Wineland of the FDIC explained that the FDIC would direct "all complaints/correspondence . . . to the Advanta [C]redit Card servicer for resolution."  Clark Decl., Ex. C (Email from T. Wineland, Post Closing Asset Manager, FDIC, dated (Aug. 3, 2010) (Nowell Dep. Ex. 2, at CWS 1393–94, 1393)).

25.      The FDIC would send all written correspondence to "Advanta Credit Cards, P.O. Box 9217, Old Bethpage, NY 11804-9217" and provide 1-800-705-7255 to cardholders requesting a telephone number.  *Id.*

26.      Mr. Wineland pointed out that the above-mentioned 800 number is "the same phone number that was used by [Advanta Bank Corp.] prior to August 1, 2010."  *Id.*

27.      In order to service the Advanta Bank Corp. originated accounts, CardWorks would utilize the website www.advantabankcorp.com and use the name "Advanta Credit Cards" because, as Mr. Wineland explained, CardWorks "does not use its name when servicing credit card portfolios for others."  *Id.* at CWS 1394.

28.      In October 2010, Experian received a letter signed by "authorized representatives" of the FDIC as Receiver for Advanta Bank Corp., a former Advanta Bank Corp. employee who was assisting the FDIC with the operational transition, and CardWorks Servicing, which explained CardWorks' role as servicer and requested that trade lines for certain Advanta Bank Corp. originated accounts be reported as "Advanta Credit Cards."  Clark Decl., Ex. C (Letter from B. Bennett to K. Cosier (Oct. 4, 2010) (Nowell Dep. Ex. 14, at CWS 1318)).

29.     After a series of discussions with the parties involved in the management of Advanta Bank Corp. originated accounts, Experian created a new subscriber code for purposes of reporting Advanta accounts.  Henke Decl. ¶ 13.

30.     On October 21, 2010, James Kilka, an account executive at Experian, emailed CardWorks Servicing to confirm that the trade lines linked to the new subscriber code should read "Advanta Credit Cards" on consumer reports.  Clark Decl., Ex. E (Email from J. Kilka to B. Bennett, et al. (Oct. 21, 2010) (Kilka Dep. Ex. 8 at EXPDREH000172)).

31.     Experian does not have a written policy regarding the way a trade line's associated subscriber[2] name must appear in a consumer's report.  Henke Decl. ¶ 10.

32.     Experian's common practice is to use an associated subscriber name that will aid the consumer in recognizing the obligation so that the consumer can correct any inaccuracies or lodge disputes if necessary.  *Id*.

**F.     Plaintiff Filed A Dispute With Advanta And Received A Response**

33.     On March 17, 2011, Plaintiff sent a letter to Advanta Bank, P.O. Box 844, Spring House, PA 19477, the address listed on his November 2010 Experian consumer report.  Clark Decl., Ex. F (Pl.'s Fed. R. Civ. P. 26(a)(1) Disclosures at Dreher - 000083–84).  Plaintiff disputed the delinquency attributed to him and requested validation of the debt.  *Id*.

34.     Plaintiff sent substantially similar letters to Advanta Credit Cards, P.O. Box 9217, Old Bethpage, NY 11804 on March 17, 2011, and April 15, 2011.  *Id*. at Dreher - 000037–40.

---

[2] "Subscribers are credit grantors that have a contractual relationship with one or more of the [credit reporting agencies] to purchase products or services and/or to furnish information." Henke Decl. ¶ 7.

35.   On April 18, 2011, Advanta Credit Cards responded to Plaintiff and provided copies of an on-line credit application and a billing statement dated March 7, 2011.  *Id*. at Dreher - 000042–45.

## III.   STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make an adequate showing on an essential element for which it has the burden of proof at trial." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).  In this case, Plaintiff has the burden of proof as to the issue of willfulness.

"[T]he mere existence of *some* alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the [litigation] . . . will properly preclude the entry of summary judgment."  *Id*. at 248.  Once the moving party shows there is no genuine issue of material fact, the non-moving party then "must come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation omitted).

