*Exhibit "G"*

Case 3:13-cv-00724-JAG DRRP Document 76-14 Filed 17/14/126/06/08 2 P 18 PageID # 1535
Kimberly Hughes                    Robert Gorman v. Experian Information Solutions, et al

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

ROBERT GORMAN,                        *
                                      *
            Plaintiff,                *
                                      *
VS.                                   *  Case No. 07 CV 1846
                                      *
EXPERIAN INFORMATION SOLUTIONS, *
INC., EQUIFAX INFORMATION         *
SERVICES, INC., and HSBC          *
MORTGAGE SERVICES, INC.,          *
                                      *
            Defendants.               *


ORAL DEPOSITION OF

KIMBERLY HUGHES

JANUARY 25, 2008

CONFIDENTIAL


        On the 25th day of January, 2008, at ^ 11:00

a.m., the oral deposition of the above-named witness

was taken at the instance of the Plaintiff, Robert

Gorman, before Sandi L. Voigt, Certified Shorthand

Reporter in and for the State of Texas, at the offices

of Jones Day, located at 2727 North Harwood, in the

City of Dallas, County of Dallas, State of Texas,

pursuant to Notice and the agreements hereinafter set

forth.

Case 3:11-cv-00524-JAG4-DEP Document 76-14nt Filed 12/14/126/08/08.3 Page 18aof4ID# 1536 et al

```
 1    to have reviewed the documents first.

 2         Q.    (BY MR. MALLON)  Okay.  Were these documents

 3    forwarded to HSBC?

 4         A.    No.

 5         Q.    Okay.  Were any documents forwarded to HSBC

 6    in this case?

 7         A.    The -- we transmitted the contents of the

 8    ACDV form which indicated a description of the

 9    documents that we had received.

10         Q.    Okay.  So is that a no?

11               MR. GIBBS:  Objection.

12         A.    No, sir.  That was my answer to your

13    question.  There was -- there was a document

14    transmitted electronically which was the ACDV form

15    which contained a description of the document.

16         Q.    (BY MR. MALLON)  Okay.  Other than the ACDV

17    form, was there anything transmitted to HSBC in this

18    case?

19               MR. GIBBS:  Objection, asked and

20    answered.

21         A.    No, sir.

22         Q.    (BY MR. MALLON)  Okay.  So Mr. Gorman's

23    letter, which would be page 2 of Exhibit 7, was never

24    forwarded to HSBC; is that correct?

25               MR. GIBBS:  Objection, asked and
```

Kimberly Hughes vs Experian Information Solutions, Inc. et al

Page 33

1    answered.

2        A.    No, sir, it was not.

3        Q.    (BY MR. MALLON)  Why don't we go to the ACDV

4    which you're referring to which we've had marked as

5    Plaintiff's Exhibit 31.  And that would be probably the

6    third page of that that you're referring to, is that

7    right, Ms. Hughes?

8        A.    Yes, if we're -- if we're looking at the one

9    that is involving the letter that we just discussed.

10       Q.    And there's a -- up top, there is a box of

11   the Dispute Reason.  Do you see that?

12       A.    Yes.

13       Q.    Okay.  And after that, there's a number.  It

14   says 106?

15       A.    Yes.

16       Q.    And after that, it says, Disputes

17   Present/Previous Account Status, History.  Verify

18   Accordingly.

19       A.    Yes.

20       Q.    Okay.  What does the 106 refer to?

21       A.    It's the number for that dispute code in the

22   E-OSCAR system.

23       Q.    Okay.  What's the E-OSCAR system?

24       A.    The web base system that Experian uses along

25   with other reporting agencies and the creditors to

Case 3:11-cv-00724-JAG-DRP Document 76-14 Filed 11/14/12 Page 5 of 18 PageID# 1538

```
 1    transmit these dispute verification forms.

 2         Q.   Okay.  And you said -- you indicated there

 3    are certain codes that are used within that process?

 4              MR. GIBBS:  Objection to form.

 5         A.   Yes.

 6         Q.   (BY MR. MALLON)  Okay.  And what do those

 7    codes stand for?

 8         A.   The code translates to the text that you read

 9    into the record.

10         Q.   Okay.  So there are various codes that the

11    customer service rep can choose from when conveying a

12    dispute?

13         A.   Yes.

14         Q.   Okay.  And it is, in fact, the policy of

15    Experian that Experian never forwards documents other

16    than an ACDV to a furnisher of information as part of

17    its reinvestigation process; is that correct?

18              MR. GIBBS:  Objection to form,

19    mischaracterizes prior testimony.

20         A.   Experian does not transmit actual documents.

21    It does convey the contents of those documents or a

22    description of those documents in the verification

23    form.

24         Q.   (BY MR. MALLON)  Okay.  So it will describe

25    the documents, but it won't actually send the documents
```

