***Exhibit "Q"***

2012 WL 5396280 (C.A.7) (Appellate Brief)
United States Court of Appeals, Seventh Circuit.

David JOHNSON, Plaintiff-Appellant,
v.
TRANS UNION, LLC, Experian Information Solutions, Inc., and Equifax Information Services LLC, Defendants-Appellees.

No. 12-2083.
October 30, 2012.

On Appeal from the United States District Court for the Northern District of Illinois, Case No. 1:10-cv-06960, The Honorable Gary Feinerman, Presiding

**Brief of the Appellees Trans Union, LLC, Experian Information Solutions, Inc., and Equifax Information Services LLC and Supplemental Appendix**

Robert J. Schuckit* Schuckit & Associates, P.C., 4545 Northwestern Drive, Zionsville, IN 46077, (317) 363-2400, Counsel for Trans Union LLC.

Adam W. Wiers, Courtney E. Silver,* Jones Day, 77 West Wacker Drive, Chicago, IL 60601-1692, (312) 782-3939, Counsel for Experian, Information Solutions Inc.

Barry Goheen,* King & Spalding LLP, 1180 Peachtree St., N.E., Atlanta, GA 30309, (404) 572-4600, Counsel for Equifax, Information Services LLC.

Footnotes

## *I CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**
[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

*Defendant - Appellee, Trans Union, LLC*

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

*Schuckit & Associates, P.C.*

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

*Trans Union Corp. and TransUnion Holding Company, Inc.*

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

*See attached*

***II 3. ii) Trans Union Corp., which wholly owns its operating subsidiary Trans Union, LLC, is wholly owned by Trans Union Holding Company, Inc. TransUnion Holding Company, Inc. is jointly owned by a number of non-public funds affiliated with Advent International Corp. and GS Capital Partners. GS Capital Partners is an affiliate of Goldman Sachs Group, Inc., a publically traded entity.**

***III CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[ ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

*Defendant - Appellee Experian Information Solutions, Inc.*

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

*Jones Day*

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

*Experian Holding, Inc. is the 100% owner Experian Information Solutions, Inc.*

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

*Experian PLC is the ultimate parent company and is the only publicly traded Experian company.*

***IV CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

3. The Operative Complaint In The District Court

**[ ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

*Defendant - Appellees-Equifax Information Services LLC*

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

*King & Spalding LLP and Polsinelli Shughart PC*

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

*Exquifax Inc.*

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

*Equifax Inc.*

***i *TABLE OF CONTENTS***

| DISCLOSURE STATEMENTS | |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF AUTHORITIES | v |
| JURISDICTIONAL STATEMENT | 1 |
| STATEMENT OF THE ISSUES | 2 |
| STATEMENT OF THE CASE | 3 |
| I. NATURE OF THE CASE | 3 |
| II. COURSE OF PROCEEDINGS AND DISPOSITION BELOW | 4 |
| A. The Operative Complaint And Denial Of Leave To Amend | 4 |
| 1. The Complaint And Scheduling Order | 4 |
| 2. The District Court's Denial Of Johnson's Untimely Motion For Leave To Amend | 4 |

| | |
|---|---|
| I. GRANT OF SUMMARY JUDGMENT A. The Operative Complaint In The District Court | 6 |
| B. The Parties' Summary Judgment Motions And The District Court's Order On The Motions | 6 |
| 1. The Parties' Motions For Summary Judgment | 6 |
| 2. The District Court's Order Granting The CRAs' Motions For Summary Judgment, Denying Johnson's Cross- ***ii** Motions, And Denying Johnson's Request For Leave To Amend | 9 |
| a. The Grant Of The CRAs' Motions For Summary Judgment | 9 |
| b. Denial Of Johnson's Request For Leave To Amend | 10 |
| C. Johnson's Unsuccessful Second Lawsuit Against The CRAs | 11 |
| STATEMENT OF FACTS | 12 |
| I. CREDIT REPORTING | 13 |
| II. THE CRAS' PROCEDURES UNDER THE FCRA | 15 |
| III. HFS | 17 |
| IV. JOHNSON'S OVERDUE CHILD SUPPORT OBLIGATION | 18 |
| V. JOHNSON'S DISPUTES OF THE HFS TRADELINE AND THE CRAS' REINVESTIGATIONS | 20 |
| A. Trans Union | 20 |
| B. Experian | 23 |
| C. Equifax | 27 |
| SUMMARY OF THE ARGUMENT | 28 |
| STANDARD OF REVIEW | 31 |

| | |
|---|---|
| IIG.JOHNSON'S REQUEST FOR MANDAMUS IS WITHOUT MERIT | 31 |
| II. DENIAL OF LEAVE TO AMEND | 31 |
| *iii III. MANDAMUS | 32 |
| ARGUMENT | 32 |
| I. THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT IN FAVOR OF THE CRAS SHOULD BE AFFIRMED | 32 |
| A. The District Court Correctly Granted The CRAs' Motions For Summary Judgment On Johnson's FCRA Claims | 33 |
| 1. Summary Judgment In Favor Of The CRAs Was Appropriate On The FCRA Claims Because Johnson Did Not Establish The Required Element Of Inaccuracy | 34 |
| a. Johnson Presented No Evidence Of Inaccuracy, Which Is A Required Element Of Proof Under The FCRA | 34 |
| b. Because Johnson's Real Dispute Lies With HFS, His FCRA Claims Against The CRAs Represent An Impermissible Collateral Attack On HFS's Determination Of His Child Support Arrearage | 37 |
| 2. Summary Judgment For The CRAs On The FCRA Claims Was Independently Appropriate Because The Tradelines At Issue Contained Information Furnished By HFS, Which The FCRA Required The CRAs To Report | 39 |
| *iv 3. Johnson's §§ 1681e(b) And 1681i Claims Fail As A Matter Of Law For Other Reasons As Well | 42 |
| B. The District Court Properly Granted Summary Judgment For The CRAs On The State-Law Claims On The Basis That The FCRA Preempts Such Claims | 45 |
| II. THE DISTRICT COURT PROPERLY DENIED JOHNSON'S REQUESTS FOR LEAVE TO AMEND WHERE HIS PROPOSED AMENDMENTS WERE UNTIMELY AND FUTILE | 47 |
| A. Johnson's Attempt To Seek Leave To Amend His Complaint In His Summary Judgment Briefs Failed Under The Federal Rules And On The Merits | 47 |
| B. The District Court Did Not Abuse Its Discretion In Denying Johnson's Motion For Leave To Amend in April 2011 | 50 |

| | |
|---|---|
| III. JOHNSON'S REQUEST FOR MANDAMUS IS WITHOUT MERIT | 56 |
| CONCLUSION | 59 |
| CERTIFICATE OF COMPLIANCE | |
| CERTIFICATE OF SERVICE | |
| TABLE OF CONTENTS OF THE SUPPLEMENTAL APPENDIX | |

*v ***TABLE OF AUTHORITIES***

**CASES**

| | |
|---|---|
| *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) | 53 |
| *Beyer v. Firstar Bank N.A.*, 447 F.3d 1106 (8th Cir. 2006) | 35 |
| *Brown v. Automotive Components Holdings, LLC*, 622 F.3d 685 (7th Cir. 2010) | 45 |
| *Burks v. Wis. Dept. of Transp.*, 464 F.3d 744 (7th Cir. 2006) | 57 |
| *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991) | 35 |
| *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876 (9th Cir. 2010) | 35, 38 |
| *Clifford v. Crop Prod. Servs., Inc.*, 627 F.3d 268 (7th Cir. 2010) | 45 |
| *Cyrus v. Town of Mukwonago*, 624 F.3d 856 (7th Cir. 2010) | 45 |
| *DeAndrade v. Trans Union LLC*, 523 F.3d 61 (1st Cir. 2008) | 34, 35, 38, 39 |
| *FedEx Ground Package Sys., Inc. v. U.S. Judicial Panel on Multidistrict Litig.*, 662 F.3d 887 (7th Cir. 2011) | 32 |
| *Harris v. Interstate Brands Corp.*, 348 F.3d 761 (8th Cir. 2003) | 57 |
| ***vi** *Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994) | 43 |
| *In re Ford Motor Co.*, 344 F.3d 648 (7th Cir. 2003) | 56, 57 |

| | |
|---|---|
| *Stingaetv.eYaKong IndEa,s623tF Bdu436 (7thDCir. 2800,)*496 F.3d 812 (7th Cir. 2007) | 49 |
| *Koski v. Standex Int'l Corp.*, 307 F.3d 672 (7th Cir. 2002) | 57 |
| *Lopez v. Davis*, 531 U.S. 230 (2001) | 40 |
| *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) | 31 |
| *Moline v. Experian Info. Solutions, Inc.*, 289 F. Supp. 2d 956 (N.D. Ill. 2003) | 46 |
| *Muhammad v. Bethel-Muhammad*, No. 11-0690, 2012 WL 1854315 (S.D. Ala. May 21, 2012) | 54, 55 |
| *Nwoke v. Countrywide Home Loans, Inc.*, 251 Fed. Appx. 363 (7th Cir. 2007) | 46 |
| *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623 (7th Cir. 1999) | 53, 54 |
| *Puffer v. Allstate Ins. Co.*, 675 F.3d 709 (7th Cir. 2012) | 37, 42, 52 |
| *Purcell v. Bank of America*, 659 F.3d 622 (7th Cir. 2011) | 45, 49 |
| ***vii** *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603 (7th Cir. 2005) | 35, 46 |
| *Sarver v. Experian Info. Solutions*, 390 F.3d 969 (7th Cir. 2004) | 34, 43, 46 |
| *Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505 (7th Cir. 2009) | 48 |
| *Sherman ex rel. Sherman v. Koch*, 623 F.3d 501 (7th Cir. 2010) | 40 |
| *Smith v. Bray*, 681 F.3d 888 (7th Cir. 2012) | 31 |
| *Spence v. TRW, Inc.*, 92 F.3d 380 (6th Cir. 1996) | 35 |

