*Exhibit "R"*

2004 WL 3155937 (C.A.9) (Appellate Brief)
United States Court of Appeals,
Ninth Circuit.

Jason DENNIS, Plaintiff-Appellant,

v.

BEH-1, Llc, a limited liability company in the State of California Experian Information Solutions, Inc., an Ohio
Corporation, Defendants-Appellees.

No. 04-56230.
December 28, 2004.

Appeal from a Judgment of the United States District Court Central District of California (Hon. Manuel L. Real)
Dist. Ct. No. Lacv-03-7064 R (CWx)

### Defendant-Appellee Experian Information Solutions, Inc.'s Answering Brief

Alexander Frid, Jones Day, 555 West Fifth Street, Suite 4600, Los Angeles, California 90013, Telephone: (213) 489-3939,
Facsimile: (213) 243-2530, Attorneys for Defendant-Appellee, Experian Information Solutions, Inc.

### CORPORATE DISCLOSURE STATEMENT

Defendant-Appellee Experian Information Solutions, Inc.'s ("Experian") indirect parent company is GUS, plc ("GUS")
ultimately owns one hundred percent of Experian and is publicly traded on the London Stock Exchange.

### RECOMMENDATION ON ORAL ARGUMENT

Defendant-Appellee Experian Information Solutions, Inc. suggests that the issues presented can be determined upon the
record and that oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs and
record, and oral argument would not significantly aid the panel's decisional process. *See* Fed. R. App. P. 34(a)(2)(C).

| *i TABLE OF CONTENTS | |
| --- | --- |
| I. STATEMENT OF JURISDICTION | 1 |
| II. STATEMENT OF THE ISSUES | 1 |
| III. STATEMENT OF THE CASE | 1 |
| IV. STATEMENT OF FACTS | 4 |
| A. Dennis' Underlying Unlawful Detainer Action | 4 |
| B. Experian's Reinvestigation in Response to Dennis' Dispute Concerning the Accuracy of the Judgment in his Credit File | 5 |
| C. The Judgment Entered Against Dennis in the LASC's Records Was Vacated After This Action Was Filed | 6 |

| | |
|---|---|
| D. Upholding the Admission To Request No. 9 Would Have Eviscerated Experian's Ability to Present its Case on the Merits | 7 |
| E. Willfulness | 8 |
| V. SUMMARY OF THE ARGUMENT | 9 |
| VI. STANDARD OF REVIEW | 10 |
| VII. ARGUMENT | 11 |
| A. The District Court Properly Granted Summary Judgment to Experian on Dennis' Reasonable Procedure and Reinvestigation Claims | 11 |
| 1. Experian Reported Accurate Information Regarding the Judgment | 12 |
| 2. Experian's Reinvestigation of the Judgment Complied with the Mandates of Sections 1681i(a) and 1785.16 as a Matter of Law | 18 |
| a. Experian's Reinvestigation Was Reasonable | 20 |
| *ii b. Experian Was Not Required To Go Beyond Its Initial Source of Information | 23 |
| c. The Undisputed Evidence Demonstrates that Experian Complied with its Reinvestigation Obligations | 25 |
| 3. Dennis Is Unable To Demonstrate That He Suffered Any Actual Damages Or that Experian Caused Him Any Injury | 27 |
| B. The District Court Also Properly Disposed of Dennis' Claims for Punitive and Statutory Damages Because Dennis Failed To Present Any Evidence that Experian Acted Willfully | 31 |
| C. The District Court Properly Granted Experian's Motion To Amend its Response to Dennis' Request for Admission | 33 |
| 1. Dennis Has Abandoned or Waived this Issue on Appeal | 34 |
| 2. The Circumstances Under Which the Order Was Granted Satisfy the Ninth Circuit's Two-Pronged Test for Amending and Withdrawing Responses to Requests for Admission | 36 |

| | |
|---|---|
| a. Upholding the Admission to Request No. 2 Would Have Eviscerated Experian's Ability to Present its Case on the Merits | 37 |
| b. The Amendment of the Admission Did Not Result in Prejudice to Dennis | 41 |
| VIII. CONCLUSION | 44 |

| *iii TABLE OF AUTHORITIES | |
|---|---|
| **CASES** | |
| 999 v. C.I.T. Corp , 776 F.2d 866 (9th Cir. 1985) | 11, 42 |
| American Auto Assoc. v. AAA Legal Clinic, 930 F.2d 1117 (5th Cir. 1991) | 42 |
| Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) | 10, 12 |
| Arredondo v. Ortiz, 365 F.3d 778 (9th Cir. 2004) | 34 |
| Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242 (9th Cir. 1981) | 40 |
| Bear Lake Watch, Inc. v. F.E.R.C., 324 F.3d 1071 (9th Cir. 2003) | 34 |
| Bergemann v. United States, 820 F.2d 1117 (10th Cir. 1987) | 41 |
| Boothe v. TRW Credit Data, 768 F. Supp. 434 (S.D.N.Y. 1991) | 20, 21 |
| Brook Village N. Assoc. v. General Elec. Co., 686 F.2d 66 (1st Cir. 1982) | 41 |
| Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151 (11th Cir. 1991) | 13, 15, 27 |
| Carroll v. Nakatani, 342 F.3d 934 (9th Cir. 2003) | 34 |
| Casella v. Equifax Credit Info. Serv., | |

| | |
|---|---|
| 56 F.3d at 469 (2d Cir. 1995), *cert. denied*, 517 U.S. 1150 (1996) | 30, 32 |
| *iv *Cavalier v. Random House, Inc.*, 297 F.3d 815 (9th Cir. 2002) | 34 |
| *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) | 10 |
| *County of Los Angeles v. Ranger Ins. Co.*, 26 Cal. App. 4th 61 (1994) | 14, 39 |
| *Cousin v. Trans Union*, 246 F.3d 359 (5th Cir. 2001) | 30, 33 |
| *Crabill v. Trans Union, LLC*, 259 F.3d 662 (7th Cir. 2001) | 27 |
| *Cushman v. Trans Union Corp.*, 115 F.3d 220 (3rd Cir. 1997) | 25 |
| *Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004) | 34 |
| *Evans v. The Credit Bureau*, 904 F. Supp. 123 (W.D.N.Y. 1995) | 17 |
| *F.D.I.C. v. Prussia*, 18 F.3d 637 (8th Cir. 1994) | 44 |
| *Field v. Trans Union L.L.C.*, No. 01 C 6398, 2002 WL 849589 (N.D. Ill. May 3, 2002) | 31 |
| *Gill v. Kostroff*, 82 F. Supp. 2d 1354 (M.D. Fla. 2000) | 29 |
| *Grays v. Trans Union Credit Information Co.*, 759 F. Supp. 390 (N.D. Ohio 1990) | 18 |
| *Ground Zero Center for Non-Violent Action v. U.S. Dept. of Navy*, 383 F.3d 1082 (9th Cir. 2004) | 34 |
| *v *Guimond v. Trans Union Credit Information Co.*, 45 F. 3d 1329 (9th Cir. 1995) | 13, 30, 37 |
| *Hadley v. United States*, 45 F.3d 1345 (9th Cir. 1995) | 33, 36, 37, 41, 43 |

| | |
|---|---|
| *Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994) | 17, 23, 24, 25 |
| *Humble v. Boeing Co.*, 305 F.3d 1004 (9th Cir. 2002) | 34, 35 |
| *Independent Towers of Washington v. Washington*, 350 F.3d 925 (9th Cir. 2003) | 34, 35 |
| *International Healthcare Management v. Hawaii Coalition For Health*, 332 F.3d 600 (9th Cir. 2003) | 34 |
| *Koerner v. Grigas*, 328 F.3d 1039 (9th Cir. 2003) | 34 |
| *Lee v. Experian Info. Solutions*, No. 02 C 8424, 2003 WL 22287351 (N.D. Ill. Oct. 2, 2003) | 20, 21, 23, 24, 32 |
| *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002) | 34 |
| *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) | 11 |
| *McClanahan v. Aetna Life Insurance Co.*, 144 F.R.D. 316 (W.D. Va. 1992) | 37 |
| *McPhee v. Chilton Corp.*, 468 F. Supp. 494 (D. Conn. 1978) | 18 |
| *Medical Laboratory Mgmt. v. American Broadcasting Cos., Inc.*, 306 F.3d 806 (9th Cir. 2002) | 26 |
| *vi North Louisiana Rehabilitation Center, Inc. v. U.S.*, 179 F. Supp. 2d 658 (W.D. La. 2001) | 38 |
| *Paladin Associates, Inc. v. Montana Power Co.*, 328 F.3d 1145 (9th Cir. 2003) | 34, 35 |
| *Palmer v. GTE California, Inc.*, 30 Cal. 4th 1265 (2003) | 17 |
| *Patenaude v. Equitable Life Assurance Society of U.S.*, 290 F.3d 1020 (9th Cir. 2002) | 34 |