## IV.   ARGUMENT

### A.   No Willful Violation Of The FCRA Occurred When Experian Reported "Advanta Bank" As The Source Of Account Information

Experian's reporting of "Advanta Bank" as the source of information regarding Advanta Bank Corp. originated accounts was not a willful violation of its obligations under the FCRA, if

a violation at all.  For claims of a willful FCRA violation, *Safeco* imposes a stringent threshold hurdle, to be applied by the court at summary judgment as a pure question of law without reference to the defendant's intent or other subjective factors.  551 U.S. at 70 n.20; *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1319 (11th Cir. 2009); *see also Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 726 (7th Cir. 2008) (noting that standard for willfulness announced in *Safeco* is "objective").  Under that test, even where a defendant has violated a provision of the FCRA, it is entitled to summary judgment on willfulness unless the conduct at issue was, at the time it occurred, clearly established as unlawful by either "pellucid" statutory text or "authoritative" interpretations of that text by the courts of appeals or the responsible federal agency.  *Safeco*, 551 U.S. at 70; *see also Levine*, 554 F.3d at 1318–19.

This test aims to ensure that defendants are not faced with the potentially crushing damages available in willfulness actions unless "the company ran a risk of violating the law substantially greater than the risk associated with a reading [of the FCRA] that was merely careless."  *Safeco*, 551 U.S. at 69; *see Levine*, 554 F.3d at 1318.  In particular, *Safeco* requires the plaintiff to show that the conduct alleged was *clearly unlawful* at the time it occurred.  Analogizing to the test for qualified immunity, *Safeco* held that—even if a defendant's reading of the FCRA turns out to be erroneous—it does not act willfully unless its conduct was "objectively unreasonable" in light of "legal rules that were 'clearly established' at the time." 551 U.S. at 69–70 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  Thus, the defendant cannot be liable for willfully violating the FCRA unless it violated pellucid statutory text or authoritative direction from a circuit court or the responsible federal agency that compelled the plaintiff's interpretation.  *Safeco*, 551 U.S. at 70; *Levine*, 544 F.3d at 1318–19.  So long as the

view that the defendant's conduct was lawful "could reasonably have found support in the courts," the defendant is entitled to summary judgment. *Safeco*, 551 U.S. at 70 n.20.

Here, Experian's reporting of "Advanta Bank" as the source of information regarding Advanta Bank Corp. originated accounts plainly was not "objectively unreasonable" under *Safeco*, as there was no authority—let alone clearly established authority—that this approach was unlawful under the FCRA. Indeed, Experian's identification of Advanta Bank as the source was far more reasonable an interpretation of § 1681g(a)(2)—and more consistent with the purposes of the FCRA—than Plaintiff's contention that Experian should have identified CardWorks, which would have been highly likely to confuse consumers. Accordingly, Experian is entitled to judgment as a matter of law on the issue of willfulness as it relates to Plaintiff's Class Claims.

**1.     The Complete Absence Of Contrary Authority Regarding The Reporting Of Credit Card Accounts Originated By Banks Before Going Into Receivership Is Dispositive Under *Safeco***

No legal guidance exists to say how a CRA should report the source of information regarding accounts originated by banks that subsequently went into receivership with the FDIC, and the FCRA offers no explanation or elaboration—let alone a "pellucid" one—of what entity should be deemed the "source" in such circumstances. That alone is dispositive under *Safeco*, which requires summary judgment in the absence of such definitive authority establishing the unlawfulness of the defendant's alleged conduct. 551 U.S. at 70.

In particular, it is only as a result of the recent financial crisis that CRAs have had to deal with the ramifications of bank failures as they relate to credit reporting. *See* Henke Decl. ¶ 12. Consequently, neither the Federal Trade Commission ("FTC") nor the Consumer Financial Protection Bureau ("CFPB") nor the courts have considered the precise issue of how to report the source of information for credit card accounts originated by banks before going into receivership.