Case 3:Case-00624-JAG4-DCPument Docicon Filent Filed 17Filed 12/14/06/08/08/08 Page 6 Page 18 Page ID# 1539
Kimberly Gaynes DOC 624-JAG4 Isabelle Gorman v. Wolpoff an Abergan Integration Officers, Inc., et al

Page 71

```
1    Zarlock.

2                    MR. GIBBS:  -- prior testimony.

3                    MR. OLSON:  Form.  Olson.

4         A.   Well, in the history grid to Experian, there

5    was a 90 day late being reported in May of 2002, so

6    there was a previous 90 day delinquency reported to

7    Experian.

8         Q.   (BY MR. MALLON)  Okay.  But they also -- at

9    that time, Experian -- HSBC also reported to Experian

10   that Mr. Gorman had been 180 days late on this account,

11   right?

12                   MR. GIBBS:  Objection to form.

13                   MR. ZARLOCK:  Objection to the form.

14   Zarlock.

15        A.   It did carry history through September of '02

16   which did have a 180 day delinquency.

17        Q.   (BY MR. MALLON)  Okay.  And then here it

18   appears that HSBC is telling Equifax that the worst

19   Mr. Gorman ever was was 90 days late, correct?

20                   MR. GIBBS:  Objection to form.

21                   MR. ZARLOCK:  Objection to the form.

22   Zarlock.

23        A.   At this time, yes, that's what's being -- it

24   looks like is being conveyed.

25        Q.   (BY MR. MALLON)  So you would agree that
```

Case 3:15-cv-00724-JAG-DRPP Document 76-14 Filed 11/14/16 Page 7 of 18 PageID# 1540

```
 1    that's a discrepancy, right?

 2                 MR. GIBBS:  Objection to form.

 3                 MR. OLSON:  Objection, form.

 4        A.    Again, I can't say.  I can't say if it was

 5    wrong the first time or if HSBC made some sort of

 6    decision to stop reporting certain information.  You

 7    would have to ask them that question.

 8        Q.    (BY MR. MALLON)  Okay.  But my only question

 9    is, you'd agree that they're different -- the

10    information is different?

11                 MR. GIBBS:  Objection to form --

12                 MR. OLSON:  Objection to form.

13                 MR. GIBBS:  -- asked and answered.

14        A.    Yes.  The reportings to Experian contained

15    additional late payments then as reported here.

16        Q.    (BY MR. MALLON)  Okay.  And what, if

17    anything, did Experian do in response to receipt of

18    this information?

19                 MR. GIBBS:  Objection to form.

20                 MR. ZARLOCK:  Objection to form.

21        A.    The transaction detail on this indicates that

22    Experian did not make any updates based on this because

23    our system is telling us that we had just received

24    direct contact back from the same creditor in response

25    to our own ACDV.  We received the response on
```

713-683-0401    Digital Court Reporting and Video    713-683-8935

```
 1   September 12th.  So seven days earlier, we had received

 2   direct contact from them.  And if it's within the same

 3   reporting period, we take our direct contact over a

 4   carbon copy because we don't necessarily have the same

 5   internal status codes as the other bureaus.

 6        Q.    (BY MR. MALLON)  Okay.  But a 3 is a -- a 3

 7   is 90 days no matter who it's being reported to,

 8   correct?

 9                  MR. GIBBS:  Objection to form --

10                  MR. OLSON:  Objection to the form.

11                  MR. GIBBS:  -- asked and answered.

12        A.    That's correct, but they may be cutting their

13   history off on a certain date.  We wouldn't be aware.

14   And again, seven days earlier we had received a direct

15   response from the creditor, and we take our direct

16   contact with them over a carbon copy from another

17   bureau during the same period.

18        Q.    (BY MR. MALLON)  So you'll -- basically

19   you'll go with what they're telling Experian as opposed

20   to what they've told Equifax seven days later?

21                  MR. ZARLOCK:  Objection to form.

22                  MR. GIBBS:  Objection to form,

23   mischaracterizes her testimony.

24        A.    If it --

25                  MR. OLSON:  Objection to form.  Olson.
```