| | |
|---|---|
| *Stayart v. Yahoo! Inc.*, 623 F.3d 436 (7th Cir. 2010)<br>*Ted Weiss Child Support Enforcement Act of 1992: Hearing on H.R. 6022, S. 2596 Before the Senate Banking Comm.*, 102nd Cong. S16643-S16644 (1992), *available at* http://thomas.loc.gov/cgi-bin/query/z?r102:S05OC2-B42:# | 31 |
| *Washington v. Equifax Credit Info. Servs., LLC*, 373 Fed. Appx. 633 (7th Cir. 2010) | 35 |
| *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) | 44 |
| *Winters v. Fru-Con Inc.*, 498 F.3d 734 (7th Cir. 2007) | 31 |
| *Wolfe v. MBNA Am. Bank*, 485 F. Supp. 2d 874 (W.D. Tenn. 2007) | 47 |
| **STATUTES** | |
| 15 U.S.C. § 1681a | 40, 41 |
| ***viii** 15 U.S.C. § 1681e(b) | 34, 42, 43 |
| 15 U.S.C. § 1681h(e) | 45 |
| 15 U.S.C. § 1681i | 34, 43 |
| 15 U.S.C. § 1681s-1 | 36, 39, 40 |
| 42 U.S.C. § 666(e) | 41 |
| **REGULATIONS AND RULES** | |
| 89 Ill. Adm. Code § 160.10 | 37, 41 |
| 89 Ill. Adm. Code § 160.70 | 38 |
| Fed. R. Civ. P. 15 | 48 |
| Fed. R. Civ. P. 16 | 50 |
| Fed. R. Civ. P. 56 | 57, 58 |
| **LEGISLATIVE HISTORY** | |

| | |
|---|---|
| *Ted Weiss Child Support Enforcement Act of 1992: Hearing on H.R. 6022, S. 2596 Before the Senate Banking Comm.*, 102nd Cong. S16643-S16644 (1992), *available at* http://thomas.loc.gov/cgi-bin/query/z?r102:S05OC2-B42:# | 40 |

### *1 *JURISDICTIONAL STATEMENT*

Defendants-Appellees Trans Union, LLC, improperly named in the complaint as Trans Union Corporation ("Trans Union"); Experian Information Solutions, Inc. ("Experian"); and Equifax Information Services LLC ("Equifax")--"consumer reporting agencies" or "CRAs" as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f)--disagree with the jurisdictional statement of Plaintiff-Appellant David Johnson ("Johnson"). The CRAs agree that the district court had original, federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Johnson's federal claims arose under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA"). The district court had supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the state-law claims arose out of the same course of events as the federal claims, such that all claims formed part of the same case or controversy under Article III of the United States Constitution. The CRAs deny that Johnson's newly-alleged claims pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988, and/or the United States Constitution provide an alternative basis for federal question *2 jurisdiction because such claims were not part of the operative complaint.

On March 22, 2012, the district court granted the CRAs' motions for summary judgment (and denied Johnson's cross-motions) and entered a final judgment in favor of the CRAs. On April 18, 2012, Johnson timely filed a notice of appeal of that order. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1291.

### *STATEMENT OF THE ISSUES*

I. Whether the district court properly granted the CRAs summary judgment and denied Johnson's motion for same:

A. Where Johnson (i) presented *no* required evidence of an inaccuracy; and (ii) FCRA § 1681s-1 expressly *requires* the CRAs to report the delinquent child support obligation information disputed by Johnson; and

B. Where Johnson's state-law claims were expressly preempted by the FCRA.

II. Whether the district court properly denied Johnson's two untimely and otherwise improper attempts to amend his complaint to allege additional claims, all of which lacked merit as a matter of law.

*3 III. Whether this Court should reject Johnson's request for mandamus, which lacks any legal basis whatsoever.

### *STATEMENT OF THE CASE*

**I. NATURE OF THE CASE**

Johnson sued the CRAs under the FCRA and various state laws. Johnson claimed that the CRAs included an allegedly inaccurate overdue child support obligation in his consumer reports and failed to comply with his request to remove the information from his respective credit files.

The FCRA requires, however, that the CRAs report Johnson's overdue child support obligation when reported to them by a state child support enforcement agency. The CRAs not only reported such obligation exactly as it was reported to them by the Illinois Department of Healthcare and Family Services ("HFS"), a state child support enforcement agency, but on multiple occasions when Johnson disputed the reporting, the CRAs confirmed with HFS that such reporting remained accurate.

***4 II. COURSE OF PROCEEDINGS AND DISPOSITION BELOW**

**A. The Operative Complaint And Denial Of Leave To Amend**

**1. The Complaint And Scheduling Order**

On October 4, 2010, Johnson filed a complaint against the CRAs in the Circuit Court of Cook County, Illinois. (Dkt. 1,

Ex. 2.)1 On October 29, 2010, Trans Union removed the case to the United States District Court for the Northern District of Illinois. (*Id.*) On November 15, 2010, Johnson filed a first amended complaint. (Dkt. 32.) On January 4, 2011, the district court issued a scheduling order, which set a February 18, 2011 deadline for amendments to pleadings. (Dkt. 51.)

| * | Counsel of Record. |
|---|---|

**2. The District Court's Denial Of Johnson's Untimely Motion For Leave To Amend**

On April 6, 2011, Johnson filed a motion for leave to file a second amended complaint, claiming that he wished to "provide[] additional factual details concerning the defendants' pattern and practice of gross negligence, reckless disregard, willful and intentional acts that violated the FCRA." (Dkt. 72, p. 2.) He also ***5** attempted to assert class action allegations and add new causes of action for alleged violations of constitutional due process on behalf of the purported classes. (*Id.*) On April 13, 2011, Johnson filed an amendment to his motion for leave to file a second amended complaint, changing the due process allegations of his proposed complaint. (Dkt. 86.) The district court scheduled a hearing on Johnson's motion for leave to amend for April 21, 2011 and instructed Johnson to be prepared to address at the hearing why he did not move for leave to amend prior to the February 18, 2011 deadline set in the January 4, 2011 scheduling order. (Dkt. 81.)

At the hearing, the district court denied Johnson's motion for leave to file a second amended complaint on the grounds that it was futile and untimely. (*See* SA-18.)2 The court held that amendment would be futile because the CRAs "are not government actors. They are private entities, and private entities cannot be sued -- can't violate the Constitution." (SA-25, lines 22-24.) The court then instructed Johnson that if he again sought leave to amend, he must explain why he would be entitled to amend his complaint beyond ***6** the February 2011 deadline that previously had been set. (SA-30, lines 5-10.) Johnson did not file another motion for leave to amend.

| 1 | "Dkt. ___" refers to the docket for case number 1:10-cv-06960 (N.D. Ill.), which forms the basis for the present appeal. |
|---|---|

**3. The Operative Complaint In The District Court**

The operative pleading in this case, therefore, was the First Amended Complaint, which contained six counts against the CRAs: (1) negligent violation of FCRA § 1681e(b); (2) negligent violation of FCRA § 1681i; (3) willful violation of FCRA §§ 1681e(b) and 1681i; (4) violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"); (5) negligence; and (6) negligent interference with prospective economic advantage. (Dkt. 32, ¶¶ 17-73.) All claims were based on the allegation that Johnson's credit report contained information regarding an overdue child support obligation that he claimed was inaccurate. (*See id.*, ¶¶ 14-15.)3

| 2 | SA- ___ refers to the supplemental appendix, which is bound to this brief. |
|---|---|

**B. The Parties' Summary Judgment Motions And The District Court's Order On The Motions**

**1. The Parties' Motions For Summary Judgment**

On July 8, 19, and 21, 2011 respectively, Trans Union, Experian, and Equifax filed motions for summary judgment. (Dkts. ***7** 119, 131, 144.) For the FCRA claims, the CRAs primarily argued that (1) § 1681s-1 of the FCRA required the CRAs to report Johnson's overdue support obligation and, as such, the CRAs did not violate the FCRA or any state law by accurately including that information in any credit report (Dkts. 120, pp. 3-7; 138, pp. 4-7; 148, pp. 4-6); and (2) Johnson failed to carry his burden of proof that: (i) his credit file contained inaccurate information; (ii) the CRAs failed to maintain reasonable procedures to assure the maximum possible accuracy of his credit file; and (iii) the CRAs failed to conduct reasonable reinvestigations of Johnson's disputes (Dkts. 120, pp. 7-13; 138, pp. 7-10; 148, pp. 7-10). For the state-law claims, the CRAs argued that (1) the ICFA claim was barred by the FCRA and that Johnson's claim did not fall within the scope of the ICFA (Dkts. 120, pp. 14-15; 138, p. 10; 148, p. 11), and (2) the two negligence-based claims were preempted by the FCRA (Dkts. 120, pp. 13-14; 138, p. 10; 148, p. 11).

On August 12, 2011, Johnson filed a cross-motion for summary judgment against Trans Union and a statement of material facts in support of the motion. (Dkts. 157, 159.) On August 19, 2011, Johnson filed identical cross-motions for summary ***8** judgment against Equifax and Experian, but no statements of material facts. (Dkts. 163, 167.) The factual basis for

Johnson's cross-motions was not entirely clear. He stated, however, that the CRAs were liable as a matter of law for alleged violations of FCRA §§ 1681e(b) and 1681i(a). (Dkt. 163, ¶¶ 5, 7, 8.)

On September 19, 2011, Johnson filed oppositions to the CRAs' motions for summary judgment and "Objections and Responses" to their statements of material facts. (Dkts. 183-191.) He did not, however, file responses to the statements of facts pursuant to Local Rule 56.1(b)(3)(B). As part of his oppositions to the motions for summary judgment, Johnson once again sought leave to amend his complaint, this time to add claims for defamation of credit, false light and invasion of privacy (Dkt. 189, p. 33), but he did not file a motion for leave to amend.