| | |
|---|---|
| *Houghton v. New Orleans Public Belt R.R.*, 143 F. Supp. 751 (E.D. La. 1983) Pa. 1977) | 28 |
| *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002) | 34 |
| *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986) | 33 |
| *Pulver v. Avco Financial Servs.*, 182 Cal. App. 3d 622 (1986) | 12 |
| *Reyes v. Vantage Steamship Co.*, 672 F.2d 556 (5th Cir. 1982) | 40 |
| *Riley v. Equifax Credit Information Servs., Inc.*, 194 F. Supp. 2d 1239 (S.D. Ala. 2002) | 29 |
| *Ropfogel v. U.S.*, 138 F.R.D. 579 (D. Kan. 1991) | 38, 40 |
| *Ruffin-Thompkins v. Experian Info. Systems, Inc.*, No. 03 C 683, 2003 U.S. Dist. LEXIS 23647 (N.D. Ill. Dec. 31, 2003) | 23, 24, 25, 32 |
| *Sonoda v. Cabrera*, 255 F.3d 1035 (9th Cir. 2001) | 42 |
| *vii Spence v. TRW, Inc.*, 92 F.3d 380 (6th Cir. 1996) | 13 |
| *Stevenson v. TRW, Inc.*, 987 F.2d 288 (5th Cir. 1993) | 32 |
| *Stewart v. Credit Bureau Inc.*, 734 F.2d 47 (D.C. Cir. 1984) | 21 |
| *Thomas v. City of Beaverton*, 379 F.3d 802 (9th Cir. 2004) | 34 |
| *Thomas v. Trans Union, LLC*, 197 F. Supp. 2d 1233 (D. Or. 2002) | 13 |
| *Wilkins v. United States*, 279 F.3d 782 (9th Cir. 2002) | 34 |

| | |
|---|---|
| *Wright v. TRW Credit Data*, 588 F. Supp. 112 (S.D. Fla. 1984) | 12 |
| *Xin Liu v. Amway Corp.*, 347 F.3d 1125 (9th Cir. 2003) | 34 |

**STATUTES**

| | |
|---|---|
| Cal. Civ. Proc. Code § 664.6 | 14, 39 |
| Cal. Civ. Proc. Code § 668.5 | 14, 16, 39 |
| *California Consumer Credit Reporting Agencies Act*, Cal. Civ. Code §§ 1785.11 *et seq* | 2, 12, 19, 31 |
| *Fair Credit Reporting Act*, 15 U.S.C §§ 1681, *et seq* | 2, 12, 19, 31 |

**\*viii OTHER AUTHORITIES**

| | |
|---|---|
| 4A Jeremy C. Moore et al., MOORE S FEDERAL PRACTICE (2d ed. 1992) | 37 |
| FTC Commentary on the FCRA, 16 C.F.R. Pt. 600 | 19, 24 |
| Schwarzer, Tashima & Wagstaffe, cal. prac. guide: fed. Civ. pro. before trial (The Rutter Group 2004) | 38 |

**RULES**

| | |
|---|---|
| Fed. R. App. P. 28 | 34 |
| Fed. R. Civ. P. 36 | 36 |
| Fed. R. Civ. P. 56(c) | 10 |
| Fed. R. Evid. 602 | 29 |
| Fed. R. Evid. 801 | 29 |
| Fed. R. Evid. 802 | 29 |
| Fed. R. Evid. 1004 | 26 |

## *1 I. STATEMENT OF JURISDICTION

Defendant-Appellee Experian Information Solutions, Inc. ("Experian") agrees with Plaintiff-Appellant Jason Dennis' ("Dennis") Statement of Jurisdiction, [Dennis' Opening Brief "DOB") at 1.]

## II. STATEMENT OF THE ISSUES

1. Whether the District Court properly granted summary judgment to Experian in light of Experian's accurate reporting and reasonable reinvestigation procedures and Dennis' failure to establish any compensable damage attributable to Experian.

2. Whether the District Court properly determined that Dennis failed to provide any evidence to create an issue of material fact to maintain a claim for willfully violating the Fair Credit Reporting Act and the California Consumer Credit Agencies Reporting Act.

3. Whether the District Court properly granted Experian's motion to amend its response to Dennis' request for admission.

## III. STATEMENT OF THE CASE

On October 1, 2003, Dennis filed a Complaint for Damages and Demand for Jury Trial ("Complaint") in the United States District Court for the Central District of California against BEH-1, LLC ("BEH-1") and Experian. [Vol. 1, Appellant's Excerpts of the Record ("ER") at 1-9.] Dennis sought compensatory and punitive damages against BEH-1 and Experian for alleged violations of the Fair Credit *2 Reporting Act, 15 U.S.C. §§ 1681, et seq. ("FCRA"),1 and the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.11 et seq. ("CCRA"). All of Dennis' claims against Experian stem from Experian's reporting and reinvestigation of an unlawful detainer judgment appearing in Dennis' credit file.2

Footnotes

| 1 | Unless otherwise indicated, all further statutory references are to the FCRA. |

Experian filed its answer on November 17, 2003, denying liability and asserting various affirmative defenses. [Vol. 1, ER at 10-19.]

In May 2004, Experian filed a motion for summary judgment. [Vol. 1, ER at 26-164; Vol. 3, ER at 50-76.] In the motion, Experian first contended that Dennis' claims fail because Experian never prepared a report that contained inaccurate information concerning the judgment in Dennis' credit file. Second, it argued that Dennis' claims fail because he cannot adduce any evidence that Experian's alleged noncompliance with the FCRA and CCRA caused him any injury. Third, Experian maintained that Dennis' reinvestigation claims failed because Experian followed reasonable procedures for providing Dennis with access to the information contained in his Experian credit file and means to dispute that information. Finally, Experian argued that Dennis' request for statutory and *3 punitive damages fails because he cannot offer any evidence that Experian knowingly or intentionally failed to comply with any of the FCRA's or CCRA's requirements in conscious disregard of his rights.

Dennis opposed Experian's summary judgment motion. [Vol. 1, ER at 165-334; Vol. 3, ER at 212-235, 283-294.]

Also in May 2004, Experian filed a motion to amend its response to one of Dennis' requests for admission and an exparte application for an order shortening time for a hearing on the motion. [Vol. 2, ER at 335-421.] Experian sought to amend its admission that no judgment was entered against Dennis in the underlying unlawful detainer action. Dennis opposed the motion. [Vol. 2, ER at 422-438.] The motion came on for hearing and was granted by the District Court. [Vol. 2, ER at 454-456.]

Subsequently, Dennis filed supplemental points and authorities in opposition to Experian's summary judgment motion to which Experian replied. [Vol. 2, ER at 457-480.]

The District Court heard and granted Experian's motion for summary judgment on June 7, 2004. Thereafter, on June 23, 2004, the District Court issued its formal order granting the motion for summary judgment, and judgment was entered in favor of Experian. [Vol. 2, ER at 491-492.]

*4 Dennis timely filed a Notice -of Appeal from-theOistrict Court's judgment on July 14, 2004. [Vol. 2, ER at 494-513.]

## IV. STATEMENT OF FACTS

### A. Dennis* Underlying Unlawful Detainer Action.

The facts of this case are simple and uncontroverted. Dennis' lawsuit is based on one item that appeared on his Experian credit report: a judgment in an unlawful detainer action that was entered against Dennis in the Los Angeles County Superior Court ("LASC"), Case No. 02U17296, on November 25, 2002 for a total amount of $1,959 ("Judgment").3 [Vol. 3, ER at 214.]

| 2 | Dennis originally sued BEH-1 for alleged violations of the FCRA and CCRA arising from the same set of facts but on May 28, 2004 dismissed BEH-1 with prejudice. |

On October 22, 2002, an unlawful detainer complaint was filed by BEH-1 against Dennis and Jordan Krain in the LASC. [Vol. 1, ER at 142-150.] On November 25, 2002, the parties entered into a Stipulation that resolved the unlawful detainer action. [Vol. 1, ER at 152.] That same day, the parties' Stipulation was entered into the LASC's record as a judgment, [Vol. 1, ER at 136-137, 139-140 and 154.] To this end, the LASC's Civil Register of Actions expressly reads: "11/25/02 Court Trial Concluded - Judgment Entered." [Vol. 1, ER at 137.] Likewise, the LASC's November 25, 2002 Trial Minutes expressly state: "Pursuant to Written Stipulation, the parties applied to the court for judgment, which was so ordered." [Vol. 1, ER at 154.]

### *5 B. Experian's Reinvestigation in Response to Dennis' Dispute Concerning the Accuracy of the Judgment in his Credit File.