Taking an even broader view of the issue to be decided on summary judgment, no authoritative legal guidance exists regarding whether the bank that originally issued a credit card to a consumer, the credit card servicer, or another stakeholder must be deemed the "source" of a trade line in a consumer's credit disclosure.

Plaintiff's class claims hinge on the interpretation of § 1681(g)(a)(2), which requires a CRA to clearly and accurately disclose "[t]he sources of the information" in the consumer's file upon request by the consumer. When analyzing whether a party acted in reckless disregard of the FCRA, "[w]hat matters under *Safeco* is the text of the Act and authoritative interpretations of that text." *Levine*, 554 F.3d at 1319. The FCRA does not define the word "source." *See* § 1681a. A thorough review of FCRA case law does not reveal an accepted definition for the word "source" either. As one Court of Appeals has stated regarding § 1681(g)(a)(2), "there is a paucity of case law interpreting this provision." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1334 (9th Cir. 1995).

Furthermore, "no authoritative guidance" regarding § 1681(g)(a)(2) "has yet to come from the FTC" or the CFPB. *See Safeco*, 551 U.S. at 70. There is nothing in the FTC Staff Summary of Interpretations that helps clarify the meaning of "source" as used in the FCRA. *See* Clark Decl., Ex. G (FTC, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations* (July 2011), *available at* http://www.ftc.gov/os/2011/07/110720fcrareport.pdf (incorporating portions of the FTC's withdrawn "Commentary on the Fair Credit Reporting Act," formerly 16 C.F.R. pt. 600 app.)). Nor are there any FTC staff opinion letters that analyze the issue.[3] *See* FCRA – Staff Opinion

---

[3] The Supreme Court has recognized that FTC staff opinion letters are "'not binding on the Commission.'" *Safeco*, 551 U.S. at 70 n.19.

Letters (1997–2001), http://www.ftc.gov/os/statutes/fcra/index.shtm (last visited Sept. 14, 2012). Finally, the CFPB has not issued any guidance documents that treat the issue of the true "source" of the information in a consumer's credit report. *See* CFPB, Guidance Documents, http://www.consumerfinance.gov/guidance (last visited Sept. 14, 2012).

Since the Supreme Court decided *Safeco*, lower courts routinely grant summary judgment as to claims of willful violations where there is no clear judicial authority or administrative guidance with regard to a particular FCRA obligation and the defendant acted in an objectively reasonable manner in the absence of such legal authority. *See, e.g.*, *Levine*, 554 F.3d at 1318–19 (affirming summary judgment where "[t]he text of the Act is far from 'pellucid'" and "judicial opinions [had not] established that the Act forbids the sale of reports for consumers whose accounts are closed"); *Birmingham v. Experian Info. Solutions, Inc.*, 633 F.3d 1006, 1009–12 (10th Cir. 2011) (affirming summary judgment where the court saw "no described practice that would be a reckless violation of the FCRA"); *Murray v. GMAC Mortgage Co.*, 532 F. Supp. 2d 938, 943 (N.D. Ill. 2007) (granting summary judgment where at the time of the Defendant's actions, "there was a relatively limited and somewhat inconsistent universe of authority on this subject"); *Sheldon v. Experian Info. Solutions, Inc.*, No. 08-5193, 2010 WL 3768362, at *4 (E.D. Pa. Sept. 28, 2010) (granting summary judgment in part because no legal authority supported plaintiff's claim).

Experian interpreted the FCRA to permit reporting "Advanta Bank" as the source of information regarding Advanta Bank Corp. originated accounts. Like in *Safeco*, "[t]his is not a case in which the business subject to the Act had the benefit of guidance from the courts of appeals or the Federal Trade Commission (FTC) that might have warned it away from the view it took." 551 U.S. at 70. "Given this dearth of guidance and the less-than-pellucid statutory text,

[the defendant]'s reading was not objectively unreasonable, and so falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability."  *Id.*

> **2.**    **In Any Event, It Was Far From Objectively Unreasonable To Report "Advanta Bank" As The Source Of Account Information When Multiple Parties Are Involved In The Ownership And Management Of Advanta Bank Corp. Originated Accounts**

Even aside from the absence of clearly-established authority that is dispositive under *Safeco*, it was not objectively unreasonable to report "Advanta Bank" as the source of account information for Advanta Bank Corp. originated accounts.  Multiple parties are involved in the ownership and management of the credit card accounts issued by Advanta Bank Corp., which is now in receivership with the FDIC, and Experian's designation of "Advanta Bank" as the source was eminently reasonable.