Case 3:11-cv-00524-JAG-DRP Document 76-14 Filed 17/14/26/06/08/9 Page 8 of 4D# 1542
Exhibit ... Styles ... 00524-JAG-DRP ... Document 76-14 ... Filed ... LaRelle ... /Page ... Image ... Johnson, Inc et al

1       A.    If it happens that close to our direct

2    contact, yes.  If it happens outside of 30 days within

3    our direct contact, if we're able to decipher the

4    updates, we'll take them.

5            Q.    (BY MR. MALLON)  Okay.  So 30 days is

6    basically the cutoff?

7                  MR. GIBBS:  Objection to form.

8       A.    Yes.

9            Q.    (BY MR. MALLON)  Okay.  And then you said

10   again, able to decipher -- able to decipher this

11   information.  Is that the term you used?

12      A.    Yes.  There may be codes that the other

13   bureau uses that we don't have.  So if we don't have

14   their codes, we can't cross up the information.  But if

15   we're able to make updates based on the response, we'll

16   do so.

17           Q.    Okay.  And who were you getting this

18   information from?  Is it from Equifax?  Is it from HSBC

19   or is it from E-OSCAR?

20                 MR. GIBBS:  Objection to form, asked and

21   answered.

22      A.    Well, technically, it's from both because the

23   sum of this form contains information from Equifax and

24   from HSBC.  It does come through E-OSCAR, but I can't

25   answer for you the technicalities of whose response

Case 3:Case 05:62-JAG4Document 76-11 Filed 12/14/12 6/26/08 10 Page 10 Page ID# 1543t al

1    actually triggers the notification.

2         Q.    (BY MR. MALLON)  Okay.  But the information

3    comes directly from E-OSCAR to Experian, correct?

4         A.    Yes.

5         Q.    Okay.  The information did not in this case

6    come from HSBC, correct?

7              MR. ZARLOCK:  Objection to the form.

8              MR. GIBBS:  Objection to form.

9         A.    Technically, I can't answer that question.  I

10   don't know.  I mean, it's -- there's information

11   transpiring from -- from Household through E-OSCAR, so

12   if technically that means it came from them, you know,

13   I don't --

14        Q.    (BY MR. MALLON)  Okay.  But --

15        A.    I'm not -- I'm not a systems technical

16   person.  I just know that the carbon copies result from

17   that contact and it's sent to us through E-OSCAR.

18        Q.    Okay.  So you don't get anything directly

19   from HSBC.  It's just through E-OSCAR?

20             MR. GIBBS:  Objection to the form --

21             MR. ZARLOCK:  Objection to form.

22             MR. GIBBS:  -- asked and answered.

23        A.    We're being carbon copied, so to me, that is

24   not direct contact.

25        Q.    (BY MR. MALLON)  Okay.

Case 3:Case-00724-JAG4-ORPP-D-76-14-Filed-12/14/26/P6/08-1-Page-18-Page-16-# 1544 al

1          A.    It's a carbon copy.

2          Q.    And, in fact, before you indicated that you

3    were going to -- Experian's policy was to rely upon its

4    direct contact with the furnisher if it's within 30

5    days, correct?

6                    MR. GIBBS:   Objection to form.

7          A.    That's correct.

8          Q.    (BY MR. MALLON)   So obviously Experian makes

9    the distinction between a direct contact from HSBC as

10   indicated in the ACDV and from this carbon copy it

11   received from E-OSCAR, correct?

12                   MR. GIBBS:   Objection to form.

13                   MR. OLSON:   Objection, form.

14         A.    Yes, sir, there is that distinction, but

15   whether or not the information in the carbon copy

16   technically is generated by them, I can't answer that.

17   That's a technical E-OSCAR question.

18         Q.    (BY MR. MALLON)   Okay.   Yeah.   That's --

19   that's not what I'm asking you.

20         A.    Okay.

21         Q.    I mean, I think it's pretty clear that this

22   information ultimately did come from HSBC.   I'm just

23   asking you if essentially HSBC ever contacted Experian

24   on or after September 19th of 2006 and said, Look,

25   here's the information we're updating to Equifax.