On October 11, 2011, the CRAs filed replies in support of their motions for summary judgment and responses to Johnson's cross-motions for summary judgment. (Dkts. 192-204.) On October 28, 2011, Johnson filed additional briefs in support of his cross-motions for summary judgment and separate memoranda of undisputed facts. (Dkts. 206-212.) On November 7, 2011, Experian ***9** and Equifax filed responses to Johnson's memoranda of undisputed facts. (Dkts. 216, 218.)

**2. The District Court's Order Granting The CRAs' Motions For Summary Judgment, Denying Johnson's Cross-Motions, And Denying Johnson's Request For Leave To Amend**

**a. The Grant Of The CRAs' Motions For Summary Judgment**

In a memorandum opinion and order issued March 22, 2012, the district court granted the CRAs' motions for summary judgment, denied Johnson's cross-motions for summary judgment, and denied Johnson's request for leave to amend. (SA-1-16.) The district court first noted that Johnson had failed to comply with Local Rule 56.1 and that his status as a *pro se* litigant did not excuse him from complying with the Rule. (SA-1-2.) Johnson did not provide specific references to any evidence to support his positions. (SA-2-3.) In opposing the CRAs' Local Rule 56.1 statements, Johnson improperly made legal arguments, which the district court disregarded, and he also failed to comply with Local Rule 56.1 in connection with his own motions for summary judgment by making legal arguments and statements that the district court noted either did not support the facts asserted and/or were inadmissible. (SA-3- ***10** 4.)

As to the FCRA claims, the district court found that "[e]ven putting aside his many Local Rule 56.1 violations, Johnson has submitted no competent evidence indicating that he did not, in fact, owe the child support listed on his credit reports." (SA-9.) Further, the district court stated that Johnson's argument could not be reconciled with 15 U.S.C. § 1681s-1, which states that the CRAs not only can, but *must*, report any information provided by HFS regarding Johnson's failure to pay overdue support. (SA-10-11.) As to the state law claims, the district court granted summary judgment for the CRAs on negligence and negligent interference on the basis that those claims were preempted by the FCRA, as Johnson could not prove that the CRAs furnished false information or acted with malice or willful intent to injure him. (SA-14.) The district court entered summary judgment for the CRAs on the ICFA claim because Johnson did not address the claim and thus had abandoned it. (SA-15.)

**b. Denial Of Johnson's Request For Leave To Amend**

The district court denied Johnson's request for leave to amend ***11** his complaint to add state-law claims for defamation of credit, false light, and invasion of privacy on two grounds: (1) Johnson failed to file a motion under Rule 15; and (2) even if he filed such a motion, it would have been denied, as the claims would be preempted by 15 U.S.C. § 1681h(e). (SA-15-16.)4

| 3 | The First Amended Complaint also sought relief from "unknown defendants." (Dkt. 32.) The district court entered summary judgment on those claims as well. (SA-16.) |
|---|---|

**C. Johnson's Unsuccessful Second Lawsuit Against The CRAs**

In a blatant attempt to avoid the district court's rejection of his untimely, futile effort to file a second amended complaint, Johnson filed a second, separate lawsuit against the CRAs on January 20, 2012. (Johnson II Dkt. 1.)5 Johnson II was filed while the motions for summary judgment were pending in Johnson I. Johnson II was based on precisely the same facts and allegations as Johnson I and again made allegations based on the CRAs' reporting of Johnson's purportedly inaccurate overdue child support obligation. (*Id.*, ¶ 10.) ***12** In Johnson II, Johnson asserted claims for violations of §§ 1681i and 1681g of the FCRA, and, like Johnson's failed second amended complaint in Johnson I, included class allegations. (*Id.*)

| 4 | After noticing the instant appeal, Johnson filed a Motion to Recuse Judge Feinerman on May 16, 2012. (Dkt. 248.) The district court denied the motion on May 24, 2012. (Dkt. 253.) |
|---|---|

On March 8, 2012, the CRAs filed a motion to dismiss Johnson II. (Johnson II Dkts. 27, 30.) On March 22, 2012, the district court granted the CRAs' motion to dismiss the class claims in Johnson II. (Johnson II Dkt. 34.) Then, on April 12, 2012, after the CRAs' motions for summary judgment were granted in Johnson I, the court granted the CRAs' motion to dismiss as to the individual claims in Johnson II. (SA-33.) The court noted that the two cases alleged the same operative facts and the same alleged harm and that Johnson's claims in Johnson II either were or should have been raised in Johnson I. (SA-34.) "Having lost that case, he does not get a 'do-over' in this court." (*Id.*) As such, Johnson II was barred by the doctrine of *res judicata* and the CRAs' motion to dismiss was granted. (*Id.*)

## *STATEMENT OF FACTS*

The district court held that while Johnson "disputes most of the facts asserted in Defendants' Local Rule 56.1(a)(3) statements, he does not specifically reference any evidence to support his ***13** positions. *That alone is reason enough to deem admitted the material facts set forth in Defendants' Local Rule 56.1(a)(3) statements.*" (SA-2-3 (emphasis added; citations omitted).) Nevertheless, the court set forth the facts on which it relied "as favorably to Johnson as the record and Local Rule 56.1 permit." (SA-4.)

### I. CREDIT REPORTING

Johnson, a "consumer" as defined by FCRA § 1681a(c) (Dkts. 121, ¶ 2; 140, ¶ 4; 147, ¶ 1), bases his lawsuit on the inclusion of his overdue child support obligation reported by HFS (the "HFS Tradeline") in his respective credit files. The CRAs maintain credit information relating to 210 million people, who collectively hold some 1.5 billion credit accounts. (Dkts. 121, ¶ 7; 140, ¶ 6.) Keeping those credit files current requires the CRAs to each process more than four billion items of information each month from 30,000 furnishers of information. (Dkts. 121, ¶ 8; 140, ¶ 6.) Each of the CRAs issues approximately two million consumer credit reports every day. (Dkts. 121, ¶ 8; 140, ¶ 6.)

To meet the needs of the economy, the CRAs regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, ***14** and others (these sources are known as "Furnishers" within the credit reporting industry and under the FCRA), assemble that information into credit reports, and make the reports available within seconds upon request to clients ("Subscribers") who are engaged in credit-related transactions. (Dkts. 121, ¶ 9; 140, ¶ 7; 147, ¶¶ 5-6.)

Furnishers report credit information to the CRAs via electronic transmission on a monthly basis. (Dkt. 121, ¶ 3.) Credit information reported by a furnisher to a CRA is sometimes referred to as a "tradeline," which usually includes a consumer's account number, account status, and payment and balance information. (Dkt. 140, ¶ 8.) The CRAs contractually require that their Furnishers, among other things, report only accurate information. (Dkts. 121, ¶ 14; 140, ¶ 9; 147, ¶ 14.) The CRAs assemble the information they collect into credit files and generate: (a) "consumer disclosures," which are provided to consumers and are not actionable under the FCRA, *see* 15 U.S.C. § 1681g; and (b) "consumer reports," more commonly known as "credit reports," which are provided to Subscribers, *see* 15 U.S.C. § 1681a. (Dkts. 121, ¶ 15; 140, ¶ 11.)

### *15 II. THE CRAS' PROCEDURES UNDER THE FCRA

Pursuant to the FCRA, the CRAs must follow "reasonable procedures to assure maximum possible accuracy of the information reported." (Dkts. 121, ¶ 19; 140, ¶¶ 12-13; 147, ¶ 12.) When the CRAs receive notice from a consumer of a dispute as to the accuracy of the consumer's credit file, they are required to "reinvestigate" any information disputed as inaccurate by the consumer. (Dkts. 121, ¶ 23; 140, ¶ 13; 147, ¶ 17.)

The CRAs have numerous and varied procedures and systems to ensure on an ongoing basis that their Furnishers are providing accurate information including: (a) initial site inspections of Furnishers when entering into a contractual relationship with them; (b) initial reviews of due diligence investigation information to make sure that a Furnisher is a creditworthy financial institution; (c) distribution of relevant manuals to Furnishers or ensuring that they have access to such manuals; (d) training for Furnishers; (e) systems that alert the CRAs of unusual numbers of complaints with or a higher than expected number of adverse items reported by Furnishers; and (f) suppression and removal of a Furnisher's information from credit reports when the CRAs' procedures indicate ***16** that a Furnisher is unreliable, until the information is corrected. (Dkts. 121, ¶ 16; 140, ¶¶ 10, 12; 147, ¶¶ 6, 12-13, 15-16.)

When a CRA receives a dispute from a consumer, it generally first conducts an internal review of the consumer's credit file in an attempt to resolve the dispute. (Dkts. 121, ¶ 24; 140, ¶ 15; 147, ¶¶ 18-19.) If the CRA cannot resolve the dispute internally, the CRA reinvestigates the dispute using manual or electronic systems. (Dkts. 121, ¶ 24; 140, ¶¶ 15-19; 147, ¶¶ 22-28.) Through these systems, the CRA sends to the Furnisher the information that the CRA currently is reporting about the consumer, tells the Furnisher what the consumer's dispute is, and asks the Furnisher to determine whether the

information that it is reporting to the CRA is correct and complete. (Dkts. 121, ¶ 25; 140, ¶¶ 15-17; 147, ¶¶ 22-26.) Whenever a Furnisher responds to a manual or electronic dispute reinvestigation, it expressly certifies that the information in its response is correct, that it has verified the accuracy of the entire item in compliance with all legal requirements, and that its records will be adjusted to reflect any changes noted; the CRAs then update their records as appropriate based upon the Furnisher's response. (Dkts. 121, ¶ 26; 140, ¶ 18; 147, ¶¶ 27-33.)