Four months after the Judgment was entered, on or about April 2, 2003, Dennis contacted Experian through the internet to purchase a copy of his Experian credit file, which Experian provided that same day. [Vol. 1, ER at 48 (¶ 6)4 .] Also on April 2, 2003, Dennis contacted Experian by telephone to request a reinvestigation of the Judgment reported within his file. [Vol. 1, ER at 48 (¶ 8).] Dennis maintained that he "settled out of court before litigation," and that there was never a civil claim judgment entered against him. [Vol. 1, ER at 48 (f 8).]

| 3 | BEH-1, LLC v. Jordan Krain, Jason S. Dennis, Superior Court of the State of California, County of Los Angeles, Case No. 02U17296. |

In response to Dennis' dispute, Experian immediately initiated its reinvestigation of the accuracy of the Judgment. [Vol. 1, ER at 48 (¶ 11).] Experian contacted Dolan Information Services ("Dolan"), Experian's third-party public records vendor for the LASC. [Vol. 1, ER at 48 (¶ 11).] Experian identified Dennis to Dolan and the basis for Dennis' dispute, and requested that Dolan verify the public record information reported. [Vol. 1, ER at 48 (¶ 11), 109-110 (¶ 5).] This information was entered into an initial dispute screen to commence the investigation. [Vol. 1, ER at 109-110 (¶ 5), 112.]

When Experian asks Dolan to investigate an item such as a civil judgment, Dolan "employs a contractor to physically go to the courthouse and examine thecourt *6 file for which the judgment was entered." [Vol. 1, ER at 109 (¶ 4).] To this end, Dolan summoned a contractor who reviewed the court file in BEH-1, LLC v. Dennis, et al., Case No. 02U17296, and confirmed that the Judgment was entered in the case. [Vol. 1, ER at 110 (¶ 6).]

Dolan verified to Experian the public records information reported by returning a completed Consumer Dispute Verification ("CDV") data screen to Experian. [Vol. 1, ER at 110 (¶¶ 6-7), 114.] As such, the Judgment remained within Dennis' Experian credit file. Thereafter, Experian sent Dennis a copy of his Experian credit file dated April 15, 2003 that summarized and reflected the results of the reinvestigation. [Vol. 1, ER at 49 (¶ 13); Vol. 3, ER at 51-60.]

Following this dispute and until after the commencement of this litigation, Dennis did not provide or offer to provide Experian with documents or evidence of any kind to support his contention that the Judgment was inaccurate. [Vol. 1, ER at 48 (¶ 9), 89(40:17-20).]

### C. The Judgment Entered Against Dennis in the LASC's Records Was Vacated After This Action Was Filed.

On October 1, 2003, Dennis filed the complaint in this action. Almost two months later, on or about November 26, 2003, counsel for the plaintiff in the underlying unlawful detainer action filed an *"Ex Parte* Application for Order Vacating Judgment; Declaration; Order Vacating Judgment" ("Application"). [Vol. 1, ER at 156-161.] In this Application, counsel stated that "the Stipulation *7 was entered in the [Los Angeles Superior] court's records on that same date, November 25, 2002, as a judgment rather than a Stipulation without judgment as the court had ordered." [Vol. 1, ER at 156-161.] Counsel further stated that "it is respectfully requested that a formal order be signed vacating the judgment so that the order may be forwarded to the credit reporting agency that reported it." [Vol. 1, BR at 156-161.] In response to the Application, the Court vacated the November 25, 2002 judgment on November 26, 2003. [Vol. 1, ER at 160, 163 ("The judgment in this matter entered on November 25, 2003 is hereby vacated.").]

On or about December 1, 2003, Experian received a letter dated November 24, 2003 from counsel for the plaintiff in the underlying unlawful detainer action informing Experian that he had requested a formal order from the LASC vacating the Judgment against Dennis. [Vol. 1, ER at 49 (¶ 14); Vol. 3, ER at 62.] He also requested that Experian remove the judgment from Dennis' credit file. [Vol. 3, ER at 62.] Shortly thereafter, on or about December 17, 2003, Experian deleted the Judgment from Dennis' credit file. [Vol. 1, ER at 49 (¶15); Vol. 3, ER at 65-76.]

### D. Damages.

Dennis claims that he was denied credit and suffered emotional distress. Dennis, however, cannot adduce any evidence to support these assertions. In fact, Dennis admits that it is only his "suspicion" that the Judgment caused him to be *8 denied credit. [Vol. 1, ER at 91 (61:13-14).] Dennis also attempts to rely on boilerplate, conclusory and vague allegations of emotional distress. [Vol. 1, ER at 269 (68:13-14), 271 (70:19-21) and 274 (73:9-12).] At no point does Dennis' explain how or even allege that his injury was caused by Experian's wrongful conduct. Dennis also admits that he has not suffered any out-of-pocket losses as a result of inaccurate information on his credit report. [DOB at 13; Vol. 1, ER at 103.]

### E. Willfulness.

According to Dennis, Experian never failed to do anything required by the FCRA or the CCRA, much less that Experian did so knowingly, intentionally, or in conscious disregard for his rights. Experian provided Dennis with copies of his credit reports when he requested them. [Vol. 1, ER at 49 (¶ 16), 93 (83:4-6, 23-25).] Likewise, upon receiving Dennis' only dispute concerning the Judgment, Experian promptly reinvestigated the disputed information, verified the accuracy of the information concerning the Judgment from the LASC's record, and forwarded a copy of Dennis' credit file to him that summarized and reflected the result of Experian's reinvestigation. All and all, Dennis admits that Experian treated him "very businesslike," [Vol. 1, ER at 92 (82;17-18)], and that's its employees were polite. [Vol. 1, ER at 92 (82:23-25).]

### *9 V. SUMMARY OF THE ARGUMENT

The District Court's grant of summary judgment for Experian is correct and should be affirmed. As shown below, Dennis cannot create a genuine issue of material fact with regard to the essential elements of his FCRA and CCRA claims.

First, the uncontroverted evidence shows that the information that Experian was reporting regarding the Judgment was accurate, a fact that dooms Dennis' case.

Second, Dennis' reinvestigation claims fail because Experian maintained reasonable procedures for providing Dennis with access to the information contained in his Experian credit file and means to dispute that information. After Dennis disputed the reporting of the Judgment on his Experian credit report, Experian reinvestigated each of the items, and its reinvestigation was reasonable as a matter of law. Despite Dennis' claims to the contrary, Experian had no reason to doubt the accuracy of the source that was reporting information to Experian, and, thus, Experian need not have gone further than that source to reinvestigate the Judgment.

Third, Dennis' bare, conclusory statements do not sufficiently explain the circumstances of his alleged credit denials and emotional distress. Moreover, Dennis cannot adduce any evidence that Experian's alleged inaccurate reporting caused him any injury.

*10 Next, Dennis cannot recover punitive or statutory damages because Experian has not willfully violated any FCRA or CCRA requirement. Experian did not commit any wrongdoing (such as willful concealment, misrepresentations, or systematic deprivation of consumers' rights) necessary to justify an award of statutory damages.

4 | All citations referenced in parenthesis are to the declarations and/or deposition transcripts contained in the Excerpts
Finally, the District Court properly granted Experian's motion to amend its response to one of Dennis' requests for
admission. The amendment served to facilitate the development of the case in reaching the truth and did not prejudice Dennis
in maintaining the action on the merits.

## VI. STANDARD OF REVIEW

Dennis is correct that this Court reviews the District Court's grant of summary judgment *de novo.* Pursuant to Rule 56 of the Federal Rules of Civil Procedure, where there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts... Where the record taken as a whole *11 could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd, v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). Moreover, in order to avoid summary judgment, the nonmoving party must raise a genuine issue of material fact regarding each element of its claim.

A district court's denial of a motion to withdraw or amend an admission is reviewed for an abuse of discretion. 999 v. *C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir. 1985).

## VII ARGUMENT

### A. The District Court Properly Granted Summary Judgment to Experian on Dennis' Reasonable Procedure and Reinvestigation Claims.

The District Court's grant of summary judgment for Experian is correct and should be affirmed. Dennis brought an action against Experian for (i) failing to maintain reasonable procedures to assure maximum possible accuracy of his reported credit and public records information in violation of 15 U.S.C. § 1681e(b) and Cal. Civ. Code § 1785.14 and (ii) failing to reinvestigate adequately his reported credit and public records information after he disputed its accuracy in violation of 15 U.S.C. § 1681i(a) and Cal. Civ. Code § 1785.16.

To survive summary judgment, a party must demonstrate "significant probative evidence" demonstrating a genuine dispute regarding a material fact. *Anderson*, 477 U.S. at 249.

*12 However, as set forth herein, Dennis could not demonstrate a material issue of fact for the elements required to establish *a.prima facie* case against Experian. The information reported on his Experian credit report regarding the Judgment at issue in this case was accurate; Experian's procedure for reinvestigating the item following Dennis' dispute was reasonable as a matter of law; Dennis suffered no cognizable damages; and none of his alleged damages were the result of the alleged inaccuracy. Each of these factors, standing alone, is sufficient to affirm the District Court's grant of summary judgment to Experian on Dennis' FCRA and CCRA claims.