"[T]he purpose of the FCRA [is] to promote the accuracy of information in a consumer credit report." *Guimond*, 45 F.3d at 1334; *see also* § 1681(a)(1).  Accordingly, CRAs must provide "[t]he sources of the information" in a consumer's file so that a consumer can correct any inaccuracies. *See* § 1681g(a)(2).

There are at least eight known entities currently involved in the ownership and management of Advanta Bank Corp. originated accounts, including (1) the FDIC; (2) Wilmington Trust Company; (3) Deutsche Bank Trust Company Americas; (4) Vion Holdings II, LLC; (5) CardWorks, Inc., (6) CardWorks Servicing, LLC; (7) FIS; and (8) FDR.  *Supra* ¶¶ 3–23.

Of these entities, FDR is the technical "source"[4] of information that appears in consumer reports regarding Advanta Bank Corp. originated accounts.  FDR is the system of record that

---

[4] Plaintiff's counsel defined "source" as "one that supplies information."  Clark Decl., Ex. C (Nowell Dep. 79:2–4).

automatically sends the electronic files to Experian and other credit reporting agencies on a periodic basis. *Supra* ¶¶ 19–20. No one asserts, however, that trade lines regarding Advanta Bank Corp. originated accounts should list FDR as the source of the information. No one would make such an argument because most trade lines in consumer credit reports would have the same source, FDR, *see supra* ¶ 21, creating confusion and rendering the reports virtually useless. Furthermore, listing FDR would not help consumers correct inaccuracies in reports because FDR simply provides the electronic system through which information is automatically transmitted to the CRAs and, therefore, would have no knowledge of consumers' account details.

The credit card servicer is not necessarily the "source" of the information in a consumer's file either. A credit card servicer is an agent that acts on behalf of a credit grantor. *See* Henke Decl. ¶ 14. CardWorks is not the owner of the Advanta Bank Corp. originated accounts it services. *Supra* ¶ 16. In fact, there are a number of entities involved in the "ownership" of Advanta Bank Corp. originated accounts. *See supra* ¶¶ 5–12, 17. Furthermore, listing "CardWorks" as the source of the information in credit reports would likely confuse consumers who opened accounts with Advanta Bank Corp. because they would not recognize the obligation.

Experian attempts to be as accurate as possible in reporting the source of information in a consumer's file. While Experian does not have a written policy regarding the way a trade line's associated subscriber name appears in a consumer's report, Experian's common practice is to utilize a trade line containing the name of the credit grantor. Henke Decl. ¶ 10. "[T]he specific format of a trade line's associated subscriber name is determined on a case-by-case basis through discussions with the subscriber. Experian's ultimate goal with regard to the manner in which it reports a trade line's associated subscriber name is to aid the consumer in recognizing the

obligation so that the consumer can correct any inaccuracies or lodge disputes if necessary." *Id* ¶ 13.

In this case, Experian determined that using the "Advanta" name was the best approach to assist consumers, like Plaintiff, to identify their obligations and/or correct any inaccuracies regarding Advanta Bank Corp. originated accounts. After "authorized representatives" of the FDIC, the former Advanta Bank Corp., and CardWorks Servicing approved the continued use of the "Advanta" name in consumer trade lines, *see supra* ¶ 28,, Experian's account executive handling the transition to the new reporting subscriber code for Advanta Bank Corp. originated accounts double-checked with CardWorks Servicing to make sure the trade line's associated subscriber name was accurate. *See supra* ¶ 30; Clark Decl., Ex. E (Kilka Dep. 36:21–37:21).