713-683-0401    Digital Court Reporting and Video    713-683-8935

```
1                    MR. GIBBS:   Objection to form.

2                    MR. ZARLOCK:   Objection to the form.

3   Zarlock.

4       A.   It would be my position that they did not

5   directly notify Experian that a change needed to be

6   made.

7       Q.   (BY MR. MALLON)  Okay.  And, in fact, that

8   would be a superior method in receiving this

9   information from E-OSCAR because the code -- you would

10  get Experian's direct code instead of Equifax's,

11  correct?

12                   MR. GIBBS:   Objection to form.

13                   MR. ZARLOCK:   Objection to the form.

14  Zarlock.

15                   MR. OLSON:   Objection to form.   Olson.

16      A.   They could -- if they wanted to recontact

17  Experian, they could do so through a number of ways.

18  They could do so through their monthly tape or they

19  could also use a method similar to this through E-OSCAR

20  called an AUD or automated universal data form which

21  they do send directly to Experian through E-OSCAR.

22      Q.   (BY MR. MALLON)  Okay.  An AUD you said was

23  an automated -- can you help me there?

24      A.   Automated universal data form.

25      Q.   Universal data form.  What is an AUD?
```

Page 78

```
 1        A.   A universal data form is a means which a

 2   creditor can communicate with a credit bureau out of

 3   the ordinary reporting process, so it's not in response

 4   to an investigation.  And if they don't want to wait

 5   for their monthly tape cycle to update, they can do

 6   like an instant update.  In the olden days, they were

 7   just universal data forms and they were sent through

 8   the mail, but now that we have E-OSCAR, it's an

 9   automated transmission, thus, it's now called an AUD.

10        Q.   Okay.  And the purpose of an AUD then would

11   be to update account information to all the credit

12   reporting agencies, not just one, correct?

13             MR. ZARLOCK:  Objection to the form.

14   Zarlock.

15             MR. GIBBS:  Objection to the form.

16        A.   Well, my understanding is it's typically --

17   AUDs are typically sent to all reporting agencies that

18   the company reports to, but I suppose it could just be

19   notification to one bureau if they're aware that they

20   gave, you know, different information.

21        Q.   (BY MR. MALLON)  Okay.  Well, what does the

22   term "universal" mean in that description, if you know?

23             MR. GIBBS:  Objection to form.

24             MR. ZARLOCK:  Objection to form.

25   Zarlock.
```

Case 3:Case-00724-JAG46DReP-Document-14-Filed 17-14/126/06/08-1 Page 18 of 18 PageID# 1547 al

1          A.     I just know that that's what it's called.

2          Q.    (BY MR. MALLON)  Okay.  You don't know

3     specifically what that term means?

4                     MR. GIBBS:  Objection to form, asked and

5     answered.

6          A.     No, sir.

7          Q.    (BY MR. MALLON)  Okay.  And in this case,

8     just to be clear, HSBC never sent an automated

9     universal data form to Experian at any point after

10    September 8th of 2006?

11                    MR. GIBBS:  Objection to the form --

12                    MR. ZARLOCK:  Objection to form.

13                    MR. GIBBS:  -- asked and answered.

14         A.     This is the only record of profile

15    maintenance that was found for Mr. Gorman and that was

16    the carbon copy.

17         Q.    (BY MR. MALLON)  So is that a no?

18                    MR. GIBBS:  Objection to form.

19                    MR. OLSON:  Objection to form.

20         A.     Our records don't indicate -- our records

21    indicate no.