***17** The CRAs also use manual and electronic procedures allowing Furnishers to change information between their monthly or periodic updates on an as-needed basis. (*E.g.*, Dkt. 121, ¶ 27.) Whenever a Furnisher changes information between its monthly or periodic updates, the CRAs require that the Furnisher adjust its records to reflect any changes made. (*E.g.*, Dkt. 121, ¶ 28.) The CRAs maintain numerous redundant procedures for and audits of dispute reinvestigations, monitor how its Furnishers respond to disputes and track Furnisher dispute histories, including HFS. (*E.g.*, Dkt. 121, ¶ 32.)

**III. HFS**

HFS is a Furnisher that provided credit information concerning Johnson's overdue child support. (Dkts. 121, ¶ 29; 140, ¶ 21; 147, ¶ 9.) Johnson concedes that HFS was at all relevant times the Furnisher of credit information to the CRAs concerning his overdue child support. (*See* Dkt. 1, Ex. 2, ¶ 21.)

HFS is a state child support enforcement agency. "Under Title IV-D of the Social Security Act (42 U.S.C. § 651 *et seq.*) the Department [of Healthcare and Family Services] undertakes to establish, modify, enforce and collect child and spouse support ***18** obligations from responsible relatives." 89 Ill. Adm. Code § 160.10(a). "Title IV-D is implemented by the Department through its Division of Child Support Enforcement." 89 Ill. Adm. Code § 160.10(c). "The Division of Child Support Enforcement has sole responsibility for ... establishing support obligations [and] enforcing and collecting support." 89 Ill. Adm. Code § 160.10(c).

HFS is a reliable Furnisher and the CRAs have received no notice of systemic problems with HFS's procedures, that it is an unreliable source of credit information, or that it is likely to report inaccurate information except in isolated instances. (Dkts. 121, ¶ 30; 140, ¶ 27; 147, ¶¶ 8, 10.) None of the CRAs ever has deemed HFS an unreliable source of information. (Dkts. 121, ¶ 31; 140, ¶ 28.) Further, the CRAs have received no notice of prevalent unreliable information from, or systemic problems with, HFS's dispute response systems. (Dkts. 121, ¶ 33; 140, ¶¶ 29-30.)

**IV. JOHNSON'S OVERDUE CHILD SUPPORT OBLIGATION**

In 2004, Johnson and his ex-wife were divorced by agreed order in the Circuit Court of Cook County, Illinois, under docket number 02-D-15424. (Dkt. 147, ¶ 35.) As part of the divorce, Johnson and his ex-wife agreed upon the marital settlement ***19** agreement and parenting agreement. (*Id.*, ¶ 36.) The agreed order also included a provision that Johnson would provide monetary support for his two children. (*Id.*, ¶ 37.) The May 3, 2004 Uniform Order for Support ("Support Order") established Johnson's monthly payment obligation and also listed a delinquency to which he was obligated to make additional payments, on top of the current support obligation, for his children. (*Id.*, ¶ 38.)

On January 13, 2006, HFS entered a Judicial Order/Notice to Withhold Income for Child Support against Johnson (filed with the Clerk of the Cook County Court on January 19, 2006), listing a delinquency of payment by Johnson of $17,316, plus interest as of that date. (*Id.*, 39-41.) On July 19, 2006, HFS entered another Judicial Order/Notice to Withhold Income for Child Support against Johnson (filed with the Clerk of the Cook County Court on July 26, 2006), listing a delinquency of payment by Johnson of $22,644.00, plus interest as of that date. (*Id.*, ¶¶ 42-44.) On October 8, 2006, HFS entered a third Judicial Order/Notice to Withhold Income for Child Support against Johnson (filed with the Clerk of the Cook County Court on October 13, 2006), listing a delinquency of ***20** payment by Johnson of $24,340.62, plus interest as of that date. (*Id.*, ¶¶ 45-47.)

**V. JOHNSON'S DISPUTES OF THE HFS TRADELINE AND THE CRAS' REINVESTIGATIONS**

**A. Trans Union**

On September 14, 2009, Trans Union received correspondence from Johnson dated September 11, 2009 (1) disputing the tradeline "Illinois Department of Children and Family Services," and (2) stating that he never signed the Support Order, enclosing copies of the Support Order as well as HFS's "Protest Correspondence General Acknowledgement" dated April 8, 2009. (Dkt. 121, ¶ 34.) Trans Union initiated the required reinvestigation into the HFS Tradeline by submitting an ACDV to HFS. (*Id.*, ¶ 36.) HFS responded to the ACDV by updating the date the HFS Tradeline information was verified to September 2009 and increasing the balance due from $21,207 to $21,611. (*Id.*, ¶ 37.) On September 22, 2009, Trans Union mailed to Johnson the results of its reinvestigation which included, among other things, a current copy of the HFS Tradeline evidencing HFS's verification of the accuracy thereof. (*Id.*, ¶ 38.)

*21 On January 14, 2010, Trans Union received a second letter from Johnson dated January 4, 2010, disputing the HFS Tradeline, stating that the tradeline was inaccurate as approximately $15,000 of child support payments allegedly had not been accounted for, and enclosing (1) a copy of his correspondence with Pam Compton at HFS dated January 4, 2010 disputing the amount of the child support arrearage; (2) an order dated December 14, 2009 entered by the Circuit Court of Cook County referencing the Support Order; and (3) miscellaneous cancelled checks and other documents allegedly showing payment of Johnson's child support obligations. (*Id.*, ¶ 41.) Trans Union initiated the required reinvestigation into the HFS Tradeline by submitting an ACDV to HFS. (*Id.*, ¶ 42.)

HFS responded to the ACDV by updating the date the HFS Tradeline information was verified to January 2010 and increasing the balance due from $18,120 to $18,524. (*Id.*, ¶ 43.) On January 21, 2010, Trans Union mailed Johnson the results of its reinvestigation which included, among other things, a current copy of the HFS Tradeline evidencing HFS's verification of the accuracy thereof. (*Id.*, ¶ 44.)

*22 On June 7, 2010, Trans Union received a third letter from Johnson dated June 3, 2010 stating that the HFS Tradeline was inaccurate on the grounds that HFS did not request "a judicial order for 'Retroactive support' as required by Illinois Administrative Code" and enclosing a copy of 89 Ill. Adm. Code § 160.60. (*Id.*, ¶ 47.) Trans Union initiated the required reinvestigation into the HFS Tradeline by submitting an ACDV to HFS. (*Id.*, ¶ 48.)

HFS responded to the ACDV by updating the date the HFS Tradeline information was verified to May 2010 and decreasing the balance due from $15,524 to $15,516. (*Id.*, ¶ 49.) On June 10, 2010, Trans Union mailed Johnson the results of its reinvestigation, which included, among other things, a current copy of the HFS Tradeline evidencing HFS's verification of the accuracy thereof. (*Id.*, ¶ 50.)

On July 2, 2010, Trans Union received a fourth letter from Johnson disputing the HFS Tradeline. (*Id.*, ¶ 53.) Trans Union initiated the required reinvestigation into the HFS Tradeline by submitting an ACDV to HFS. (*Id.*, ¶ 54.)

HFS responded to the ACDV by updating the date the HFS Tradeline information was verified to June 2010 and increasing the *23 balance due from $15,520 to $15,958. (*Id.*, ¶ 55.) Trans Union mailed Johnson the results of its reinvestigation, which included, among other things, a current copy of the HFS Tradeline evidencing HFS's verification of the accuracy thereof. (*Id.*, ¶ 56.) Trans Union received no additional communications from Johnson concerning the HFS Tradeline until receiving Johnson's complaint on or about October 14, 2010. (*Id.*, ¶ 58.)

At all relevant times, Trans Union maintained credit information concerning Johnson's HFS Tradeline exactly as it received it from HFS. (*Id.*, ¶ 59.)

**B. Experian**

On September 15, 2009, Experian received a letter from Johnson, dated September 11, 2009, (1) disputing an "Illinois Department of Children and Family Services" tradeline, and (2) asserting that he never signed the Support Order, enclosing copies of the Support Order as well as HFS's "Protest Correspondence General Acknowledgement" dated April 8, 2009. (Dkt. 140, ¶ 31.) Experian reinvestigated the HFS Tradeline by reviewing its files and submitting an ACDV to HFS. (*Id.*, ¶¶ 32-33.) HFS responded to the ACDV by indicating that Johnson's first and last name, Social *24 Security number, date of birth, and address were reporting correctly and accurately. Additionally, HFS increased the balance due on the tradeline from $21,207 to $21,611. (*Id.*, ¶ 36.) On September 17, 2009, after updating the balance due within its files, Experian mailed the results of the reinvestigation to Johnson. The letter indicated, among other things, that the HFS Tradeline was verified as belonging to Johnson and that HFS had updated the balance due on the tradeline. (*Id.*, ¶ 37.)

On January 12, 2010, Experian received a second letter from Johnson, dated January 4, 2010, disputing the accuracy of the HFS Tradeline, stating that approximately $15,000 of child support payments had not been accounted for and enclosing (1) a copy of his correspondence with HFS dated January 4, 2010 disputing the amount of the child support arrearage; (2) an order dated December 14, 2009 entered by the Circuit Court of Cook County referencing the Support Order; and (3) miscellaneous cancelled checks and other documents allegedly showing some payment of Johnson's child support obligations. (*Id.*, ¶ 41.) Experian reinvestigated the HFS Tradeline by submitting an ACDV to HFS. (*Id.*, ¶ 42.) HFS responded to the ACDV by indicating that Johnson's first and last *25 name, Social Security number, date of birth, and address were reporting correctly and accurately. Additionally, HFS increased the balance due on the tradeline from $18,120 to $18,524. (*Id.*, ¶ 44.) On January 21, 2010, after updating the balance due within its files, Experian mailed the results of the reinvestigation to Johnson. The letter indicated, among other things, that the HFS Tradeline was verified as belonging to Johnson and that HFS had updated the balance due on the tradeline. (*Id.*, ¶ 45.)