### 1. Experian Reported Accurate Information Regarding the Judgment.

"[I]t is axiomatic that no claim can be stated under [the FCRA], unless the plaintiff demonstrates that the [credit] report which he challenges was inaccurate." *Wright v. TRW Credit Data*, 588 F. Supp. 112, 114 (S.D. Fla. 1984). To establish a *prima facie* case for both a Section 1681e(b) and 1681i(a) violation,5 a plaintiff must "present evidence tending to show that a credit reporting agency prepared a report containing inaccurate *13 information." *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *see also Spence v. TRW, Inc., 92* F.3d 380, 382 (6th Cir. 1996) ("A showing of inaccuracy is an essential element of a claim" under Section 1681e(b)); *Thomas v. Trans Union, LLC*, 197 F. Supp. 2d 1233, 1236 (D. Or. 2002) (Section 1681i(a) claim requires proof that the plaintiff's credit file contains inaccurate information); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) (granting summary judgment for credit reporting agency on plaintiffs § 1681e(b) and § 1681i(a) claims because the information was accurate). If the plaintiff "fails to satisfy this initial burden... a court need not inquire further" and summary judgment should be granted for the defendant credit reporting agency. *Cahlin*, 936 F.2d at 1156.

| 4 | All citations referenced in parenthesis are to the declarations and/or deposition transcripts contained in the Excerpts of the Record. |

As Experian pointed out in its motion for summary judgment in the District Court, the information Experian reported regarding the Judgment was accurate. [Vol. 1, ER at 37-39.] In Dennis' underlying unlawful detainer action, the LASC entered the Stipulation into the LASC's record as a judgment. [Vol. 1, ER at 136- 137, 139-140 and 154.] The LASC's Civil Register of Actions expressly reads: "11/25/02 Court Trial Concluded – Judgment Entered." [Vol. 1, ER at 137.]6 Pursuant to Section 668.5 of the California Code of Civil Procedure, the LASC **14** records judgments in the register of actions. *See* Cal. Civ. Proc. Code § 668.5; *see also County of Los Angeles v. Ranger Ins. Co.,* 26 Cal. App. 4th 61, 62 (1994). That which was recorded in the Court's Civil Register of Actions matches that which Experian reported on Dennis' credit report.

| 5 | The CCRA's provisions are analogous to those contained in the FCRA. *Compare* Cal. Civ. Code §§ 1785.14 and 1785.16 *with* 15 U.S.C. §§ 1681e(b) and 1681i(a). California courts recognize that decisions adjudicating the FCRA constitute applicable authority for interpreting parallel provisions of the CCRA. *See, e.g., Pulver v. Avco Financial Servs.,* 182 Cal. App. 3d 622, 634-35 (1986). Accordingly, Dennis' CCRA claims are subject to the same analysis and standards as his FCRA claims. |

Moreover, the Court's November 25, 2002 Trial Minutes expressly state: "Pursuant to Written Stipulation, the parties applied to the court for judgment, which was so ordered." [Vol. 1, ER at 154.] That judgment was entered consistent with Section 664.6 of the California Code of Civil Procedure, which states "[i]f parties to pending litigation stipulate... orally before the court, for settlement of the case..., the court, upon motion, may enter judgment pursuant to the terms of the settlement." Cal. Civ. Proc. Code § 664.6.

In sum, the Judgment in Dennis' credit file accurately reflected the LASC's records, including the LASC's Civil Register of Actions. This fact cannot be disputed and is fatal to Dennis' FCRA and CCRA claims.7 Summary judgment'is thus proper because "no additional amount of factual investigation by [the defendant] would have revealed any 'inaccuracy' in its reporting of the [disputed] account because there was none." *Cahlin,* 936 F.2d at 1160.

| 6 | Likewise, the LASC's Civil Index states: "11/25/2002 COURT TRIAL CONCLUDED - JUDGMENT ENTERED." [Vol. 1, ER at 139.] |

**\*15** Because Dennis cannot dispute the existence of the Judgment in the underlying unlawful detainer action and thus the accurate reporting of it in Dennis' credit file, he relies on two assertions to somehow maintain that the Judgment never existed.

First, he points to Experian's prior admission which has no effect given a District Court's order allowing Experian to amend its previous response. *See infra* Section VII.C.

Second, he somehow relies on section 668.5 of the California Code of Civil Procedure, a statute governing the entries of judgments in California, and a case discussing the statute to make his case for the non-existence of the Judgment. Section 668.5 merely provides an alternate method of entering a judgment in light of the advent of electronic filing systems to replace the judgment book:

> In those counties where the clerk of the court places individual judgments in the file of actions and either a microfilm copy of the individual judgment is made, or the judgment is entered in the register of actions, or into the court's electronic data-processing system, prior to placement of the judgment in the file of actions, the clerk shall not be required to enter judgments in a judgment book, and the date of filing the judgment with the clerk shall constitute the date of its entry.

Cal. Civ. Proc. Code § 668.5. The section simply states that "the date of filing the judgment with the clerk shall constitute the date of its entry." *See id.*

**\*16** The *Palmer* decision, which Dennis cites for the proposition that "'entering' of a judgment is dependent upon the actual judgment being filed with the clerk," merely discusses the history behind the advent of section 668.5 and not the criteria for determining if a judgment had in fact existed.8

| 7 | Contrary to Dennis' assertions [DOB at p. 26], Experian has never put forth a "technical accuracy" argument of any sort. |

Creative interpretations aside, Dennis cannot overcome that the Judgment was entered in the Court's Civil Register of Actions in accordance with section 668.5 of the California Code of Civil Procedure, [Vol. 1, ER at 137], and that it was accurately reported by Experian.

*17 The fact of the matter is that the LASC made an error by reporting the stipulation as a Judgment. However, LASC's error does not change the accuracy of Experian's reporting. Should the public record be inaccurate, the relevant consumer and court - not the credit reporting agency - have the obligation of correcting or removing the information from the public record. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 285-86 (7th Cir. 1994); *see also Evans v. The Credit Bureau*, 904 F. Supp. 123, 126 (W.D.N.Y. 1995) ("FCRA does not require credit reporting agencies to alter inaccuracies in the public record. It imposes the obligation to correctly report that which appears on public records..."). After all, "[t]he consumer is in a better position than the credit reporting agency to detect errors appearing in court documents dealing with the consumer's own prior litigation history." *Henson, 29* F.3d at 286. Here, the consumer provided no documentation that the Judgment was inaccurate, nor did he offer to provide such documentation. [Vol. 1, ER at 48 ¶ 9), 89 (40:17-20).]

After the commencement of this action, more than seven months after Dennis disputed the accuracy of the Judgment with Experian, counsel for the plaintiff in the underlying unlawful detainer action brought an *exparte* application to formally vacate the Judgment. [Vol. 1, ER at 156-159.] In response, the LASC vacated the Judgment. [Vol. 1, ER at 160, 163 ("The judgment in this matter entered on November 25, 2003 is hereby vacated.").] Experian deleted the *18 Judgment from Dennis' credit file shortly thereafter. [Vol. 1, ER at 49 ¶ 15); Vol. 3, ER at 65-76.]

## 2. Experian's Reinvestigation of the Judgment Complied with the Mandates of Sections 1681i(a) and 1785.16 as a Matter of Law.

There is no need to inquire into the reasonableness of a credit reporting agency's procedures if that agency has demonstrated that the consumer report at issue was in fact accurate. *See Grays v. Trans Union Credit Information Co.*, 759 F. Supp. 390, 392-93 (N.D. Ohio 1990) ("no need for the court to determine whether [credit reporting agency's] procedures assured maximum possible accuracy" where that agency has accurately reported what was contained within the public record); *see also McPhee v. Chilton Corp*, 468 F. Supp. 494 (D. Conn. 1978).

Experian also is entitled to summary judgment on Dennis' claim that Experian violated the "reinvestigation" provisions of the FCRA and the CCRA, sections 1681i(a) and 1785.16 respectively, because the reinvestigation procedure employed by Experian was reasonable as a matter of law.

When a credit reporting agency receives a dispute by a consumer, it must reinvestigate the disputed information within thirty days and promptly delete credit information that has been found to be inaccurate or unverifiable. 15 U.S.C. §§ 1681i(a)(1) (A), (a)(5)(A); Cal. Civ. Code § 1785.16. To prevail on a reinvestigation claim, a plaintiff must demonstrate the following elements: (i) the *19 plaintiffs credit file contains inaccurate information; (ii) the plaintiff notified the credit reporting agency directly of the inaccurate information; (iii) the credit reporting agency failed to maintain reasonable procedures for reinvestigations; (iv) the plaintiff suffered injury; and (v) the consumer reporting agency's failure caused the plaintiffs injury. *See Thomas v. Trans Union, LLC*, 197 F. Supp. 2d 1233, 1236 (D. Or. 2002); *see also* 15 U.S.C. § 1681i(a); Cal. Civ. Code § 1785.16.