Experian's use of the "Advanta" name also comports with the FDIC's approach in dealing with Advanta Bank Corp. originated accounts. A representative of the FDIC explained that the CardWorks name would not be provided to cardholders. Clark Decl., Ex. C (Nowell Dep. Ex. 2 at CWS 1394). Instead, the FDIC would continue to use the "Advanta" name in reference to cardholder complaints and correspondence for the duration of the receivership. *Id.* at 1393–94. Additionally, CardWorks would use the website www.advantabankcorp.com, as well as the same customer service number Advanta Bank Corp. previously used. *Supra* ¶ 25–27.

Notably, by utilizing the information Experian reported, Plaintiff was able to file a dispute with Advanta. *See supra* ¶ 33. Subsequently, Advanta Credit Cards responded to Plaintiff and provided documentation associated with the Advanta Bank Corp. account in question. *Supra* ¶ 35.

Given (1) the numerous entities involved in the ownership and management of Advanta Bank Corp. originated accounts; (2) the authorization to report the "Advanta" name in consumer

trade lines Experian received; (3) the FDIC's continued use of the "Advanta" name in response to cardholder complaints and correspondence; and (4) Plaintiff's ability to file a dispute utilizing the information provided in his consumer report, Experian's conduct was objectively reasonable. At a minimum, Experian's reporting of "Advanta Bank" as the source of information regarding Advanta Bank Corp. originated accounts was not objectively unreasonable because it provides the information necessary for consumers to correct inaccuracies or lodge disputes, fulfilling the underlying purpose of the FCRA.

## V.     CONCLUSION

Under *Safeco*, the absence of authority clearly establishing (or, indeed, even suggesting) the unlawfulness of Experian's interpretation of § 1681g(a)(2) compels summary judgment for Experian.  Nor, in any event, did anything about Experian's conduct regarding Advanta Bank Corp. originated accounts demonstrate reckless disregard for the rights of consumers under the FCRA.

Accordingly, even if Experian failed to comply with its obligations under 15 U.S.C. § 1681e(b) (Count One), § 1681i(a)(6) (Count Two), and § 1681g(a)(2) (Count Three), which Experian denies, Experian is entitled to summary judgment as a matter of law on Plaintiff's claims for a willful violation of the FCRA.  For the foregoing reasons, Experian respectfully requests that the Court grant partial summary judgment in favor of Experian on the issue of willfulness as it relates to Plaintiff's Class Claims (Counts One, Two, and Three).

Dated:  October 5, 2012          Respectfully submitted,

                                      */s/ Joseph W. Clark*
                                      Joseph W. Clark (VSB No. 42664)
                                      JONES DAY
                                      51 Louisiana Avenue, NW
                                      Washington, DC  20001
                                      Tel: 202.879.3697
                                      Fax: 202.626.1700
                                      jwclark@jonesday.com

                                      *Counsel for Defendant Experian Information Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of November, 2012, I electronically filed a copy of

the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of

such filing (NEF) to the following:

Leonard Anthony Bennett
Consumer Litigation Associates, PC
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: 757.930.3660
Fax: 757.930.3662
lenbennett@clalegal.com
*Counsel for Plaintiff*

Kristi Cahoon Kelly
Surovell Isaacs Petersen & Levy PLC
4010 University Dr., Suite 200
Fairfax, VA 22030
Tel: 703.251.5400
Fax: 703.591.9285
kkelly@siplfirm.com
*Counsel for Plaintiff*

Susan Mary Rotkis
Consumer Litigation Associates, PC
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: 757.930.3660
Fax: 757.930.3662
srotkis@clalegal.com
*Counsel for Plaintiff*

Dated:  November 2, 2012

*/s/ Joseph W. Clark*
Joseph W. Clark (VSB No. 42664)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001
Tel: 202.879.3697
Fax: 202.626.1700
jwclark@jonesday.com

*Counsel for Defendant Experian Information
Solutions, Inc.*