22         Q.    (BY MR. MALLON)  Okay.  That's all I'm

23    asking.  Let's go back to the transaction log for a

24    second.  You said these codes -- like under the payment

25    history, there's Ds, 3s, 2s and 1s.  You've even got a

Case 3:Case 00724-JAS4-DRRP-Document 76-14 Filed 1714/126/06/08-15Page 19 Page 4ID# 1548 al

```
 1        A.    No.   What this is, there's a box that comes
 2   up on the Internet that prompts the consumer.  If they
 3   want to type any additional information for us to pass
 4   along to the data furnisher, to type it there, so this
 5   was what he wanted to convey to HMS.
 6        Q.    Okay.  And is there any way here where it
 7   indicates what the results of that dispute were?
 8        A.    Yes, sir.  The response reason indicates that
 9   it was a remains, which indicates that the response was
10   verified as reported.
11        Q.    Okay.  And then if we go -- actually, there's
12   two more pages here, but they don't look like they
13   contain any more dispute information, do they?
14        A.    I'm not sure where you're at.  I'm sorry.
15        Q.    Okay.  The final two pages of this exhibit.
16        A.    Okay.  No.  These are disclosure logs, and
17   both of these indicate that Mr. Gorman contacted
18   Experian on two separate occasions to obtain copies of
19   his disclosure.
20        Q.    Okay.  Okay.  We're done with that document.
21   I want to go back to -- you don't need to look at the
22   transaction log, but what we were referring to -- you
23   indicated that HS -- I mean, that Experian did not
24   update its account information regarding the subject
25   account due to its policies.  The information it got
```

1     was within 30 days of the direct information it got

2     from HSBC; is that correct?

3                    MR. GIBBS:   Objection to form.

4          A.   That's correct.   That's just regarding a

5     carbon copy.

6          Q.   (BY MR. MALLON)   Right.   So if HSBC had

7     contacted Experian on or after September 19th and given

8     it different information, Experian would have updated

9     the account accordingly, correct?

10                   MR. ZARLOCK:   Objection to the form.

11    Zarlock.

12                   MR. GIBBS:   Objection to form.

13         A.   That's correct.

14         Q.   (BY MR. MALLON)   Okay.   And when Experian

15    received the ACDV from HSBC in this case -- why don't

16    we actually go back to that document.   It should be

17    Exhibit 31, page 3.   Do you have that in front of you,

18    Ms. Hughes?

19         A.   I do.

20         Q.   Okay.   Subscriber response categories on the

21    left there, do you see that?

22         A.   Yes.

23         Q.   That's how it actually then reported the

24    account from that point forward, correct?

25                   MR. ZARLOCK:   Objection to form.

Case 3:15-cv-00724-JAG-DRP Document 76-11 Filed 12/14/16 Page 17 of 18 PageID# 1550 et al

Page 110

1    Q.    (BY MR. MALLON)   Okay.  But the only reasons

2  you would disregard what they're telling you to do is

3  in the categories you just described, correct?

4                MR. GIBBS:   Objection to form.

5    A.    That's correct.

6    Q.    (BY MR. MALLON)   Okay.  So Experian

7  essentially relies upon HSBC to reinvestigate this

8  matter and then report those results, correct?

9                MR. GIBBS:   Objection to form --

10               MR. ZARLOCK:   Objection to form.

11               MR. GIBBS:   -- asked and answered.

12   A.    That's correct.

13   Q.    (BY MR. MALLON)   Okay.  It doesn't conduct

14 its own reinvestigation into this dispute?

15               MR. GIBBS:   Objection to form,

16 mischaracterizes what she said.

17   A.    Well, we do go to the reporting source which

18 is the company who has the relationship with the

19 subscriber, but independent of that and reviewing any

20 information sent in by the consumer themselves, we

21 don't do any other independent investigation.

22   Q.    (BY MR. MALLON)   Okay.  So you rely upon the

23 furnisher to do the investigation?

24               MR. GIBBS:  Objection to form,

25 mischaracterizes what she just said.

1    A.    We do contact the data furnisher or the

2  reporting source for the investigation, yes.

3    Q.    (BY MR. MALLON)  Okay.  That's fine.

4          MR. MALLON:  Let's -- give me one --

5  literally one minute here.  Let's go off the record.

6          (Off the record.)

7    Q.    (BY MR. MALLON)  Ms. Hughes, do the customer

8  service representatives who conduct disputes have a

9  certain amount of disputes that they are expected to

10  complete on a daily basis?

11          MR. GIBBS:  Objection to form.

12    A.    No, sir, they don't.

13    Q.    (BY MR. MALLON)  There are no targets or

14  goals for them?

15          MR. GIBBS:  Objection to form.

16    A.    They do have goals in their job performance,

17  but it has nothing to do with the amount of disputes

18  that they perform.

19    Q.    (BY MR. MALLON)  Okay.  What are the goals in

20  their job performance, then?

21          MR. GIBBS:  Objection to form.

22    A.    Well, I certainly can't testify to every

23  little thing.  You know, showing up to work on time,

24  being a good team member.  The main thing that our

25  agents are graded on or judged on, if you will, is