On June 8, 2010, Experian received a third letter from Johnson, dated June 3, 2010, disputing the reporting of the HFS Tradeline, stating that HFS had not requested "a judicial order for 'Retroactive support' as required by Illinois Administrative Code" and enclosing a copy of provisions of the Illinois Administrative Code regarding child support orders.

(*Id.*, ¶ 49.) In comparison to Johnson's two prior letters to Experian regarding the HFS Tradeline, this third letter did not contain any new factual information or identify any changed circumstances that would enable Experian to determine that the HFS Tradeline was reporting inaccurately. (*Id.*, ¶ 50.) Experian mailed Johnson a letter dated June 14, 2010 indicating, among other things, that Experian had already ***26** reinvestigated the HFS Tradeline and that HFS had verified its accuracy, and that under § 1681i(a)(3)(A) of the FCRA, Experian would not be reinvestigating the dispute again at that time. (*Id.*, ¶ 51.) Further, the letter encouraged Johnson to submit additional relevant information, if he had any, to Experian in support of his claim that the HFS Tradeline was inaccurate. (*Id.*, ¶ 52.)

On July 3, 2010, Experian received a fourth letter from Johnson, dated June 28, 2010, disputing the accuracy of the HFS Tradeline on the grounds that the "family court has not made a determination that David Johnson is in 'arrearage' with regard to payments of child support." (*Id.*, ¶ 55.) Experian conducted yet another reinvestigation of the HFS Tradeline, including submitting an ACDV to HFS. (*Id.*, ¶ 56.) HFS responded to the ACDV by indicating that Johnson's first and last name, Social Security number, date of birth, and address were reporting correctly and accurately. Additionally, HFS increased the balance due on the tradeline from $15,520 to $15,958. (*Id.*, ¶ 58.) On July 9, 2010, after updating the balance due within its files, Experian mailed the results of the reinvestigation to Johnson. The letter indicated, among other things, that the HFS Tradeline was verified as ***27** belonging to Johnson and that HFS updated the balance due on the tradeline. (*Id.*, ¶ 59.)

At all relevant times, Experian maintained and reported credit information regarding Johnson exactly as Experian received the information from HFS. (*Id.*, ¶ 62.) Experian acted with no malice toward Johnson, reinvestigated his disputes, and responded to Johnson according to the information provided by HFS. (*Id.*, ¶¶ 63-64.)

**C. Equifax**

Information regarding Johnson's child support obligation was provided to Equifax by HFS. (Dkt. 147, ¶ 49.) Johnson contacted Equifax twice regarding the HFS Tradeline--once in September 2009 and again in January 2010. (*Id.*, ¶ 50.) On both occasions, Equifax conducted reinvestigations pursuant to its policies and procedures and in compliance with the FCRA. (*Id.*, ¶¶ 51-52.)

Johnson first disputed the HFS Tradeline by mail received by Equifax on September 14, 2009. (*Id.*, ¶ 53.) At that time, Johnson sent documents that purportedly showed he "did not sign" the Support Order. (*Id.*, ¶ 54.)

***28** Equifax reviewed the documents and contacted the Furnisher, HFS, to reinvestigate the item. (*Id.*, ¶ 55.) HFS responded to Equifax on September 16, 2009, advising Equifax that the information regarding the overdue amount was reporting accurately and stating that the total current amount owed by Johnson to his children was $21,207. (*Id.*, ¶ 56.) On that date, Equifax sent Johnson a copy of his credit file, which showed that the HFS Tradeline remained on the file. (*Id.*, ¶ 57.)

Equifax next received a telephone dispute of the HFS support obligation from Johnson on January 21, 2010, in which Johnson told Equifax that he disputed the item and that he "did not sign" the Support Order. (*Id.*, ¶¶ 58-59.) Equifax contacted HFS, which again verified that the tradeline was reporting correctly. (*Id.*, ¶ 60.)

Accordingly, Johnson's child support obligations were twice verified to Equifax by HFS. (*Id.*, ¶ 61.) Equifax sent Johnson a copy of his credit file that showed that the tradeline remained on the file. (*Id.*, ¶ 62.)

***SUMMARY OF THE ARGUMENT***

The district court's grant of summary judgment in the CRAs' favor and its denial of Johnson's cross-motions for summary ***29** judgment should be affirmed. With regard to the FCRA claims, the district court properly held that Johnson failed to produce any required evidence of an inaccuracy in his respective credit files. It is well settled in this Circuit and elsewhere that an FCRA plaintiff must present evidence of an inaccuracy as part of his burden of proof under §§ 1681e(b) and 1681i(a), which are the two FCRA provisions on which Johnson relied here. Johnson supplied no evidence that he did not, in fact, owe the child support that HFS reported to the CRAs. That failure doomed any FCRA claim, as the district court properly held. And, to the extent that Johnson contested the validity or amount of his arrearage under the Support Order, such a collateral attack in the guise of FCRA claims against the CRAs was not the proper vehicle to challenge his child support obligation.

Johnson's FCRA claims also failed on the independent ground that the FCRA explicitly required the CRAs to report the arrearage HFS had reported to them. The plain language of FCRA § 1681s-1 states that the CRAs *must* report any information about a person's failure to pay child support exactly as they receive that information from a state child support enforcement agency such as HFS. The ***30** CRAs did exactly as the FCRA required them to do here in reporting Johnson's child support arrearage.

The district court correctly granted summary judgment on the state-law claims as well. Johnson abandoned his ICFA claim

and the FCRA preempted the two negligence-based claims.

Likewise, the district court properly denied Johnson's improper requests to amend, which sought to add both constitutional and state-law claims. First, in April 2011, Johnson's motion for leave to file a second amended complaint was untimely and futile because he could not, as he attempted, assert constitutional claims against the CRAs, who are private entities. Next, Johnson's request to amend his complaint in opposing the CRAs' motions for summary judgment, without filing an accompanying motion under the Federal Rules of Civil Procedure, was procedurally inappropriate and futile in any event because the proposed claims would have been preempted by the FCRA.

Finally, Johnson's request for mandamus should be rejected. He comes nowhere close to meeting the stringent standards for such extraordinary relief.

## *31 *STANDARD OF REVIEW*

### I. GRANT OF SUMMARY JUDGMENT

The Court reviews a district court's decision to grant summary judgment *de novo. See Smith v. Bray*, 681 F.3d 888, 892 (7th Cir. 2012). When faced with a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted).

### II. DENIAL OF LEAVE TO AMEND

The Court reviews a district court's denial of leave to amend a complaint for an abuse of discretion. *See Stayart v. Yahoo! Inc.*, 623 F.3d 436, 439 (7th Cir. 2010). "A federal trial judge's decision is an abuse of discretion only if no reasonable person could agree with the decision." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 741 (7th Cir. 2007) (citation omitted).

### *32 III. MANDAMUS

A petitioner for a writ of mandamus must show both that he has "no other adequate means to obtain relief" and that his "right to the writ is clear and indisputable" and "appropriate under the circumstances." *FedEx Ground Package Sys., Inc. v. U.S. Judicial Panel on Multidistrict Litig.*, 662 F.3d 887, 890 (7th Cir. 2011). "[O]nly exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of this extraordinary remedy." *Id.*

## *ARGUMENT*

Johnson appeals the district court's grant of summary judgment in favor of the CRAs as well as the court's denial of his motion for leave to amend. Johnson also makes efforts to add new claims in his brief in this Court and to seek mandamus. Those efforts should be rejected and the district court's order should be affirmed in all respects.

### I. THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT IN FAVOR OF THE CRAS SHOULD BE AFFIRMED.

Johnson's claims against the CRAs can be grouped into two categories: (1) claims asserting violations of the FCRA and (2) state- ***33** law claims. The district court properly held that the former fail for numerous, independent reasons, while the latter are preempted by the FCRA.

#### A. The District Court Correctly Granted The CRAs' Motions For Summary Judgment On Johnson's FCRA Claims.

Johnson's core theory is that the CRAs "continuously report[ed] inaccurate information" on his credit files in the form of "overdue [child] support" that was reported by HFS, and which Johnson claims he did not owe. (Br. at 5.)6 Johnson presented no or insufficient evidence of inaccuracy, actual damages, and unreasonable procedures, the absence of any one of which supports the district court's entry of summary judgment. Moreover, the FCRA *required* the CRAs to report the HFS child support obligation; thus, Johnson's true legal dispute lies with HFS, and his lawsuit against the CRAs amounts to an impermissible collateral attack on HFS's determination of his overdue child support obligation. For any or all of these reasons, the district court correctly granted summary judgment in favor of the CRAs and denied Johnson's cross-motions.

| 5 | For ease of reference, where necessary, this second lawsuit will be referred to as Johnson II and the initial suit which forms the basis for the instant appeal as Johnson I.<br>Johnson II was docketed as 1:12-cv-00457 (N.D. Ill.) and assigned to the Honorable Robert W. Gettleman, United States District Judge. References to the Johnson II docket will be designated as "Johnson II Dkt. ___." |
|---|---|

***34 1. Summary Judgment In Favor Of The CRAs Was Appropriate On The FCRA Claims Because Johnson Did Not Establish The Required Element Of Inaccuracy.**

**a. Johnson Presented No Evidence Of Inaccuracy, Which Is A Required Element Of Proof Under The FCRA.**

The district court properly granted the CRAs' motions for summary judgment due to Johnson's failure to present any evidence of an inaccuracy in a credit report supplied by any of the CRAs. As the district court recognized, it is well established that a *prima facie* case under both §§ 1681e(b) and 1681i requires a plaintiff to prove that the information published by the CRA was in fact inaccurate. *See* SA-8-9; *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) (citing *Kuehling v. Trans Union, LLC*, 137 Fed. Appx. 904, 908 (7th Cir. 2005) ("Without evidence of some inaccuracy in the [CRA's] report or reinvestigation, [plaintiff] cannot establish that [the CRA] violated the FCRA--either § 1681e(b) or § 1681i(a)(1)(A).")).7 The burden of proving the inaccuracy is on ***35** the plaintiff. *See id.* (affirming summary judgment for CRA where plaintiff presented no evidence that his credit report was inaccurate); *Washington v. Equifax Credit Info. Servs., LLC*, 373 Fed. Appx. 633, 634 (7th Cir. 2010) (same). If the plaintiff "fails to satisfy this initial burden ... a court need not inquire further" and summary judgment is appropriate. *Cahlin*, 936 F.2d at 1156.