A consumer reporting agency's duties under section 1681i(a) and the corresponding section 1785.16 arise when the consumer alerts the agency of a potential inaccuracy in the consumer's credit report. 15 U.S.C. § 1681i(a); Cal. Civ. Code § 1785.16; *see also* FTC Commentary on the FCRA, 16 C.F.R. Pt. 600, App. (stating that a "consumer reporting agency is required to take action under this section only if the consumer directly communicates a dispute to it. It is not required to respond to a dispute of information that the consumer merely conveys to others."); *Lee v. Experian Info. Solutions*, No. 02 C 8424, 2003 WL 22287351, at *2 (N.D. Ill. Oct. 2, 2003). Thus, Experian's reinvestigation duty did not arise until April 2, 2003, the date on which Dennis first disputed the accuracy of Experian's reporting of the Judgment. [Vol. 1, ER at 48 (¶ 10).]

## *20 a. Experian's Reinvestigation Was Reasonable.

As described more fully below, upon receiving Dennis' dispute, Experian performed a reinvestigation to verify the accuracy of the information it was reporting regarding the Judgment disputed by Dennis.

A credit reporting agency complies with the FCRA's reinvestigation requirements by reinvestigating disputed information with the source of the information to verify its accuracy. *Boothe v. TRW Credit Data*, 768 F. Supp. 434, 438 (S.D.N.Y. 1991). Here, Experian complied with its reinvestigation obligations imposed by using the "consumer dispute

verification" ("CDV") process. A CDV is generated and sent by Experian to notify directly the furnisher of disputed information of the consumer's dispute and obligates the furnisher to re-check its records to ensure the account information is being reported correctly by Experian. [Vol. 1, ER at 48 (¶ 5).] When the CDV either: (i) is not returned within a reasonable time; (ii) is not verified as accurate; or (iii) contains information that Experian determines renders the response unreliable, the disputed information is removed from the consumer's credit file. [Vol. 1, ER at 48 (¶ 5).] Experian's reinvestigation procedure, as well as similar procedures implemented by other credit reporting agencies, has been reviewed and approved by several federal courts considering the obligations imposed by Section 1681 i. *See Boothe*, 768 F. Supp. at 435-439 (referencing TRW's (Experian's predecessor's) procedure of *21 using CDV's to reinvestigate disputed information, the district court held that the CDV process satisfied the requirements of Section 1681i); *Stewart v. Credit Bureau Inc.*, 734 F. 2d 47, 55 (D.C. Cir. 1984) (holding that credit reporting agency's efforts to verify the disputed credit information, coupled with its subsequent updating of plaintiff 's credit report, satisfied the reinvestigation obligations of the FCRA); *Lee*, 2003 WL 22287351, at *6 ("[q]uite understandably in light of the staggering amount of credit that fuels our economy and the enormous burden (and hence cost) that a general requirement of more detailed follow-up procedures would impose on the system, the CDV procedure alone is accepted by courts as an adequate method both for assuring accuracy and for reinvestigation").

When a consumer disputes the accuracy of a public record such as a legal judgment, Experian employs a third-party vendor to assist in the investigation. [Vol. 1, ER at 78-79 ¶4).] In accordance with its reinvestigation obligations. Experian generated a CDV form that described Dennis' dispute and sent it to Experian's contracted, third-party vendor, Dolan. [Vol. 1, ER at 48 (¶11), 109-110 (¶ 5).] In response to Experian's request, Dolan summoned a contractor who visited the courthouse, reviewed the court file and verified that the Judgment was entered against Dennis. [Vol. 1, ER at 110 (¶ 6).] Dolan returned to Experian a completed CDV form verifying the Judgment as reported. [Vol. 1, ER at 48 (¶ 12), *22 110 (¶ 6-7) and 114.] Experian completed this reinvestigation within the statutorily-allotted timeframe and promptly notified Dennis of the results of the reinvestigation. [Vol. 1, ER at 49 (¶ 13); Vol. 3, ER at 51-60.]

Based on these facts, there is no ground for Dennis to allege, much less proffer evidence, that Experian failed to properly reinvestigate the dispute. Dennis himself has conceded that he only disputed the accuracy of the Judgment once in April 2003 before bringing this action. [Vol. 1, ER at 88 (39:1-4), 92 (82:21-22) and 102.] He also admits that he did not provide Experian with any documents that would support his contention regarding the accuracy of the Judgment when he disputed it or anytime thereafter. [Vol. 1, ER at 89 (40:17-20), 103.] Finally, at no time did Dennis ever request that Experian add a statement to his credit file disputing the accuracy of the Judgment. [Vol. 1, ER at 90 (46:10-12).]

Because Experian complied with its reinvestigation procedures and timely notified Dennis of the results of its reinvestigation, the grant of summary judgment was appropriate.

**b. Experian Was Not Required To Go Beyond Its Initial Source of Information.**

As Dennis points out, in certain circumstances, a credit reporting agency may be required to verify the accuracy of its initial source of information. *Henson, 29 F.3d at 287*. Whether Experian has a duty to go beyond its initial source (the court documents examined by Dolan) depends on (i) "whether the consumer has *23 alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable" and (ii) "the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer." *Id.*

The circumstances of this case do not mandate that Experian should have undertaken further independent investigation. Analyzing very similar facts vis-avis the *Henson* factors, other courts have held that credit reporting agencies had no such obligation. *See, e.g., Lee*, 2003 WL 22287351, at *7; *Ruffin-Thompkins v. Experian Info. Systems, Inc.*, No. 03 C 683, 2003 U.S. Dist. LEXIS 23647, at *19-20 (N.D. Ill. Dec. 31, 2003). When a credit reporting agency has no reason to believe that the information it receives is unreliable, it does not have an obligation to conduct its own independent investigation under Section 1681i(a). *Lee*, 2003 WL 22287351, at *7. Thus, when a plaintiff has not alerted the credit reporting agency that the source of the disputed information is an unreliable source and when there is no evidence that the agency knew that the reporting source was unreliable, *Henson* counsels that the agency is not required to conduct further independent investigation. *Henson, 29 F.3d at 287; Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 23647, at *19.

Here, Experian had no reason to believe, nor did Dennis alert Experian, that either Dolan or the Los Angeles County Superior Court was an unreliable source of *24 information. A consumer reporting agency cannot be held liable "where an item of information that it receives from a source that it reasonably believes to be reputable appears credible on its face, and is transcribed, stored and communicated as provided by that source." *See* FTC Commentary on the FCRA, 16 C.F.R. Pt. 600, 55 Fed. Reg. 18804 (1990). The record does not contain any evidence which indicates, even obliquely or tangentially, that Experian knew or should have known that Dolan, which was contractually obligated to verify court records for Experian,

somehow provided inaccurate information about the court records or that it should have known that the court records were inaccurate. On the contrary, Dolan took weeks to conduct what Experian had no reason to believe was anything other than a complete investigation before returning its results to Experian. *See Lee*, 2003 WL 22287351, at *7. Dennis admits that he did not provide (or offer to provide) any documentation proving that the Judgment was inaccurate when he disputed the Judgment for the first time or anytime thereafter. [Vol. 1, ER at 89 (40:17-20), 103.] Thus, like the reinvestigation deemed sufficient in *Ruffin-Thompkins*, "[i]t is unclear what additional steps, if any, Experian could have taken given the scant amount of information [Dennis] provided it." *Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 23647, at *20.

Because Experian had no reason to believe, nor was it alerted by Dennis, that either Dolan or the Los Angeles County Superior Court may be unreliable *25 sources of information, Experian had no duty to go beyond its original source and contact BEH-1. *See Henson*, 29 F.3d at 287; *see also Cushman* v. *Trans Union Corp.*, 115 F.3d 220, 225 (3rd Cir. 1997).