| 6 | Johnson's brief lists the reported arrearage as $15,520,000.00 (Br. at 1), but that amount has never been reported by the CRAs and presumably is a typographical error, as the reported amounts were often around $15,520.00. |
|---|---|

Johnson has not supplied any admissible evidence demonstrating an alleged inaccuracy in a credit report supplied by the CRAs. His only argument as to inaccuracy on appeal comes in ***36** the form of an illogical chart (Br. at 8) without explanation or citation to any evidence in the record.8 This unsupported chart continues to provide no competent evidence of inaccuracy.

| 7 | This Court and many others have held that failure to demonstrate an inaccuracy on a consumer report is fatal to a consumer's § 1681e(b) "reasonable procedures" claim. *See Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004) (to maintain a claim under § 1681e(b), a consumer must allege and prove "that a [CRA] prepared a report containing 'inaccurate' information"); *see also DeAndrade*, 523 F.3d at 66 ("[T]o prevail on a § 1681e(b) claim, a plaintiff must demonstrate that his or her credit report sports an *actual* inaccuracy."); *Beyer v. Firstar Bank N.A.*, 447 F. 3d 1106, 1108 (8th Cir. 2006) (affirming summary judgment where plaintiff "failed to present any evidence ... that the report was false"); *Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996) (a plaintiff cannot prevail on a § 1681e(b) claim "without proving that the information in question was inaccurate"); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) ("In order to make out a prima facie violation of [the FCRA] ... a consumer must present evidence tending to show that a [CRA] prepared a report containing 'inaccurate' information.").<br>Similarly, this Court has held that no claim under § 1681i for failure to reasonably reinvestigate lies where the disputed information is accurately reported. *See Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005) ("Before any discussion of the reasonableness of a reinvestigation is necessary, ... [plaintiff] must show that [he] 'suffered damages a result of the inaccurate information.' "); *see also Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (noting that majority of courts interpreting § 1681i have required the plaintiff to demonstrate an actual inaccuracy, as the "inaccuracy requirement comports with the purpose of the FCRA, which is to protect consumers from the transmission of inaccurate information about them") (citation omitted). |
|---|---|

In essence, Johnson claims that the CRAs could not lawfully report the overdue child support debt because no court order states an arrearage. But, as the district court noted, this argument is misplaced. An overdue child support obligation need not be found in a court order to properly be reported by a CRA, under the provisions of the FCRA. Indeed, just the opposite is true: as discussed below, a CRA *must* report overdue child support information reported to the CRA by a state child support enforcement agency. *See* 15 U.S.C. § 1681s-1; SA-9-10. Johnson's argument that the court records do not reflect a judgment for overdue support does not demonstrate that he does not actually owe the overdue support calculated by HFS that the

CRAs then reported.9 This argument simply provides no evidence of inaccuracy, *37 and the district court properly granted the CRAs' motions for summary judgment and denied Johnson's cross-motions.10

| 8 | Johnson's chart purportedly comes from his April 27, 2012 motion to alter or amend the judgment (Dkt. 236) filed in the district court after he filed his notice of appeal (Dkt. 238) on April 18, 2012. That motion similarly contained no citation to admissible evidence. |
|---|---|

| 9 | Indeed, Johnson blatantly ignores the fact the court records actually do contain evidence of his delinquency. (*See* Dkt. 147, ¶¶ 38-47.) |
|---|---|

**b. Because Johnson's Real Dispute Lies With HFS, His FCRA Claims Against The CRAs Represent An Impermissible Collateral Attack On HFS's Determination Of His Child Support Arrearage.**

Johnson's lawsuit is premised on the mistaken belief that because the Support Order, which establishes his child support obligation, does not contain a determination of "overdue" support, he must not have an overdue support obligation. The Support Order merely sets forth, for the first time, Johnson's obligation to pay child support. Once that Support Order was entered, HFS began its role of enforcing and collecting those child support obligations. *See* 89 Ill. Adm. Code § 160.10. Only later, when the delinquencies grew (to over $21,000), did HFS begin reporting the overdue amounts to the CRAs, which they included in their credit files for Johnson.

***38** In this regard, Johnson's suit against the CRAs amounts to nothing more than an attempted end-run around the state's administrative procedures for contesting a determination of overdue support. Johnson contends that HFS cannot report information regarding his overdue child support because the Support Order "states on its face no arrearage." (*See* Br. at 8.) But Johnson cannot maintain FCRA claims against the CRAs on this basis. Here, Johnson "crosse[s] the line between alleging a factual deficiency that [the CRAs were] obliged to investigate pursuant to the FCRA and launching an impermissible collateral attack against" HFS's reporting of the overdue obligation. *DeAndrade*, 523 F.3d at 68; *see also Carvalho*, 629 F.3d at 892 ("reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts").

The proper course Johnson should have followed to contest the accuracy of the reporting was to dispute it with HFS, which is permitted under Illinois law. *See* 89 Ill. Adm. Code § 160.70(h)(2). Johnson cannot circumvent the administrative process established by Illinois law by collaterally attacking the accuracy of his respective credit files through a lawsuit against the CRAs. *See* ***39** *DeAndrade*, 523 F.3d at 68. Summary judgment should be affirmed for this reason alone.

**2. Summary Judgment For The CRAs On The FCRA Claims Was Independently Appropriate Because The Tradelines At Issue Contained Information Furnished By HFS, Which The FCRA Required The CRAs To Report.**

As a matter of law, the CRAs acted consistently with the FCRA's unambiguous provisions requiring that they report information relating to overdue child support. Indeed, the plain language of FCRA § 1681s-1 states that the CRAs *must* report any information about a person's failure to pay child support exactly as they receive that information from a State child support enforcement agency:

Notwithstanding any other provision of this subchapter [15 U.S.C. § 1681 *et seq.*], a consumer reporting agency shall include in any consumer report furnished by the agency in accordance with section 1681b, any information on the failure of the consumer to pay overdue support which --

(1) is provided --

(a) to the consumer reporting agency by a State or local child support enforcement agency; or

***40** (b) to the consumer reporting agency and verified by any local, State or Federal government agency; and

(2) antedates the report by 7 years or less.

15 U.S.C. § 1681s-1. This section clearly establishes a mandatory duty by using the term "shall." *See Lopez v. Davis*, 531 U.S. 230, 241 (2001) (contrasting "the permissive 'may' " with the "mandatory 'shall' " for purposes of statutory interpretation); *Sherman ex rel. Sherman v. Koch*, 623 F.3d 501, 524 (7th Cir. 2010) (interpreting "shall" in a statute as "a mandatory, not discretionary term"). The district court applied the logical interpretation of § 1681s-1 in concluding that the CRAs were required to report the information from HFS. *See* SA-11.11

| 10 | Johnson argues in this Court that he is entitled to summary judgment based on the doctrine of collateral estoppel. (Br. at 14.) As Johnson did not make such an argument before the district court, he has waived that issue in this Court. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) ("It is a well-established rule that arguments not raised to the district court are waived on appeal."). |
|---|---|

It is undisputed that HFS is a "State ... child support enforcement agency" within the meaning of the FCRA. *See* ***41** 15 U.S.C. § 1681a(j)(2) ("The term 'State or local child support enforcement agency' means a State or local agency which administers a State or local program for establishing and enforcing child support obligations."); 89 Ill. Adm. Code § 160.10 (HFS is tasked with establishing, modifying, enforcing, and collecting child support obligations from responsible relatives and has sole responsibility for establishing support obligations and enforcing and collecting support). Nor does Johnson dispute that the CRAs received information regarding overdue child support amounts owed by him from HFS.

Likewise, it is undisputed that Johnson's debt to HFS was an "overdue support" obligation, which is "the amount of a delinquency pursuant to an obligation determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a minor child which is owed to or on behalf of such child." 42 U.S.C. § 666(e); *see also* 15 U.S.C. § 1681a(j)(1) (cross referencing 42 U.S.C. § 666(e) for the definition of "overdue support"). HFS reported Johnson's delinquency that grew out of the obligation established in the Support Order entered in 2004.