### c. The Undisputed Evidence Demonstrates that Experian Complied with Its Reinvestigation Obligations.

Perhaps recognizing that, without more, his reinvestigation claim would be doomed, Dennis attempts to manufacture an issue of fact focusing on two red herrings rather than attempt to satisfy his evidentiary burden for his reinvestigation claim. First, Dennis notes that the two declarants, Kira Williams and Wendy Little, refer to Experian's public record vendor for LASC by different names, Dolan and Hogan Information Services ("Hogan"). [DOB at 29.] Of course, the exact name of Experian's public record vendor is not material, particularly where the testimony concerning the reinvestigations conducted is consistent among the declarations. [Vol. 1, ER at 47-49, 109-110.] But to further undermine Dennis' argument, Hogan is a public-record product line of Dolan that collects bankruptcy, tax lien and civil judgment records for Dolan.9 [Vol. 2, ER at 450-451.]

| 8 | The cited reference states the following:<br><br>Under the traditional method for "entering" a civil judgment in California, dating from the Statutes of 1851 [citation omitted], the clerk of the superior court made a notation in a book known as the "judgment book." [citations omitted.] Under this traditional method, entry of judgment could occur on a day other than the day on which the clerk filed the original judgment in the superior court file; therefore, giving notice of the filing date did not give notice of the date of entry.<br><br>In 1974, by enacting section 668.5, the Legislature provided an alternative method for entering a judgment, [citations omitted.] Under section 668.5, a county may dispense with the judgment book if, before filing the original judgment in the superior court file, the clerk records the judgment on microfilm or enters it either in the register of actions or in the court's electronic data- processing system. Under this newer method, 'the date of filing the judgment with the clerk shall constitute the date of its entry.'<br><br>*Palmer v. GTE California, Inc.*, 30 Cal. 4th 1265, 1267, fn. 2 (2003). |
|---|---|

Second, Dennis harps on the fact that Experian has misplaced the CDV form forwarded to it by its public record vendor concerning Dennis' dispute. This assertion misses the forest for the trees. The Ninth Circuit has determined that *26 "[w]hen a proponent cannot produce original evidence of a fact because of inadvertent loss of the evidence, proof of secondary evidence is permissible." *See Medical Laboratory Mgmt. v. American Broadcasting Cos.*, Inc., 306 F.3d 806, 825 (9th Cir. 2002); *see also* Fed. R. Evid. 1004. The undisputed evidence before the Court conclusively establishes that, pursuant to Experian's request, (i) Experian's public record vendor for the LASC summoned a contractor to verify the Judgment entered in the LASC's record; (ii) the contractor visited the LASC, reviewed the relevant court file, and verified that there was a judgment entered; and (iii) returned to Experian a completed CDV form verifying the Judgment as reported. [Vol. 1, ER at 110 (¶¶ 6-7), 114.] This CDV form, which Experian obtained from Dolan in the course of its investigation, was produced to Dennis in the course of discovery. [Vol. 1, ER at 114.] Dennis offers no evidence to refute these indisputable facts. Nor can he. As such, summary judgment was properly granted in Experian's favor on Dennis' reinvestigation claims.10

| 9 | In August 2003, Dolan was acquired by Lexis-Nexis. [Vol. 2, ER at 450-451.] |
|---|---|

### *27 3. Dennis Is Unable To Demonstrate that He Suffered Any Actual Damages or that Experian Caused Him Any Injury.

To establish a *prima facie* case for any FCRA and CCRA violation, Dennis bears the burden of proving "that he was damaged as a result of an allegedly inaccurate... credit report." *Cahlin*, 936 F.2d at 1160 (affirming summary judgment for credit reporting agency because plaintiff could not prove damages caused by the agency). In order to meet his burden, Dennis must do more than prove that inaccurate information appeared on his credit report; he also has the "affirmative duty" of proving "that allegedly inaccurate information on that report was the cause of [the] credit denial." *Id.* at 1161; *see also Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001) (affirming grant of summary judgment because "[w]ithout a causal relation between the violation of the [FCRA] and the loss of credit, or some other harm, a plaintiff cannot obtain an

award of 'actual damages' "); *Pendleton v. Trans Union Systems Corp.*, 76 F.R.D. 192, 195 (E.D. Pa. 1977) ("consumer who was denied credit must show that the denial was caused by inaccurate entries (which in turn were caused by the defendant's failure to use reasonable procedures), rather than by correct adverse entries or any other factors").11

| 10 | Dennis also references the deposition of Kira Williams and alleges that during her deposition she intentionally refused to interpret a stipulation in connection with the Judgment as a whole. [DOB at 26-27.] This argument ignores the simple fact that Ms. Williams took no part in the reinvestigation of Dennis' dispute and had no involvement in the review of the court file. This task was performed by Dolan. How Ms. Williams interprets a stipulation is simply irrelevant. |
|---|---|

**\*28** In his opening brief, Dennis asserts that he was denied credit, suffered damages to his credit rating and was unable to obtain credit at a favorable interest rate. [DOB at 12-13.] However, Dennis' sparse evidence, which consists of bare, conclusory statements, is insufficient to withstand summary judgment. Additionally, Dennis fails to establish that his alleged damages were caused by Experian's reporting or reinvestigation of the Judgment.

First, Dennis simply points out five entities listed on his credit report that accessed his credit file and boldly concludes that such "supports the inference that the derogatory public record information in the consumer report caused the credit rejection letters to be received by the plaintiff from these prospective creditors and was ultimately a cause of the denial of credit to plaintiff." [DOB at 13.] This statement is categorically false. Such a self-serving "inference" is nothing more than Dennis' own, unsubstantiated conclusion.12 Dennis admits that it is only his "suspicion" that the Judgment caused him to be denied credit. [Vol. 1, ER at 91 (61:13-14).] Speculation and conjecture, however, are insufficient to survive summary judgment. *See* **\*29** *Riley v. Equifax Credit Information Servs.,Inc.*, 194 F. Supp. 2d 1239, 1244-45 (S.D. Ala. 2002) (plaintiff's proof must be supported by something more than plaintiff's own conclusory allegations); *Gill v. Kostroff*, 82 F. Supp. 2d 1354, 1365 (M.D. Fla. 2000) (plaintiff's conclusions, conjecture, and speculation do not provide a sufficient basis for establishing a *prima facie* case under the FCRA). Other than his conclusory assertions, Dennis provides no evidence in support of his claims that he was damaged in his ability to obtain credit or a favorable interest rate. [DOB at 12-13.]

| 11 | Dennis' CCRA claims are subject to the same analysis and standards. *See supra* fn. 5. |
|---|---|

Recognizing the futility of his credit denial argument, Dennis also attempts to rely on boilerplate, conclusory and vague allegations of emotional distress. [DOB at 12.] Plaintiffs suing under the FCRA may not recover emotional distress damages absent a denial of credit or other actual harm caused by the defendant's credit report. *See Cousin v. Trans Union*, 246 F.3d 359, 370 (5th Cir. 2001); *Casella v. Equifax Credit Info. Serv.*, 56 F.3d 469, 475 (2d Cir. 1995), *cert. denied*, 517 U.S. 1150 (1996); *but see Guimond*, 45 F.3d at 1333 (emotional distress may constitute actual damages in the absence of credit denial if emotional distress resulted from defendant's inaccurate credit report).

Dennis fails to adduce any competent, admissible evidence that he suffered any recoverable damages due to the reporting of the Judgment by Experian. Nor does Dennis' purported evidence explain how or even allege that his emotional distress was caused by wrongful conduct. Instead, Dennis regurgitates **\*30** conclusory statements that he "was really distressed," [Vol. 1, ER at 269 (68:13-14)], "it really made me feel bad that... I couldn't get credit again," [Vol. 1, ER at 271 (70:19-21)], and "just knowing... that my credit was, you know, not good again was embarrassing." [Vol. 1, ER at 274 (73:9-12).] Such statements do not justify an award of damages for emotional distress as a matter of law. *See Cousin*, 246 F.3d at 371 (no emotional damages where plaintiff's testimony that he felt "frustrated and irritated," "very upset, angry," and "like nobody was listening" was not sufficient to meet his burden of proving such damages with "a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award"). What's more, Dennis' allegations do not attribute the vague claim of emotional distress to Experian, much less to Experian's reporting of the Judgment to a third party. *Field v. Trans Union L.L.C.*, No. 01 C 6398, 2002 WL 849589, at \*5 (N.D. Ill. May 3, 2002).

Finally, Dennis admits that he has not suffered any out-of-pocket losses as a result of inaccurate information on his credit report. [DOB at 13; Vol. 1, ER at 103.]

In short, Dennis cannot adduce any competent, admissible evidence that Experian's violation of the FCRA and CCRA caused him any injury. This evidentiary failure is fatal to all of Dennis' claims irrespective of the accuracy of the Judgment reported in Dennis' credit file.

### \*31 B. The District Court Also Properly Disposed of Dennis Claims for Punitive and Statutory Damages Because Dennis Failed To Present Any Evidence that Experian Acted Willfully.

While Dennis' failure to show even a negligent violation of the FCRA or the CCRA dooms his claim for statutory damages,

even if he were able to survive summary judgment on his claim for actual damages, summary judgment still was properly granted on his claim for statutory damages because any alleged violation was not willful. Under the FCRA and CCRA, to recover punitive and statutory damages, Dennis must prove that Experian "willfully fail[ed] to comply with" the FCRA's provisions. 15 U.S.C. § 1681n(a) and Cal. Civ. Code § 1785.31.