***42** Here, the CRAs reported Johnson's overdue child support obligation exactly as it was reported to them by HFS, as required by § 1681s-1. (Dkts. 121, ¶ 59; 140, ¶ 62; 147, ¶ 61.) The CRAs did not need a court order holding that Johnson owed overdue support in order to report the information, as the FCRA itself plainly mandates that reporting. The district court correctly granted summary judgment on this ground alone.12

| 11 | The district court's interpretation of the plain language of the statute is further supported by the legislative history of § 1681s-1. For example, Senator Bryan explained that the bill that became § 1681s-1 would "require consumer reporting agencies to include the information in their reports if the information is provided to them by a child support agency" because the "[f]ailure of a deadbeat dad to live up to his legal obligation to support his children ... should become a part of his financial credit history." *Ted Weiss Child Support Enforcement Act of 1992: Hearing on H.R. 6022, S. 2596 Before the Senate Banking Comm.*, 102nd Cong. S16643-S16644 (1992), *available at* http://thomas.loc.gov/cgi-bin/query/z? r102:S05OC2-B42:#. |
|---|---|

**3. Johnson's §§ 1681e(b) And 1681i Claims Fail As A Matter Of Law For Other Reasons As Well.**

The district court properly held that the CRAs could not be held liable under §§ 1681e(b) and 1681i13 for accurately reporting ***43** the information that § 1681s-1 requires them to report, particularly where the undisputed evidence shows that in all instances the CRAs complied in every respect with the requirements of the former provisions. The FCRA does not impose strict liability. *See Sarver*, 390 F.3d at 971 ("As we have made clear, the FCRA is not a strict liability statute."). The crux of Johnson's FCRA claims seems to be that the CRAs relied on HFS only as the source of information and did not independently verify the child support debt with another source. But the FCRA does not impose such duties on CRAs under these circumstances.

| 12 | Johnson raises several constitutional arguments in his brief in this Court. For example, he argues that the CRAs' interpretation of § 1681s-1 deprives him of his First Amendment right to petition for a redress of grievances. (Br. at 24.) He also contends that the district court's decision violated his rights to (1) complain to the government implicitly recognized in the Fourteenth Amendment's Privileges and Immunities Clause and (2) inform the government concerning a violation of its laws. (Br. at 27.) Having not raised these arguments in the district court, Johnson has waived the right to present them in this Court. *See Puffer*, 675 F.3d at 718 ("It is a well-established rule that arguments not raised to the district court are waived on appeal."). Likewise, Johnson's new argument that "Congress did not specify in § 1681s-1 that the Court (either trial or appellate) may make such a determination [of qualified or conditional immunity]" (Br. at 12) has been waived for the same reason. An appellant "cannot change course on appeal to raise an argument different than the one presented to the district court." *Puffer*, 675 F.3d at 720. |
|---|---|

A CRA may reasonably rely on its source of information both in assuring the accuracy of its information and in reinvestigating a consumer's dispute. *See Sarver*, 390 F.3d at 971-72; *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285-87 (7th Cir. 1994). Furthermore, as detailed above, FCRA § 1681s-1 *requires* that the CRAs rely on HFS. The CRAs complied with § 1681s-1 at all times, accurately reporting ***44** information exactly as they received it from HFS, a state child support enforcement agency. Johnson's reliance on *Henson* is misplaced, as that case is simply inapplicable here (and in any event, his arguments misinterpret that case).

Johnson is similarly incorrect in asserting that each of the CRAs "have admitted that they simply parroted the inaccurate

information identified as overdue" support (Br. at 14), *see, e.g.*, Dkt. 196, Experian Rep. Br. at 9-10 ("Plaintiff is further mistaken that Experian 'simply parrots' information from a third party."), and that the CRAs do not contest that his damages are cognizable under the FCRA (Br. at 11), *see, e.g.*, Dkt. 196, Experian Rep. Br. at 12-15 ("Plaintiff cannot prove that Experian caused him cognizable injury."). Johnson's willful ignorance of the undisputed facts and the CRAs' arguments before the district court is wholly improper on appeal.14

| 13 | Section 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Section 1681i provides that if a consumer provides notice to a CRA that he disputes "the completeness or accuracy of any item of information contained in a consumer's file," then the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate [.]" 15 U.S.C. § 1681i. |
|---|---|

***45 B. The District Court Properly Granted Summary Judgment For The CRAs On The State-Law Claims On The Basis That The FCRA Preempts Such Claims.**

The district court correctly held that Johnson's state-law claims for negligence and negligent interference with prospective economic advantage are preempted by the FCRA.15 The FCRA states that "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency ... except as to *false information* furnished with *malice or willful intent* to injure such consumer." 15 U.S.C. § 1681h(e) (emphasis added); *see also* *46 *Purcell v. Bank of America*, 659 F.3d 622, 624-25 (7th Cir. 2011) (holding that defamation, invasion of privacy, and negligence claims were preempted by FCRA); *Nwoke v. Countrywide Home Loans, Inc.*, 251 Fed. Appx. 363, 365 (7th Cir. 2007) (affirming summary judgment and noting that the FCRA "preempts state-law negligence claims for providing inaccurate information to credit-reporting agencies").

| 14 | Additionally, Johnson's *res ipsa loquitur* argument is without merit. As an initial matter, Johnson first presented this argument in the district court only in his reply brief in support of his cross-motions, not in opposition to the CRAs' motions for summary judgment or in his briefs in support of his own cross-motions. It is well settled that "arguments raised for the first time in a reply brief are waived." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). Even on the merits, though, the theory of *res ipsa loquitur* is inapplicable. For the doctrine to apply, "it must be obvious to the trier of fact that an accident of the type that injured the plaintiff rarely occurs in the absence of negligence." *Clifford v. Crop Prod. Servs., Inc.*, 627 F.3d 268, 273 (7th Cir. 2010). As this Court explained in *Clifford*, "[a] typical example is where, after surgery, a plaintiff discovers that a surgeon's sponge was left inside his abdomen. In such a case, the trier of fact can infer without considering additional evidence that someone in the operating room was negligent." *Id.* (citations omitted). Johnson's situation does not remotely present such a case, and he fails to explain how the doctrine could apply in an FCRA action. *Cf. Cyrus v. Town of Mukwonago*, 624 F.3d 856, 864 (7th Cir. 2010) (explaining that the theory of *res ipsa loquitur* is "improper in a § 1983 action"). |
|---|---|

Before the district court and now on appeal, Johnson has not identified any admissible evidence to suggest even remotely that the CRAs acted with malice or willful intent. As discussed above, he also has not shown that the CRAs have furnished any false information. Further, Johnson could not show malice or willful intent on the part of the CRAs because the CRAs at all times complied with their FCRA obligations. *See Moline v. Experian Info. Solutions, Inc.*, 289 F. Supp. 2d 956, 959 (N.D. Ill. 2003) ("Compliance with the FCRA precludes a finding of malicious intent."); *see also Sarver*, 390 F.3d at 971-72 (a CRA may rely on information provided by a reliable furnisher of information); *Ruffin-Thompkins*, 422 F.3d at 610 (affirming district court's rejection of plaintiff's claim of willfulness where plaintiff's § 1681i claim failed). And, by their very nature, Johnson's negligence claims are barred *47 outright. *See Wolfe v. MBNA Am. Bank*, 485 F. Supp. 2d 874, 887 (W.D. Tenn. 2007) (explaining the "paradoxical nature" of § 1681h(e) and noting that a *negligence* claim can never be malicious or willful). Because Johnson's state-law negligence claims are preempted by the FCRA, the district court properly granted summary judgment in favor of the CRAs on those claims.

**II. THE DISTRICT COURT PROPERLY DENIED JOHNSON'S REQUESTS FOR LEAVE TO AMEND WHERE HIS PROPOSED AMENDMENTS WERE UNTIMELY AND FUTILE.**

Johnson also complains that the district court erred in denying him leave to amend his complaint. That argument should be rejected. In two attempts to amend his complaint, Johnson failed each time to observe the procedural prerequisites for attempting an amendment, and each time the proposed amendments would have been futile in any case.

**A. Johnson's Attempt To Seek Leave To Amend His Complaint In His Summary Judgment Briefs Failed Under**

**The Federal Rules And On The Merits.**

The district court did not abuse its discretion in denying Johnson leave to amend his complaint where he requested leave in his briefs in opposition to the CRAs' motions for summary judgment. In other words, Johnson did not properly seek leave to amend--he ***48** simply made a request for leave in his briefs in opposition to each CRA's motion for summary judgment. (Dkts. 187, 188, 189.) Without moving the district court for leave to amend his complaint as required by Fed. R. Civ. P. 15, he forfeited his opportunity to amend. *See Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 513 (7th Cir. 2009) (explaining that a plaintiff forfeits an argument regarding amending his complaint where he did not move for leave before the district court). The district court, therefore, properly denied Johnson's request to amend "because he did not file a motion for leave to amend under Rule 15." SA-15.

Further, the district court properly held that even if Johnson had complied with Rule 15 and filed a proper motion for leave to amend, his proposed amendment would have been denied because his proposed claims would be preempted by the FCRA. In his opposition to the CRAs' motions for summary judgment, Johnson sought leave to bring new "causes of action for defamation of credit, false light, [and] invasion of privacy." (Dkts. 187, p. 33; Dkt. 188, p. 33; Dkt. 189, p. 33.) As discussed above, the district court properly held that Johnson's original state-law causes of action were preempted by the FCRA. The same fate would befall the proposed ***49** claims of "defamation of credit, false light, [and] invasion of privacy." *See Purcell*, 659 F.3d at 624-25 (holding that state-law claims of defamation, invasion of privacy, and negligence were preempted by FCRA). As a result, they could not survive a motion for summary judgment, just as his original state-law claims did not survive summary judgment.

Accordingly, it would have been futile to allow Johnson leave to amend his complaint to add preempted claims. As this Court has held, "[i]t is not an abuse of discretion to deny a motion to amend a complaint when such amendment would be futile. An amendment is futile if the complaint would not survive a motion for summary judgment." *King ex rel. King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007) (citations omitted). Moreover, despite Johnson's unsupported argument, raised for the first time on appeal, the fact that his claims are preempted does not amount to a violation of his First Amendment rights to petition, free speech, or free expression. Because amendment of the complaint to add causes of action sounding in "defamation of credit, false light, [and] invasion of privacy" would have been futile, the district court did ***50** not abuse its discretion in denying leave to amend to add those claims.