While Dennis need not show malice or evil motive, he carries the heavy burden of proving that Experian "knowingly and intentionally committed an act in conscious disregard for the rights of others." *Stevenson v. TRW, Inc.*, 987 F.2d 288, 293 (5th Cir. 1993). Stated another way, Dennis must show that Experian took "deliberate and purposeful actions" that were directed specifically at him "to make out a claim for willful noncompliance..." *Casella*, 56 F.3d at 476. Acts such as "willful concealment, misrepresentations, or systematic deprivation of consumers' rights could justify" an award of damages under Section 1681n(a). *Lee*, 2003 WL 22287351, at *7; *Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 23647, at *21-22.

*32 Experian never willfully concealed or misrepresented information to Dennis, nor did Experian ignore Dennis' requests for reinvestigation or fail to respond to his disputes. On the contrary, Experian provided Dennis with copies of his credit reports when he requested them. [Vol. 1, ER at 49 (¶ 16), 93 (83:4-6, 23-25).] Likewise, upon receiving Dennis' only dispute concerning the Judgment, Experian promptly reinvestigated the disputed information, verified the accuracy of the information concerning the Judgment from the LASC's record, and forwarded a copy of Dennis' credit file to him that summarized and reflected the result of Experian's reinvestigation. *See supra* Section VII.A.2. Also, once the LASC vacated the Judgment in November 2003, Experian promptly deleted it from Dennis' credit file. [Vol. 1, ER at 49 (¶¶ 14-15); Vol. 3, ER at 65.] Finally, Dennis admits that Experian treated him "very businesslike," [Vol. 1, ER at 92 (82:17-18)], and that's its employees were polite. [Vol. 1, ER at 92 (82:23-25).] Courts have held that such conduct is not probative of a willful intent to injure the plaintiff. *See, e.g., Cousin*, 246 F.3d at 373-75; *see also Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986) (holding that where credit reporting agency promptly furnished plaintiff with credit report and investigated disputed accounts therein, "there is simply nothing to even suggest that [the credit reporting agency] willfully set out to do [the plaintiff] harm").

*33 There is no evidence that Experian knowingly and intentionally violated the FCRA or CCRA in conscious disregard for Dennis' rights. Dennis' requests for punitive and statutory damages are devoid of merit, and Experian is entitled to summary judgment on those issues.

**C. The District Court Properly Granted Experian's Motion To Amend its Response to Dennis' Request for Admission.**

The District Court's Order granting Experian's motion to amend its response to Dennis' request for admission should be affirmed because the circumstances under which the amendment was granted satisfy the Ninth Circuit's two-pronged test. [Vol. 2, ER at 454-455.] That is, the amended response promoted an accurate presentation of the case on the merits, and Dennis was not prejudiced when the original response was withdrawn. *See Hadley v. United States*, 45 F.3.d 1345, 1348 (9th Cir. 1995) (articulating two-pronged test). However, this Court does not even need to look at the substantive arguments to affirm the District Court's Order because Dennis has waived or abandoned this argument on appeal, and thus the Court should not entertain it.

**1. Dennis Has Abandoned or Waived this Issue on Appeal.**

The appellate rules expressly require parties to develop every argument to avoid waiver. Rule 28(a)(9)(A) of the Federal Rules of Appellate Procedure requires that an appellant's argument must contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which the *34 appellant relies." Fed. R. App. P. 28(a)(9)(A). The Ninth Circuit strictly enforces this requirement. No fewer than seventeen times in the last three years, the Ninth Circuit has used various phraseology to emphasize that it reviews "only issues that are argued specifically and distinctly in a party's opening brief." *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).13 Issues that are not argued specifically and distinctly are deemed waived or abandoned. *See, e.g., Paladin*, 328 F.3d at 1164 (by failing to make the argument in its opening brief, appellant waived its objection to the district court's grant of summary judgment); *Humbie*, 305 F.3d at 1012 ("Issues raised in a brief but not supported by argument are deemed abandoned absent manifest injustice.").

| 12 | Of course, Dennis' attempt to rely on his own testimony to establish causation and injury is futile. Dennis is not a credit grantor for himself and therefore is not competent to testify concerning the purported cause of any adverse credit decision involving him. *See* Fed. R. Evid. 602. Moreover, any out-of-court statements made by a credit grantor to Dennis regarding the reasons for any adverse credit decision involving him constitute inadmissible hearsay. *See* Fed. R. Evid. 801, 802 |

In *Independent Towers*, instead of making legal arguments, appellant's opening brief provided a "five page laundry list of the challenged regulations and their titles, leaving the court to piece together the argument..." *35 *Independent Towers*, 350 F. 3d at 929. Appellant also included a few "explanatory footnotes," which the court found less than "illuminating." *Id.* Noting that "[j]udges are not like pigs, hunting for truffles buried in briefs," the court stated that it "cannot manufacture arguments for an appellant and therefore [the court] will not consider any claims that were not actually argued in appellant's opening brief." *Id.*

Here, Dennis has done even less than the appellant in *Independent Towers*. Dennis has failed to present even the "laundry list" or "explanatory footnotes" that the *Independent Towers* court still found inadequate to avoid waiver. Rather, the fourteen-plus pages comprising Dennis' Argument are completely devoid of any argument that the District Court's Order granting Experian's motion to amend was issued in error.14 Dennis cites neither cases nor the record. Thus, under rule 28(a)(9)(A) of the Federal Rules of Appellate Procedure and ample Ninth Circuit precedent, this Court should find that Dennis has abandoned or waived this argument on appeal, and decline to review the issue.

| 13 | For the remaining sixteen opinions, *see Arredondo v. Ortiz*, 365 F.3d 778 (9th Cir. 2004); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004); *Thomas v. City of Beaverton*, 379 F.3d 802 (9th Cir. 2004); *Bear Lake Watch, Inc. v. F.E.R.C.*, 324 F.3d 1071 (9th Cir. 2003); *Carroll v. Nakatani*, 342 F.3d 934 (9th Cir. 2003); *Ground Zero Center/or Non-Violent Action v, U.S. Dept. of Navy*, 383 F.3d 1082, 1091 (9th Cir. 2004); *International Healthcare Management v. Hawaii Coalition For Health*, 332 F.3d 600 (9th Cir. 2003); *Koerner v. Grigas*, 328 F.3d 1039 (9th Cir. 2003); *Paladin Associates, Inc. v. Montana Power Co.*, 328 F.3d 1145 (9th Cir. 2003); *Xin Liu v. Amway Corp.*, 347 F.3d 1125 (9th Cir. 2003); *Cavalier v. Random House, Inc.*, 297 F.3d 815 (9th Cir. 2002); *Humble v. Boeing Co.*, 305 F.3d 1004 (9th Cir. 2002); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002); *Patenaude v. Equitable Life Assurance Society of U.S.*, 290 F.3d 1020 (9th Cir. 2002); *Phillips ex rel Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002); *Wilkins v. United States*, 279 F.3d 782 (9th Cir. 2002). |

Even if this Court were to review the District Court's actions, however, it would not find that the District Court abused its discretion.

### *36 2. The Circumstances Under Which the Order Was Granted Satisfy the Ninth Circuit's Two-Pronged Test for Amending and Withdrawing Responses to Requests for Admission.

Rule 36 (b) of the Federal Rules of Civil Procedure provides that:

> the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.

Fed. R. Civ. P. 36(b).

Here, the circumstances under which the amendment was granted satisfy the Ninth Circuit's two-pronged test drawn from Rule 36(b). That is, the amended response promoted an accurate presentation of the case on the merits, and Dennis was not prejudiced when the original response was withdrawn. *See Hadley*, 45 F.3d at 1348 (articulating two-pronged test).

### a. Upholding the Admission To Request No. 9 Would Have Eviscerated Experian's Ability to Present its Case on the Merits.

The test's first prong is met "when upholding the admissions would practically eliminate any presentation of the merits of the case." *Id.* Put another way, the rule "permits withdrawal if it will facilitate the development of the case in reaching the truth, as in those cases where a party's admission are [sic] *37 inadvertently made." *McClanahan v. Aetna Life Insurance Co.*, 144 F.R.D. 316, 320 (W.D. Va. 1992) (quoting 4A Jeremy C. Moore et al., moore's federal practice ¶ 36.08 (2d ed. 1992)).

In the instant case, Experian could not have presented its case on the merits if the District Court had upheld the mistaken admission. This litigation turns on whether Experian accurately reported that a Judgment against Dennis appeared in the LASC's public records. To establish *a prima facie* case under 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i(a), Dennis had to present evidence tending to show that Experian prepared a report containing inaccurate information. *See Guimond*, 45 F.3d at 1333. Experian maintained that it accurately reported the Judgment entered in the LASC's record, and argued that because it did not prepare a credit report containing inaccurate information, Dennis failed to establish *a prima facie* case. Thus, proving that such a judgment existed was an essential element of Experian's defense. *See North Louisiana Rehabilitation*

*Center, Inc. v. U.S.*, 179 F. Supp. 2d 658, 663 (W.D. La. 2001) (the court withdrew defendant's admission finding that if the admission "... were to stand, it would conclusively establish one of the three requirements necessary for relief under Section 530."). Accordingly, if the admission had remained on the record, Experian would have been precluded *38 from proving the true state of the world - that a Judgment had been entered against Dennis in the LASC's public records.