**B. The District Court Did Not Abuse Its Discretion In Denying Johnson's Motion For Leave To Amend in April 2011.**

In April 2011, Johnson filed a motion for leave to amend his complaint, which the district court properly denied on two grounds.16 (*See* Dkts. 72, 86; SA-12, SA-25-26.) First, the motion was untimely, as the district court's scheduling order under Fed. R. Civ. P. 16 established that February 18, 2011 would be the deadline for amending the pleadings. (Dkt. 51.) Prior to the hearing on Johnson's motion for leave, the district court instructed Johnson to be prepared to address why he did not move for leave to amend prior to February 18. (Dkt. 81.) At the hearing on the motion, Johnson failed to provide good cause to modify the scheduling order after the deadline passed. Nevertheless, affording Johnson great leniency, the district court suggested that if Johnson was to file another motion for leave to file a second amended complaint, he ***51** "should address the timing issue and why it would be justifiable for [the court] to amend the pleadings past the February date that had been previously set." (SA-30, lines 5-10.) Johnson never filed a subsequent motion for leave to amend.

| 15 | The district court also deemed Johnson's ICFA claim abandoned because he did not address it in opposing summary judgment. Any consumer fraud argument is thereby waived on appeal (and, Johnson also has not raised a consumer fraud argument in his brief on appeal). *See Brown v. Automotive Components Holdings, LLC*, 622 F.3d 685, 691 (7th Cir. 2010) ("Arguments not raised in the district court are considered waived on appeal."). |
|---|---|

Second, the district court denied Johnson's motion because his proposed class action allegations and constitutional claims were futile. The court explained that the CRAs "are not government actors. They are private entities, and private entities cannot be sued -- can't violate the Constitution." (SA-25, lines 20-24.) Again affording Johnson leniency, the court explained that the proposed "second amended complaint does not plead facts that would raise that claim to a level of plausibility. If you want to try again, you certainly can." (SA-26, lines 11-14.) As noted above, Johnson never filed a subsequent motion for leave to amend.

On appeal, Johnson impermissibly argues for the first time that he should be allowed to file claims "for damages under 42 U.S.C. § 1983" based on an alleged violation of the Fourteenth Amendment by the CRAs (Br. at 20) and "a defamation action" under the First Amendment (Br. at 24). The section of Johnson's brief that proposes these constitutional claims (Br. at 20-23) is rife ***52** with issues, statements, and arguments that he did not assert in the district court, including:

• Johnson claims "a property right in the Withholding Order showing no arrearage in child support entered by the state court an entitlement guaranteed by the Fourteenth Amendment." (Br. at 20.)

• Johnson "claims a property right to have the term 'overdue' child support reported as the term is defined by the FCRA." (Br. at 22.)

• Equifax filed " 'a Judicial Order/Notice To Withhold Income for Child Support' purportedly 'establishing' child support but not bearing a certificate of service directed to [Johnson] therefore inadvertently admitting a violation of the constitutional notice requirement established by the Court in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)." (Br. at 22.)

• The CRAs "cannot [show] how [HFS] under the Constitution shares any jurisdiction, *i.e.*, Article III concurrent with a state court wherein the 'Judicial Order/Notice To Withhold Income for Child Support' alleg[edly] modified a Withholding Order." (Br. at 23.)

• The CRAs "failed to explain how the 'Judicial Order/Notice To Withhold Income for Child Support' is contrary to the holding in *Wetherill v. University of Chicago*, 518 F. Supp. 1387, 1389 (N.D. Ill. 1981), a document admissible into evidence under [Federal Rule of Evidence] 803(8)." (Br. at 23.)

These arguments are both new on appeal and unsupported and underdeveloped in any event, and such arguments are waived. *See Puffer*, 675 F.3d at 718 ("even arguments that have been raised may still be waived on appeal if they are underdeveloped, ***53** conclusory, or unsupported by law" and "raising an issue in general terms is not sufficient to preserve specific arguments that were not previously presented"). Further, to the extent any of these arguments were made in a cursory or general manner below, the twists in those arguments now on appeal are improperly raised here.

In any event, as the district court correctly recognized, granting Johnson leave to amend his complaint to add constitutional claims against the CRAs, who are private entities, would be futile. To state a claim for a constitutional violation, Johnson must "establish that [he was] deprived of a right secured by the Constitution of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). There are two situations in which a private party will be held responsible as acting under color of state law. The first is "where the state effectively directs or controls the actions of the private party such that the state can be held responsible for the private party's decision." *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 628 (7th Cir. 1999) (citing ***54** *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996)). The second is "when the state delegates a private function to a public entity." *Id.* (citing *Wade*, 83 F.3d at 904).

Johnson claims that he has a "property right" in the state court order establishing his child support obligation. (Br. at 20.) Assuming (without conceding) that he does have such a right, Johnson still has not shown that an alleged deprivation of that right occurred under color of state law. He has not presented an argument that either situation is present here.

Earlier this year, a district court in Alabama addressed this issue and held that Equifax and Experian were not state actors under factual circumstances similar to those in this case. *See Muhammad v. Bethel-Muhammad*, No. 11-0690, 2012 WL 1854315 (S.D. Ala. May 21, 2012) (granting motion to dismiss claim that Equifax and Experian violated the Fourteenth Amendment "by the act of disseminating erroneous" information they obtained from state agencies and court records). There, the only factual allegation linking Equifax and Experian's conduct to the state was that they received erroneous information from state agencies, and when the plaintiff protested Equifax and Experian's dissemination of that information, Equifax and Experian allegedly "chose to accept the ***55** word of the State [agencies], over Federal court documents that were given to them." *Id.* at *6. The court rejected the plaintiff's argument that the "state [agencies] were so interdependent with [Equifax and Experian] that they formed a joint enterprise." *Id.* Instead, the allegation "denotes only that, faced with conflicting information concerning the existence and/or validity of a debt, [Equifax and Experian] decided, on their own, not to accept the plaintiff's version." *Id.*

As in *Muhammad*, the only factual information before the Court is that the CRAs received information from a state agency, HFS, and that the CRAs included that information, as they received it from HFS, in Johnson's credit file. In a conclusory manner, Johnson contends that the CRAs "jointly engaged" with a state agency, presumably based on the fact that the CRAs received the child support obligation information from a state agency, HFS, and the CRAs verified the accuracy of the information with HFS upon receipt of Johnson's disputes. Johnson has not explained how the CRAs' consultation with and receipt of information from HFS could transform the CRAs into state actors. As in *Muhammad*, there is no state action here.

***56** Accordingly, and as the district court recognized in April 2011, Johnson cannot state a claim under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment, as the CRAs are private entities acting according to their own policies and procedures (and in compliance with the laws of the United States). For the same reason, Johnson cannot state a claim for violations of the First Amendment. Because any proposed amendment to the complaint to add such constitutional claims would be futile, the Court should affirm the district court's decision to deny Johnson leave to amend his complaint.

## III. JOHNSON'S REQUEST FOR MANDAMUS IS WITHOUT MERIT.

Finally, Johnson seeks mandamus to require the district court to allow Johnson a jury trial. (Br. at 29-31.) The Court should reject that request. Mandamus "is a drastic remedy traditionally used to confine a lower court to the lawful exercise of its jurisdiction or to compel it to exercise its authority when it has a duty to do so." *In re Ford Motor Co.*, 344 F.3d 648, 651 (7th Cir. 2003) (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (*per curiam*)). A writ of mandamus is appropriate only where the lower court's ***57** decision "is effectively unreviewable at the end of the case, it inflicts irreparable harm, and it so far exceeds the proper bounds of judicial discretion as to be legitimately considered usurpative in character, or in violation of a clear and indisputable legal right, or, at the very least, patently erroneous." *Id.* (citation omitted).

Granting summary judgment does not violate the Seventh Amendment such that mandamus is warranted. *See Harris v. Interstate Brands Corp.*, 348 F.3d 761, 762 (8th Cir. 2003) (affirming summary judgment and denying petition for writ of mandamus seeking jury trial). This Court has made it clear that "summary judgment and Federal Rule of Civil Procedure 56 do not violate the Seventh Amendment," as "[t]he Seventh Amendment does not entitle parties to a jury trial when there are no factual issues for a jury to resolve." *Burks v. Wis. Dept. of Transp.*, 464 F.3d 744, 759 (7th Cir. 2006); *see also Harris*, 348 F.3d at 762 ("A grant of summary judgment does not violate the Seventh Amendment right to a jury trial. This right exists only with respect to disputed issues of fact.") (citing *Fidelity & Deposit Co. v. United States*, 187 U.S. 315, 319-20 (1902)). Johnson's argument "flies in the face of firmly established law." ***58** *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 676 (7th Cir. 2002) (rejecting argument that Fed. R. Civ. P. 56 violates the Seventh Amendment).

There is nothing special about Johnson's case against the CRAs that would exempt it from the normal procedural controls like summary judgment. The district court's order granting summary judgment did not deprive Johnson of his Seventh Amendment rights. And, because the district court's decision is before this Court for appellate review, mandamus is unnecessary.

As a result, Johnson's attempts to invoke the "all writs" statute, 28 U.S.C. § 1651(a), the "full faith and credit" clause of 28 U.S.C. § 1738, and the doctrines of issue and claim preclusion must fail. While this Court is empowered under § 1651(a) to issue all writs "necessary or appropriate," a writ of mandamus is neither necessary nor appropriate here, for the reasons discussed above. Similarly, § 1738 is inapplicable here because the enforcement of the Support Order itself was not at issue before the district court. Instead, the district court addressed the CRAs' obligations to report information supplied to them by HFS as prescribed by FCRA § 1681s-1. If anything, the district court actually gave full faith and ***59** credit to the Support Order as providing the basis for establishing Johnson's child support obligation that was enforced by HFS.

Finally, Johnson's argument for mandamus based upon claim preclusion and issue preclusion is incomprehensible. He points to his separate, later-filed, duplicative lawsuit against these same CRAs based on the same facts as those at issue here, which the district court dismissed as barred by *res judicata* in Johnson II. (*See* SA-33-35). The fact that his duplicative lawsuit was dismissed does not mean that his Seventh Amendment rights were violated here in this first lawsuit. Johnson's request for mandamus should be denied.

## *CONCLUSION*

For the foregoing reasons, the district court's orders granting summary judgment for the CRAs, denying Johnson's cross-motions, and denying Johnson's motion for leave to amend his complaint should be affirmed in their entirety.

**Appendix not available.**

| 16 | It is unclear from Johnson's notice of appeal and appellant brief whether he intends to raise the district court's April 2011 interlocutory order on appeal. Nonetheless, out of an excess of caution, the CRAs address the propriety of that order here. |
|---|---|

End of Document © 2012 Thomson Reuters. No claim to original U.S. Government Works.