"In considering whether the presentation of the merits will be facilitated by permitting an admission to be withdrawn, the court may look at whether the admission is contrary to the record of the case." *See North Louisiana Rehabilitation Center, Inc.*, 179 F. Supp. 2d at 663 (quoting *Ropfogel v. U.S.*, 138 F.R.D. 579, 583 (D. Kan. 1991)). Moreover, relief from an admission is more likely to be obtained when "the court is persuaded that the 'true' facts are different from those admitted." Schwarzer, Tashima & Wagstaffe, cal. prac. guide: fed. Civ. pro. before trial (The Rutter Group 2004) at 11:2093, p. 11-234 ("In seeking relief from an admission, show the court the admission is factually wrong.").

Here, the record and the facts clearly demonstrate that the Judgment against Dennis was entered by the LASC. In the unlawful detainer action against Dennis, the LASC entered the Stipulation into the LASC's record as a judgment. [Vol. 1, ER at 137, 139 and 154.] The LASC's Civil Register of Actions expressly reads: "11/25/02 Court Trial Concluded - Judgment Entered." [Vol. 1, ER at 137.] Under California Code of Civil Procedure § 668.5, the LASC records judgments in the register of actions. *See* Cal. Civ. Proc. Code § 668.5; *see also Ranger Ins. Co.*, 26 Cal. App. 4th at 62. Moreover, the Court's November 25, 2002 Trial Minutes *39 expressly stated: "Pursuant to Written Stipulation.the parties applied to the court for judgment, which was so ordered." [Vol. 1, ER at 154.] The LASC then entered the Judgment consistent with California Code of Civil Procedure section 664.6, which states that "[i]f parties to pending litigation stipulate... orally before the court, for settlement of the case..., the court, upon motion, may enter judgment pursuant to the terms of the settlement." Cal. Civ. Proc. Code § 664.6.

Moreover, almost two months after Dennis filed the federal lawsuit that is the subject of this appeal, the plaintiff in the underlying unlawful detainer action filed an *"Ex Parte* Application for Order Vacating Judgment; Declaration; Order Vacating Judgment" ("Application"). [Vol. 1, ER at 156-161.] In this Application, plaintiff stated that "the Stipulation was entered in the [Los Angeles Superior] court's records on that same date, November 25, 2002, as a judgment rather than a Stipulation without judgment as the court had ordered." [Vol. 1, ER at 156-161.] Plaintiff further stated that "it is respectfully requested that a formal order be signed vacating the judgment so that the order may be forwarded to the credit reporting agency that reported it." [Vol. 1, ER at 156-161.] In response to the Application, the Court vacated the November 25, 2002 judgment on November 26, 2003. [Vol. 1, ER at 160, 163 ("The judgment in this matter entered on November 25, 2003 is hereby vacated.").] These events beg the rhetorical question, why would the plaintiff in the unlawful detainer action spend time and *40 money to vacate a judgment that did not exist? Even more telling, why would the LASC vacate a judgment if in fact such a judgment did not exist?

Lastly, courts generally allow amendments or withdrawals of admissions when the admission is inadvertent, an honest mistake or when it is no longer true because of changed circumstances. *Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1248 (9th Cir. 1981) (withdrawal is proper where admission is made inadvertently); *Ropfogel*, 138 F.R.D. at 583 ("The court may allow amendment or withdrawal of an admission when an admission is no longer true because of changed circumstances or when through an honest error a party made an improvident admission."); *Reyes v. Vantage Steamship Co.*, 672 F.2d 556, 557-558 (5th Cir. 1982) (withdrawal affirmed where response based on "faulty assumption" of facts).

Experian mistakenly responded to Request No. 9 with an admission. [Vol. 2, ER at 349, 352.] The admission was inadvertent and an honest mistake. [Vol. 2, ER at 359 (¶ 5).] Experian only became aware of this admission at a pretrial conference held before the District Court on May 24, 2004. [Vol. 2, ER at 359 (¶ 5).]

**b. The Amendment of the Admission Did Not Result in Prejudice to Dennis.**

The party who obtains the admission bears the burden of proof to show that allowing the admission's withdrawal or amendment would prejudice its case. *41 *Hadley*, 45 F.3d at 1348. "The prejudice contemplated by Rule 36(b) is 'not simply that the party who obtained the admission will now have to convince the fact-finder of its truth.'" *Id.* (quoting *Brook Village N. Assoc. v. General Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982)). Rather, the Ninth Circuit noted, "it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted." *Id.*

First, throughout the course of the litigation, Dennis was well aware that Experian maintained the position that the Judgment was accurate. *Bergemann v. United States*, 820 F.2d 1117, 1121 (10th Cir. 1987) (no prejudice in withdrawal of response since plaintiff knew that defendants challenged the issue). At no time did Experian admit that it reported inaccurate information about the Judgment. Moreover, the bulk of the documentary evidence confirms that the Judgment was entered against Dennis by the LASC. [Vol. 1, ER at 137, 139 and 154.] Nevertheless, Dennis relies on a single inadvertent

admission to support his entire case and not the totality of the evidence in the matter.

Second, Experian's motion was made timely and in advance of trial. Generally, courts find prejudice when the motion for withdrawal is made in the middle of trial. *Sonoda v. Cabrera*, 255 F.3d 1035, 1040 (9th Cir. 2001) (court found that because the motion was made pre-trial, the plaintiff would not be *42 hindered in presenting the evidence to the fact-finder); *C.J.T. Corp.*, 776 F.2d at 869 (finding prejudice when the motion was not made until the middle of trial when plaintiff had nearly rested its case and the record revealed that plaintiff had relied heavily on the admission and had even shown the admission to the jury); *American Auto Assoc. v. AAA Legal Clinic*, 930 F.2d 1117,1120 (5th Cir. 1991). Here, Experian brought its motion before trial and thus did not hinder the presentation of the evidence regarding the Judgment to the fact-finder.

Third, Dennis was not prejudiced because his discovery on the issue was substantial and no further discovery would be necessary on this issue. *See id.* ("Courts have usually found that the prejudice contemplated by Rule 36(b) related to special difficulties a party may face by a sudden need to obtain evidence upon withdrawal or amendment of an admission."). Dennis had conducted considerable discovery regarding the existence of the Judgment. He spent substantial time and effort seeking information about the Judgment through interrogatories, document requests, requests for admission and depositions. Dennis was in possession of all the court records from *BEH-1, LLC v. Dennis, et al*, Case No. 02U17296, evidencing the existence of the Judgment. Further, Dennis inquired extensively about Experian's knowledge of the existence of the Judgment during the deposition of Kira Williams, a specialist at Experian's Consumer Affairs Special Services Department. [Vol. 2, ER at 405-421.] Throughout her Rule 30(b)(6) deposition, *43 Ms. Williams consistently testified that Experian perceived that the Judgment was entered against Dennis. [Vol. 2, ER at 407-409,411 and 419.] Thus, Dennis did not need any additional discovery, nor could any new documents have been uncovered, to determine whether the Judgment was in fact entered. Because Dennis conducted substantial discovery concerning the Judgment, and because no additional discovery needed to be undertaken, Dennis was not be prejudiced by the amendment to Request for Admission No. 9.

Next, Dennis cannot show that additional witnesses needed to be identified or that key witnesses were unavailable because of the admission. *Hadley*, 45 F.3d at 1348. The witnesses identified on Dennis' and Experian's Witness Lists were capable of testifying regarding the existence of the Judgment.

Finally, Dennis could not argue that he was prejudiced because he prepared a summary judgment motion in reliance upon Experian's admission. *F.D.I.C. v. Prussia*, 18 F.3d 637, 640 (8th Cir. 1994) ("... preparing a summary judgment motion in reliance upon an erroneous admission does not constitute prejudice.").

In sum, even if this Court looks past Dennis' complete failure to argue that Experian's motion to amend was granted in error, it should find that the District Court did not abuse its discretion when it granted Experian's motion to amend its response to Request for Admission No. 9.

## *44 VIII. CONCLUSION

For each of the foregoing reasons, Experian respectfully requests that this Court affirm the District Court's judgment in Experian's favor.

## STATEMENT OF RELATED CASES

Defendant-Appellee Experian Information Solutions, Inc. is not aware of any cases related to this one that are currently pending before this Court, as defined in Circuit Rule 28-2.6.

| 14 | The Argument section of Appellant's Opening Brief begins in the lower third of page fifteen and ends at the bottom of page twenty-nine. Nowhere within these fourteen-odd pages does Dennis argue that the District Court's Order granting Experian's motion to amend was issued in error. |
| --- | --- |

| End of Document | © 2012 Thomson Reuters. No claim to original U.S. Government Works. |
| --- | --- |