*Exhibit "S"*

2004 WL 3760682 (C.A.7) (Appellate Brief)
United States Court of Appeals,
Seventh Circuit.

Lloyd SARVER, Plaintiff-Appellant,
v.
EXPERIAN INFORMATION SOLUTIONS, INC., Defendant-Appellee.

No. 04-1423.
June 29, 2004.

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division
Case No. 02 C 7825 The Honorable Elaine J. Bucklo, Presiding

**Brief of Defendant-Appellee Experian Information Solutions, Inc.**

Karey V. Skiermont, Jones Day, 77 West Wacker Drive, Suite 3500, Chicago, Illinois 60601-1692, (312) 782-3939, Counsel for Defendant-Appellee.

### *I CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Experian Information Solutions, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

JONES DAY

(3) If the party or amicus is a corporation:

  i) Identify all its parent corporations, if any; and GUS, PLC ("GUS")

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

GUS owns 100% of Experian. GUS is publicly traded on the London Stock Exchange.

### *II RECOMMENDATION ON ORAL ARGUMENT

Defendant-Appellee Experian Information Solutions, Inc. suggests that the issues presented can be determined upon the record and that oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and oral argument would not significantly aid the panel's decisional process. *See* Fed. R. App. P. 34(a)(2)(C).

| *iii TABLE OF CONTENTS | |
| --- | --- |
| JURISDICTIONAL STATEMENT | 1 |
| ISSUES PRESENTED FOR REVIEW | 1 |

| | |
|---|---|
| STATEMENT OF THE CASE Granted Summary Judgment to Experian Because Experian Complied | 2 |
| STATEMENT OF FACTS | 2 |
| 1. Plaintiff's Requests for Copies of His Experian Credit File | 2 |
| 2. Plaintiff's August 29, 2002 Letter | 3 |
| 3. Experian's Procedures and Response to Plaintiff's Letter | 4 |
| 4. Damages | 6 |
| SUMMARY OF THE ARGUMENT | 7 |
| STANDARD OF REVIEW | 9 |
| ARGUMENT | 9 |
| I. Summary Judgment Should be Affirmed Because Both of Plaintiff's Claims Against Experian Fail for Lack of Causation and Damages | 9 |
| A. Plaintiff is Unable to Show Actual Damages Caused by Information on His Credit Report | 11 |
| 1. Experian Cannot be Liable for Damages When It Had No Notice of an Alleged Inaccuracy | 11 |
| 2. Plaintiff Admittedly Suffered No Actual Damages During the Relevant Time Period | 12 |
| 3. Plaintiff Cannot Prove that the Allegedly Inaccurate Account Caused the Credit Denial | 12 |
| B. Plaintiff's Claim for Emotional Distress Damages is Insufficient and Fails as a Matter of Law | 14 |
| 1. Plaintiff Cannot Recover Emotional Distress Damages Because No Third Party Viewed The Allegedly Inaccurate Information During The Relevant Time Period | 14 |
| 2. Plaintiff's Emotional Damages Claim Does Not Survive The Seventh Circuit's Rigorous Standard | 15 |
| *iv 3. Plaintiff's Claims are Not "Inherently Degrading or Humiliating." | 18 |

| | |
|---|---|
| II. The District Court Correctly Granted Summary Judgment to Experian Because Experian Complied with Section 1681i(a) of the FCRA by Responding to Plaintiff's Insufficient Dispute Letter | 20 |
| A. Plaintiff Did Not Provide Sufficient Information To Allow Experian To Perform An Investigation | 20 |
| B. Initiating a Reinvestigation Based on Plaintiff's Letter Would Have Been Unreasonable | 23 |
| III. The District Court Properly Granted Summary Judgment Because Plaintiff Failed to Establish that Experian Did Not Follow Reasonable Procedures under § 1681e(b) | 25 |
| A. Experian Is Not Liable for Inaccuracies of Which It Has No Notice | 26 |
| IV. Plaintiff is Not Entitled to Statutory Damages Under Section 168 n(a) Because There is No Evidence that Experian Acted Willfully | 33 |
| V. CONCLUSION | 34 |

## *v TABLE OF AUTHORITIES

### CASES

| | |
|---|---|
| *Aiello v. Providian Finance Corp.*, 239 F.3d 876 (7th Cir. 2001) | 15 |
| *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) | 9 |
| *Biggs v. Village of Dupo*, 892 F.2d 1298 (7th Cir. 1990) | 15, 16 |
| *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991) | 10, 26, 31 |
| *Casella v. Equifax Credit Information Services*, 56 F.3d 469 (2d Cir. 1995) | 10, 14, 20 |
| *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) | 9 |
| *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662 (7th Cir. 2001) | 10, 30 |
| *Denius v. Dunlap*, 330 F.3d 919 (7th Cir. 2003) | 15, 16, 19 |

| | |
|---|---:|
| *Equifax v. Sky Reels, 678 F.2d 1079 (11th Cir. 1982)* Cir. 1974) | 26 |
| *Field v. Trans Union LLC,* No. 01 C 6398, 2002 WL 849589 (N.D. Ill. May 3, 2002) | 14, 17, 32, 33 |
| *FTC v. TRW, Inc.,* 784 F. Supp. 361 (N.D. Tex. 1991) | 22 |
| *Fischl v. General Motors Acceptance Corp.,* 708 F.2d 143 (5th Cir. 1983) | 20 |
| *Henson v. CSC Credit Services,* 29 F.3d 280 (7th Cir. 1994) | 11, 28, 30, 31 |
| *Krueger v. Cuomo,* 115 F.3d 487 (7th Cir. 1997) | 18 |
| *vi*Ladner v. Equifax Credit Information Services, Inc.,* 828 F. Supp. 427 (S.D. Miss. 1993) | 26 |
| *Lee v. Experian Information Solutions, Inc.,* No. 02 C 8424, 2003 WL 22287351 (N.D. Ill. Oct. 2, 2003) | 11, 12, 17, 20, 28, 30, 31, 33, 34 |
| *Matise v. Trans Union Corp.,* 1998 WL 872511 (N.D. Tex. Nov. 30, 1998) | 13 |
| *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) | 9 |
| *Nekolny v. Painter,* 653 F.2d 1164 (7th Cir. 1981) | 16 |
| *Parker v. Parker,* 124 F. Supp. 2d 1216 (N.D. Ala. 2000) | 31 |
| *Pendleton v. Trans Union System Corp.,* 76 F.R.D. 192 (E.D. Pa. 1977) | 13 |
| *Philbin v. Trans Union Corp.,* 101 F.3d 957 (3d Cir. 1996) | 16 |
| *Ruffin-Thompkins v. Experian Info Systems, Inc.,* No. 03 C 683, 2003 U.S. Dist. LEXIS 23647 (N.D. Ill. Dec. 31, 2003) | 11, 28, 33, 34 |

| | |
|---|---:|
| *S&S Sales v. Style Realty Co, Inc.*, 491 F.2d 634 (7th Cir. 1974) | 18 |
| *Sheffer v. Experian Information Solutions, Inc.*, No. 02-7407, 2003 WL 21710573 (E.D. Pa. July 24, 2003) | 16, 31, 32, 33 |
| *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47 (D.C. Cir. 1984) | 31 |
| *Tinsley v. Trans Union Corp.*, 879 F. Supp. 550 (D. Md. 1995) | 32 |
| *United States v. Balistreri*, 981 F.2d 916 (7th Cir. 1992) | 18 |
| *Whelan v. Trans Union*, 862 F. Supp. 824 (E.D.N.Y. 1994) | 11, 26, 27, 30, 31, 32 |
| *viiYelder v. Credit Bureau of Montgomery*, 131 F. Supp. 2d 1275 (M.D. Ala. 2001) | 24, 25 |
| *Zahran v. Trans Union Corp.*, No. 01 C 1700, 2003 WL 1733561 (N.D. Ill. Mar. 31, 2003) | 26, 27, 28, 31, 32, 33 |
| **STATUTES** ||
| 15 U.S.C. § 1681e(b) | 1, 7, 8, 10, 21, 25, 26, 29, 30, 31, 32, 35, ii |
| 15 U.S.C. § 1681i | 9, 10, 22 |
| 15 U.S.C. § 1681i(a) | 1, 7, 8, 10, 12, 20, 21, 25, 34, ii |
| 15 U.S.C § 1681i(a)(3) | 20 |
| 15 U.S.C. § 1681i(b) | 19 |
| 15 U.S.C. § 1681n | 33 |
| 15 U.S.C. § 1681n(a) | 8, 33, ii |
| 15 U.S.C. § 1681*o*(a)(1) | 19 |

| | |
|---|---|
| 28 U.S.C. § 1291 | 1 |
| 16 C.F.R. Pt. 601 | 20, 28 |
| RULES | |
| Fed. R. App. P. 26.1 | 1 |
| Fed. R. App. P. 31(e) | 48 |
| Fed. R. App. P. 32(a)(7) | 47 |
| Fed. R. App. P. 34(a)(2) | ii |
| Fed. R. Civ. P. 56(c) | 9 |
| Fed. R. Civ. P. 56.1 | 2 |
| Fed. R. Evid. 201 | 2 |

## *1 JURISDICTIONAL STATEMENT

Plaintiff's jurisdictional statement is correct, but incomplete. *See* Cir. R. 28(a)(2)(i). Pursuant to Cir. R. 28(b), Experian Information Solutions, Inc. ("Experian") states as follows:

The United States District Court for the Northern District of Illinois, Eastern Division, had federal question jurisdiction pursuant to the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 et seq., *as amended.* This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1291.

The district court granted Experian's Motion for Summary Judgment and entered the judgment Order on February 2, 2004. Plaintiff's notice of appeal was filed on February 18, 2004.

## ISSUES PRESENTED FOR REVIEW

1. Whether the district court properly granted Experian's motion for summary judgment on Plaintiff's Section 1681i(a) "reinvestigation" claim when Plaintiff did not provide enough identifying information to process his reinvestigation request, and when Plaintiff did not suffer damages based on Experian's request for more information to begin an investigation.

2. Whether the district court properly granted Experian's motion for summary judgment on Plaintiff's Section 1681e(b) "reasonable procedures" claim when Plaintiff failed to establish that (a) Experian had notice of a potential inaccuracy in Plaintiff's credit file at the time Plaintiff was denied credit, or (b) once Plaintiff did notify Experian of a potential inaccuracy, that Plaintiff suffered damages caused by an inaccuracy.

## *2 STATEMENT OF THE CASE

Plaintiff's Statement of the Case is accurate.

## STATEMENT OF FACTS

Plaintiff Lloyd Sarver's lawsuit is based on one item that appeared on his Experian credit report: a Cross Country Bank account that was reported as "included in bankruptcy." (R. 1, at ¶ 8)1 Although Experian does not dispute Plaintiff's claim that he never filed for bankruptcy, or that his Cross Country Bank account was not included in a bankruptcy, a "Lloyd Sarver" in Pennsylvania filed for bankruptcy in the United States Bankruptcy Court for the Middle District of Pennsylvania, Case No. 97-01138.2

Footnotes

| 1 | Experian cites to the district court records as "R. __" identifying the item by its number on the district court docket and providing a page or paragraph number where applicable. Experian cites to its Local Rule 56.1 Statement of Material Facts in Support of its Motion for Summary Judgment to support facts that Plaintiff either expressly admitted or purported to dispute but failed to do so in the manner required by Local Rule 56.1. The district court's summary judgment opinion, which is contained in the required Appendix of Plaintiff-Appellant, will be cited as "A. __." Plaintiff's opening appellate brief will be cited as "Br. __." |

### 1. Plaintiff's Requests for Copies of His Experian Credit File

Plaintiff's first contact with Experian was by telephone on July 18, 2002, when he called to request a copy of his credit file; Experian sent Plaintiff a copy on the same day. (R. 8, at ¶ 7.) Plaintiff did not dispute any items in his file at this time. (*Id.*) Plaintiff contacted Experian again on August 26, 2002 to request another copy of his credit file, and Experian again sent him a copy. (*Id.* at ¶ 8.) Again, Plaintiff did not dispute any items in his file. (*Id.*)

Plaintiff claims that his second contact with Experian took place on August 6, 2002, rather than on August 26, 2002, and that he called to dispute *3 inaccurate information on his credit report but could not reach a live representative. (Br. at 4). This statement contradicts Plaintiff's earlier admissions. First, Plaintiff conceded to the district court that the phone call was not made on August 6, 2002, but on August 26, 2002. (R. 8, at ¶ 8; R. 11, at ¶ 8). Second, Plaintiff testified under oath at his deposition that he contacted Experian on August 26, 2002 "for the same reason, to request another copy of [his] credit report" and that he did not recall whether he spoke with an Experian representative at that time. (R. 15, Ex. 14). Third, the fact that Experian sent and Plaintiff received a copy of his credit file dated August 26, 2002 confirms that the purpose of Plaintiff's August 26th phone call was to request a copy of Plaintiff's credit file, and not to request a reinvestigation. (R. 9, Exs. 4, 5 at ¶ 11, Ex. 9 at ¶ 12).

### 2. Plaintiff's August 29, 2002 Letter

Plaintiff sent Experian a letter dated August 29, 2002 in which he disputed an account showing it was included in bankruptcy. (*Id.* at ¶ 10.) Plaintiff signed the letter "Lloyd Sarver." (R. 9, Ex. 6) However, because Plaintiff did not include his social security number or any other identifying information in his letter, Experian did not access Plaintiff's file or record the receipt of Plaintiff's letter. (R. 8, at ¶ 11.) Experian has no internal record of receiving Plaintiff's August 29, 2002 letter, because no entry can be made into a consumer's file without sufficient identifying information, *i.e.* a social security number. (*Id.*). Experian does not claim, as Plaintiff alleges, that it did not receive Plaintiff's letter. (Br. at 6) Rather, Experian retained no record of this *4 letter and did not place the transaction in Plaintiff's file because of its lack of identifying information. (R. 8, at ¶ 11).

### 3. Experian's Procedures and Response to Plaintiffs Letter

Experian's procedure is to respond by letter when a consumer either requests a consumer report or disputes credit information, but does not provide his or her full name, date of birth and social security number. This letter states that the social security number and proof of address are required. In particular, the letter sent to consumers notifies them that the social security number is *"required"* for Experian to send a consumer report. (*Id.* at ¶ 12, 13).

Experian sent Plaintiff such a notice on September 11, 2002, stating:
"We were unable to honor your recent request because we are unable to access your report using the identification information you supplied. Please read the information below if you would like to order a copy of your personal credit report or if you would like to request an investigation of information on your report that you believe is inaccurate ... The Federal Fair Credit

Reporting Act states 'A consumer reporting agency shall require as a condition of disclosure that the consumer furnish proper identification;' therefore, if you write to us, we must require *all* of the following information in order to process your request: ... Social Security number *(required* to obtain your report ...." (*Id.* at ¶ 13).3

| 2 | Experian asked that the district court take judicial notice of this fact pursuant to Fed. R. Evid. 201. |

Plaintiff's claim that "Experian's system really does not require anything more than a first and last name and current address of a person in order for the investigation department (or any department for that matter) to access one's file and perform an investigation" is a misstatement and contrary to the evidence in the record. (Br. at 5) When a consumer calls Experian to request a *5 copy of his or her file, Experian always asks for the consumer's social security number and Experian actually requires this information to process a request. (R. 12, Ex. H, at 43:14-24.) Experian's procedures in processing letters are no different than its procedures for processing telephone calls. (R. 9, Ex. 6; R. 12, Ex. F). Although Experian has the technical capability to access a consumer's file using only a name and address, Experian requires a social security number when processing a consumer request as a precaution against identity fraud or creating a "mixed file," which may occur when credit information about customers with similar names or other identifying information becomes mixed. (R. 12, Ex. H, at 44:4-8; R. 9, Ex. 9, at ¶¶ 8-9). Obtaining full identifying information minimizes the risks of inaccurate or incomplete information in light of common names and addresses, misspellings of consumers' names, and mistakes that may occur in the transfer of information. (R. 9, Ex. 10, at ¶¶ 7-10).

Plaintiff received the September 11, 2002 notice from Experian. (*Id.* at ¶ 13). Despite being on notice Experian had been unable to access his credit report to begin a reinvestigation, Plaintiff made no further attempt to contact Experian, either personally or through his attorneys, after receiving the September 11, 2002 letter. (*Id.* at ¶ 14.) Instead Plaintiff filed this lawsuit on October 30, 2002. Prior to the filing of the lawsuit, Experian had no reason to doubt the accuracy of any account appearing on Plaintiff's credit report, *6 because Experian had been unable to process Plaintiff's letter or access Plaintiff's file. (*Id.* at ¶ 11, 15).

**4. Damages**

Plaintiff produced a letter from Monogram Credit Card Bank of Georgia dated August 2, 2002, which denies Plaintiff's credit card application. The letter states, in part, "you did not achieve the approval score assigned by the system. Since each category scored by the system contributed to the total score, *no individual factor was solely responsible for your score being less than the approved score.*" (R. 12, Ex. A)(emphasis added).

Although the letter lists "bankruptcy" as a factor where Plaintiff did not score well, three of the remaining four or five accounts on Plaintiff's Experian file at the time had significant delinquencies. Indeed, Plaintiff's July 18, 2002 credit file disclosure contains four other accounts, three of which were reporting delinquent accounts: (1) Bank One, "past due 180 days;" (2) Providian, "paid in settlement/account charged off, $3,099 written off;" (3) Risk Management, "paid/collection account." (R. 9, Ex. 3) Similarly, Plaintiff's August 26, 2002 credit file disclosure shows three of the five remaining accounts reported with significant delinquencies. (R. 9, Ex. 4)

Plaintiff does not address his alleged emotional damages in his Statement of Facts. In his brief, the extent of Plaintiff's emotional damages are *7 that he claims he "felt like a second class citizen" and "suffered from low self esteem." (Br. at 17)

SUMMARY OF THE ARGUMENT

The district court's grant of summary judgment for Experian is correct and should be affirmed. Plaintiff cannot create a genuine issue of material fact with regard to essential elements of his claim for damages as a result of Experian's alleged violations of Section 1681i(a) ("reinvestigation") and Section 1681e(b) ("reasonable procedures") of the FCRA.

First, Plaintiff's reliance on a credit denial letter to establish his actual damages carries no weight, because at the time Plaintiff was denied credit, Experian had no knowledge of the alleged inaccuracy on Plaintiff's credit report and cannot, therefore, be liable for any alleged damages because the FCRA is not a strict liability statute. Plaintiff did not suffer any actual damages during the relevant period during which Experian could have been liable for an inaccuracy, *i.e.,* once Experian had notice of Plaintiff's dispute. Moreover, Plaintiff fails to establish the requisite causation to sustain a claim for damages under the FCRA. Plaintiff cannot attribute his damages solely to the information he claims Experian inaccurately reported.

Second, Plaintiff's bare, conclusory statements regarding his alleged emotional distress do not sufficiently explain the circumstances of Plaintiff's alleged injury. Plaintiff does not establish Experian's liability for any emotional distress damages, because no third party even viewed Plaintiff's credit report during the relevant time period. Plaintiff's evidence is

clearly deficient when *8 compared with evidence that this Court and several district courts in this Circuit have found insufficient.

Third, Experian complied with Section 1681i(a) of the FCRA in responding to Plaintiff's insufficient dispute letter. Because Plaintiff did not provide enough identifying information in his letter for Experian to perform an investigation, Experian acted reasonably in requesting more information from Plaintiff. Indeed, initiating an investigation based only on the information provided by Plaintiff's letter would have been unreasonable, and not in compliance with the FCRA.

Fourth, the Plaintiff failed to establish that Experian did not follow reasonable procedures under Section 1681e(b) of the FCRA. Experian is not liable for inaccuracies of which it has no notice, and, because of Plaintiff's deficient dispute letter, Experian did not receive notice of an alleged inaccuracy until Plaintiff filed his lawsuit. Even if Plaintiff's letter were enough to serve notice on Experian, Plaintiff did not sustain any damages following such notice. Plaintiff cannot establish that any inaccurate reporting was due to Experian's failure to follow reasonable procedures.

The district court also properly granted summary judgment to Experian on Plaintiff's claim for statutory damages under Section 1681n(a) of the FCRA because there is no evidence that Experian willfully violated the FCRA. Even if Plaintiff's claim for actual damages could survive summary judgment, his claim for statutory damages cannot. Experian did not commit any wrongdoing (such *9 as willful concealment, misrepresentations, or systematic deprivation of consumers' rights) necessary to justify an award of statutory damages.

## STANDARD OF REVIEW

Plaintiff is correct that this Court reviews the district court's grant of summary judgment *de novo*. Where there are no genuine issues as to any material fact, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). Moreover, in order to avoid summary judgment, the nonmoving party must raise a genuine issue of material fact regarding each element of its claim.

## ARGUMENT

### I. Summary Judgment Should be Affirmed Because Both of Plaintiff's Claims Against Experian Fail for Lack of Causation and Damages.

Plaintiff claims that Experian violated FCRA Section 1681i, which requires a credit reporting agency like Experian to reinvestigate items on a credit report when a consumer disputes those items and provides sufficient *10 information to do so. *See* 15 U.S.C. § 1681i(a), (b). Plaintiff also claims that Experian failed to comply with Section 1681e(b), which states that a credit reporting agency must "follow reasonable procedures to assure maximum possible accuracy" when it prepares a credit report. *See id.* at § 1681e(b).

Importantly, to prove both of his claims, Plaintiff must demonstrate that he suffered damages as a result of Experian's reporting of allegedly inaccurate information, in this case, the Cross Country Bank account that was reported as "included in bankruptcy." *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001)(requiring a showing of damages to sustain plaintiff's claim under Section 1681e(b)); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160-61 (11th Cir. 1991)(affirming summary judgment for defendant on FCRA claim because plaintiff "utterly failed to produce any evidence tending to show that he was damaged" by an inaccurate credit report).

Plaintiff's Section 1681i(a) and 1681e(b) claims are doomed because he fails to provide sufficient evidence that he suffered such damages. *Casella v. Equifax Credit Info. Services*, 56 F. 3d. 469, 475 (2d Cir. 1995)(affirming summary judgment in Section 1681i case in part because the plaintiff failed to prove causation). This fact alone provides sufficient grounds to affirm the district court's grant of summary judgment. Plaintiff does not and cannot show that he suffered injury based on an inaccurate credit report caused by Experian's failure to follow reasonable procedures or conduct a reasonable reinvestigation. *Crabill*, 259 F.3d at 664-665 ("Without a causal relation between the violation of the statute and the loss of credit, or some

other harm, *11 a Plaintiff cannot obtain an award of 'actual damages' ...."). Plaintiff's scant argument to support his claims for damages fails, and mandates the same result as reached by the district court.

**A. Plaintiff is Unable to Show Actual Damages Caused by Information on His Credit Report.**

**1. Experian Cannot be Liable for Damages When It Had No Notice of an Alleged Inaccuracy.**

Plaintiff first claims that he suffered damages when he was denied credit from Monogram Bank of Georgia, which sent Plaintiff a letter dated August 2, 2002 informing him that he would not be extended credit. (R. 12, Ex. A). This claim for damages fails because the FCRA is not a strict liability statute, and, therefore, Experian cannot be liable for inaccuracies of which it has no notice. *Lee v. Experian Info. Solutions, Inc.*, No. 02 C 8424, 2003 WL 22287351, at *4 (N.D. Ill. Oct. 2, 2003)(no FCRA liability based on credit report issued before Experian notified of potential inaccuracy on consumer's file); *Whelan v. Trans Union*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994); *Henson v. CSC Credit Services*, 29 F.3d 280, 285 (7th Cir. 1994)(holding that a credit reporting agency is not liable for reporting inaccurate information absent prior notice from the consumer that the information may be inaccurate); *Ruffin-Thompkins v. Experian Info. Sys., Inc.*, No. 03 C 683, 2003 U.S. Dist. LEXIS 23647, at *11 (N.D. Ill. Dec. 31, 2003)(noting the extension of *Henson* to "excuse credit reporting agencies from independently verifying information provided by creditors unless the agencies have prior knowledge that the information might be inaccurate."). As explained more fully below at Section III.A, Experian had *12 no reason to doubt the accuracy of any information provided to Monogram Bank at the time of the denial letter.

**2. Plaintiff Admittedly Suffered No Actual Damages During the Relevant Time Period.**

Even if, as Plaintiff claims, his August 29, 2002 letter constituted "notice" to Experian of an inaccuracy and thus triggered Experian's reinvestigation obligations under Section 1681i(a), Plaintiff still must show that he suffered some sort of actual damages between August 29, 2002 and February 20, 2003, the date by which the Cross Country account was removed from his credit file. *See Lee*, 2003 WL 22287351, at *4 (consumer could not recover any actual damages because during the "critical period of potential liability...no outside third party even looked at [his] report, let alone denied him a line of credit that might give rise to monetary damages.")

Here, as in *Lee*, Plaintiff's claim for pecuniary damages fails because he "indisputably suffered no actual loss during the relevant period of possible liability." *Id.* Plaintiff does not claim that he applied for credit following his August 29, 2002 letter. (R. 12, Ex. J) In fact, it is undisputed that no third party even viewed his credit file during the "critical period of potential liability" from August 29, 2002 to February 20, 2003. Thus, Plaintiff suffered no injury for which Experian can be held liable.

**3. Plaintiff Cannot Prove that the Allegedly Inaccurate Account Caused the Credit Denial.**

Moreover, Plaintiff is not entitled to damages based on the Monogram Bank credit denial for the additional reason that the August 2, 2002 denial *13 letter is insufficient to establish causation. Plaintiff's interpretation of this letter as "specifically" stating that the "sole reason" for Plaintiff's credit denial was a bankruptcy on Plaintiff's credit report (Br. at 16) is contradicted by the letter itself, which states that Plaintiff "did not achieve the approval score assigned by the system. Since each category scored by the system contributed to the total score, *no individual factor was solely responsible for your score being less than the approved score.*" (R. 12, Ex. A) (emphasis added). This does not establish the requisite causation. *See, e.g., Pendleton v. Trans Union Sys. Corp.*, 76 F.R.D. 192, 195 (E.D. Pa. 1977) ("[A] consumer who was denied credit must show that the denial was caused by inaccurate entries (which in turn were caused by the defendant's failure to use reasonable procedures), rather than by correct adverse entries or any other factors."); *Matise v. Trans Union Corp.*, 1998 WL 872511, at *7 (N.D. Tex. Nov. 30, 1998)(granting summary judgment in part because plaintiff did not "show that the inaccurate information contained in a [credit report], rather than other lines in the [credit report] or a report from a different [credit reporting agency], caused his injury.")

Though the letter lists "bankruptcy" as a factor where Plaintiff did not score well, the majority of the other accounts in Plaintiff's Experian file had significant delinquencies at the time that he was denied credit by Monogram Bank. (R. 9, Ex. 3 (three of four remaining accounts reported on July 18, 2002 had significant delinquencies: (1) Bank One, past due 180 days; (2) Providian, paid in settlement/account charged off, $3,099 written off; (3) Risk Management, paid/collection account); R. 9, Ex. 4 (three of five remaining *14 accounts reported on August 26, 2002 had significant delinquencies)). In short, there is no record evidence that Monogram Bank would have extended Plaintiff credit in the face of a charge off, a collection account

and an account past due 180 days, even in the absence of the bankruptcy reference.

**B. Plaintiffs Claim for Emotional Distress Damages is Insufficient and Fails as a Matter of Law.**

**1. Plaintiff Cannot Recover Emotional Distress Damages Because No Third Party Viewed The Allegedly Inaccurate Information During The Relevant Time Period.**

Like his claim for actual damages based on a credit denial, Plaintiff's claim for emotional damages fails as well. First, as the district court noted, unless a consumer's emotional distress results from the allegedly inaccurate information being disclosed to a third party *(i.e.,* someone other than the consumer and the credit reporting agency), the consumer cannot recover emotional distress damages. (A., at 4). Indeed, because there is no evidence that his emotional distress resulted from disclosure to a third party of inaccurate information in a credit report prepared by Experian, he cannot recover damages for his alleged emotional distress. *Field v. Trans Union LLC,* No. 01 C 6398, 2002 WL 849589, *5 (N.D. Ill. May 3, 2002) (granting summary judgment to credit reporting agency on claims under Sections 1681e(b) and 1681i(a) because, *inter alia,* plaintiff could not provide evidence that her emotional distress was the result of the disclosure of her credit report, rather than simply because she knew of inaccurate information in her report); *Casella* 56 F.3d at 475 (refusing to allow actual damages for pain and suffering "simply *15 because [plaintiff] knew of an inaccurate and potentially damaging item on his credit report").

**2. Plaintiff's Emotional Damages Claim Does Not Survive The Seventh Circuit's Rigorous Standard.**

Plaintiff spends just two sentences of his brief articulating the facts of his emotional damages claim. (Br. at 17).4 Plaintiff's sparse evidence, which consists of bare, conclusory statements, fails to demonstrate that his alleged emotional damages meet the rigorous legal standard in the Seventh Circuit, and, thus, is insufficient to withstand summary judgment.

| 3 | Plaintiff makes much of the fact that Experian sent this letter to Plaintiff's home address. (Br. at 6). Experian merely sent the letter to the address that appeared on the return envelope in which Plaintiff's August 29, 2002 letter arrived. |
|---|---|

"The law has always been wary of claims of emotional distress [] because they are so easy to manufacture." *Aiello v. Providian Fin. Corp.,* 239 F.3d 876, 880 (7th Cir. 2001). Therefore, this Court has "set a high threshold for proof of damages for emotional distress." *Id.* Indeed, in this Circuit, the law is clear that "when the injured party's testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements." *See, e.g., Denius v. Dunlap,* 330 F.3d 919, 929 (7th Cir. 2003); *Biggs v. Village of Dupo,* 892 F.2d 1298, 1304 (7th Cir. 1990). This Court consistently has required that rather than simply "point[ing] to circumstances *of*" wrongdoing, the plaintiff must "show 'demonstrable emotional distress.' " *Biggs,* 892 F.2d at 1305 (quoting *Rakovich v. Wade,* 819 F.2d 1393, 1399 (7th Cir. 1987), *vacated on reh. en banc on other grounds,* 859 F.2d 1180). Plaintiff's repeated assertion that he need not *16 provide evidence of emotional distress "with a high degree of specificity" is not the law of this Circuit. (Br. at 7, 16 *(citing Philbin v. Trans Union Corp.,* 101 F.3d 957 (3d Cir. 1996).) Moreover, Plaintiff's citation to *Sheffer v. Experian Info. Solutions, Inc.,* No. 02-7407, 2003 WL 21710573 (E.D. Pa. July 24, 2003) misses the point. Simply because a plaintiff "may be entitled to damages from...emotional distress," it does not follow that Plaintiff in this case has presented evidence sufficient to justify such an entitlement. *Id.* at *3.

Applying this "high threshold," this Court consistently has held that conclusory statements made by plaintiffs are insufficient to support awards of emotional damages. *Nekolny v. Painter,* 653 F.2d 1164, 1172-73 (7th Cir. 1981) (reversing award of emotional distress damages in First Amendment claims because plaintiffs' statements that they were "depressed," "a little despondent," and "completely humiliated" were insufficient proof of compensable emotional injury); *Biggs,* 892 F.2d at 1304-05 (holding that evidence of emotional distress was insufficient to support jury instruction for emotional distress when plaintiff testified that he was affected emotionally by being fired in alleged retaliation for exercising free speech rights and that he was concerned over "the idea of my family going through it"); *Denius,* 330 F.3d at 929 (affirming grant of judgment as a matter of law on issue of emotional damages in case in which employee alleged his contract was not renewed because he refused to authorize release of personal information where employee testified that signing such an *17 authorization "would have negated everything I stood for," that he was "concerned" and "troubled" about being out of work, and that he was "embarrassed and humiliated" by circumstances under which he was fired).

Likewise, several district courts in the Seventh Circuit have found plaintiffs' testimonial evidence of their emotional distress damages insufficient in claims brought under the FCRA. For example, although an alleged victim of identity theft claimed that "[i]t has taken a tremendous amount of time and effort, humiliation, and frustration a lot of bad emotion that went into fixing this," the court rejected plaintiff's claim for emotional distress damages as "nothing more than conclusory statements

of stress and humiliation" and granted summary judgment for the credit reporting agency. *Field,* 2002 WL 849589, at *6. Similarly, summary judgment was granted against a plaintiff who stated that he "feels victimized from his inability to facilitate getting his credit report corrected" and is "too embarrassed to attempt to obtain a mortgage with the state of his credit report" because such statements are "far too conclusory and short of what the caselaw requires of such a claim to be legally sufficient." *Lee,* 2003 WL 22287351, at *4.

Plaintiff's testimonial evidence, like that of the plaintiffs in the cases cited above, is not sufficient to survive summary judgment. Indeed, Plaintiff's only reference to emotional damages in his entire brief is his assertion that he "felt like a second class citizen" and "suffers from low self esteem." (Br. at 17).

### *18 3. Plaintiffs Claims are Not "Inherently Degrading or Humiliating."

Plaintiff claims that his emotional damages are "inherently degrading or humiliating," a standard under which this Court has found it reasonable to infer compensable emotional distress damages. (Br. at 16)(citing *United States v. Balistreri,* 981 F.2d 916, 932 (7th Cir. 1992)). Plaintiff fails, however, to adequately explain how the circumstances in this case are inherently degrading or humiliating. Instead, Plaintiff simply concludes that "[a] violation of one's privacy is inherently embarrassing," and "[t]hus, it is reasonable to infer that a violation of privacy, brought about by a credit reporting agency's violation of the FCRA, is likely to cause humiliation or distress." (Br. at 17.) But Plaintiff has never made any sort of claim based on a "violation of privacy" - this is a case about Experian's reasonable procedures in maintaining credit file information and reinvestigating consumer disputes.

Moreover, Plaintiff's situation is not akin to the type of circumstance this Court has found "inherently degrading or humiliating." *See, e.g., Seaton v. Sky Realty Co, Inc.,* 491 F.2d 634, 636 (7th Cir. 1974) (upholding award of emotional distress damages to minority couple who suffered racial discrimination by realty company and noting that such "racial indignity ... is one of the relics of slavery"); *Krueger v. Cuomo,* 115 F.3d 487, 492 (7th Cir. 1997) (affirming award of emotional distress damages to woman who suffered a "continued campaign" of sexual harassment by her landlord, on occasion in front of her children, and who had no choice but to leave her apartment). In fact, the circumstances in this case are not even as inherently degrading or *19 humiliating as those found by this Court to *not* rise to such a level. *See, e.g., Denius,* 330 F.3d at 929-30 (circumstances not inherently humiliating for employee who was fired and escorted out of workplace by security).

Additionally, Plaintiff's argument that the circumstances of this case are "inherently degrading or humiliating" is at odds with the statutory scheme enacted by Congress and embodied in the FCRA. The FCRA, unlike the common law for defamation, does not presume damages. Rather, the FCRA requires a consumer claiming a negligent violation of the FCRA to prove actual damages. *See*15 U.S.C. § 1681*o*(a)(1). This departure from common law presumably resulted from Congress's recognition that any benefit to allowing consumers with minor or perhaps frivolous damage claims is outweighed by the costs to the credit reporting industry (and, ultimately, to consumers seeking credit). Moreover, Congress provided a remedy for consumers who were dissatisfied with the reinvestigation process: the right to "file a brief statement setting forth the nature of the dispute." *See id.* at § 1681i(b). If Congress believed that the process of requesting copies of one's consumer file and requesting a reinvestigation was by its nature "degrading or humiliating," Congress surely would have provided a stronger remedy than the consumer dispute statement.

Because Plaintiff did not demonstrate that he is entitled to actual or emotional damages, an essential element to establish his FCRA claims, the district court's summary judgment in favor of Experian should be affirmed.

### *20 II. The District Court Correctly Granted Summary Judgment to Experian Because Experian Complied with Section 1681i(a) of the FCRA by Responding to Plaintiff's Insufficient Dispute Letter.

#### A. Plaintiff Did Not Provide Sufficient Information To Allow Experian To Perform An Investigation.

In addition to an inability to prove any damages, Plaintiff also fails in his Section 1681i(a) claim because he never provided Experian with sufficient information to trigger Experian's duty to reinvestigate. The FCRA requires credit reporting agencies to reinvestigate information that is disputed by a consumer and delete inaccurate or unverifiable information. 15 U.S.C. § 1681i(a). However, the reinvestigation obligations of Section 1681i(a) "do [] not arise until the consumer reporting agency receives notification from a consumer about a potential inaccuracy in his credit report." *Lee,* 2003 WL 22287351, at *6 (N.D. Ill. Oct. 2, 2003) (citing *Casella,* 56 F.3d at 474). Even upon receipt of consumer notification, according to the FCRA, a consumer reporting agency need not reinvestigate information disputed by a consumer "if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, *including by reason of a failure by a consumer to provide*

*sufficient information to reinvestigate the disputed information."* 15 U.S.C § 1681i(a)(3)(A) (emphasis added); *see also* FTC Commentary to the FCRA5, 16 C.F.R. Pt. 601, App. at 516 (2003)("If you tell a [credit reporting agency] that your file contains inaccurate information, the [credit reporting agency] must investigate the items *21 (usually within 30 days) by presenting to its information source all relevant evidence you submit, *unless your dispute is frivolous.")(emphasis* added).6

| 4 | The record evidence Plaintiff cites to in his brief to support of his alleged emotional damages is R. 12 ¶ B, which is Experian's responses to Plaintiff's Requests for Admission. (Br. at 17). These responses do not contain any mention of Plaintiff's emotional damages. |
|---|---|

| 5 | The Commentary by the Federal Trade Commission, the agency primarily charged with enforcing the FCRA, "offer[s] helpful guidance to the courts." *See Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 149 n.4 (5th Cir. 1983). |
|---|---|

In this case, Plaintiff never gave Experian the necessary information to allow it to reinvestigate his dispute. Plaintiff wrote to Experian on August 29, 2002, ostensibly to request an investigation of an item in his credit file. Plaintiff's only identifying information about himself included in the letter was his signature - "Lloyd Sarver." Because Plaintiff failed to supply Experian with his social security number, the name of the account to be investigated, or any other identifying information, Experian did not access Plaintiff's file or conduct an investigation. Instead, Experian contacted Plaintiff and explained that Experian needed more information from Plaintiff before it could investigate his dispute. As a matter of law and a matter of fact, Experian's procedure, followed in this case, cannot be found to be anything but permissible and reasonable as a matter of law under the FCRA.

Plaintiff admits that the FCRA allows credit reporting agencies to terminate an investigation if the consumer does not provide enough identifying information to reasonably reinvestigate the dispute. *(See* Br. at 20). However, Plaintiff claims that "there is nothing in the language of the [FCRA] that states the form, content, or sophistication required for a notice of a dispute." (Br. at *22 21). While it is true that the FCRA is silent on what constitutes "sufficient information to reinvestigate," other authorities provide guidance on this issue.

For example, as a result of an action by the Federal Trade Commission against TRW, Experian's predecessor corporation, the FTC issued a consent decree. *See FTC v. TRW, Inc.*, 784 F. Supp. 361 (N.D. Tex. 1991). The consent decree, designed to implement procedures to increase accuracy of consumer credit reports, specifically requires the use of "Consumer's full identifying information" in preparing credit reports. *Id.* at 362. Significantly, the court defined "Full Identifying Information" as "full last and first name; middle initial; full street address; zip code; year of birth; any generational designation; and social security number." *Id.* Indeed, the two copies of Plaintiff's credit file sent by Experian on July 18, 2002 and August 26, 2002 provided a form by which Plaintiff could submit a dispute, and explicitly requested that, in addition to his full name, current mailing address, and credit report number, Plaintiff include his Social Security number, the account number, and the specific reason for the dispute. (R. 9, Ex. 3, 4).

As explained above, in this case, Plaintiff's letter did not provide the information specifically required under the consent decree, including Plaintiff's social security number, year of birth, and middle initial. Given this dearth of necessary information, Experian did not attempt to access anyone's credit file. Instead, Experian immediately sent a letter to the return address on Plaintiff's envelope and asked for additional information.7 Plaintiff's letter simply did not *23 provide sufficiently reliable information upon which Experian could have initiated an investigation that complied with the FCRA.

| 6 | The district court stated in its summary judgment opinion that "the duty to reinvestigate under § 1681i(a) has been construed as a more stringent obligation than the duty under § 1681e(b). If Experian meets the requirements of § 1681i(a), it has also met the requirements of § 1681e(b)." (A. at 3. (citations omitted)) Plaintiff takes issue with this interpretation of the law. (Br. at 10). However, applying either the district court's analysis or a separate analysis of each claim, the result is the same. The district court's ultimate decision was correct and should be affirmed. |
|---|---|

**B. Initiating a Reinvestigation Based on Plaintiffs Letter Would Have Been Unreasonable.**

Taking an out-of-context "sound bite" from a deposition in a different case, Plaintiff attempts to create an issue of material fact relating to Experian's reinvestigation protocol by suggesting that just because Experian has the technical ability to access credit information using only a name and an address, Experian should have done so in this case. Plaintiff's argument, however, fails to distinguish between what technically *can* be done and what reasonably *should* be done - a key distinction when considering Experian's obligations under the FCRA and to consumers.

Ignoring that distinction, Plaintiff cites to the deposition of Experian compliance manager David Browne-taken by Plaintiff's counsel in another case8 -to support the proposition that Experian has the technical ability to access credit information using

only a name and a return address on an envelope. (Br. at 20). According to Plaintiff, it follows that Experian should have attempted to access Plaintiff's file in this case (using just a name and an address to locate Plaintiff out of 200 million names and addresses on Experian's database (R. 9, Ex. 9 at ¶ 4)) and that doing so would have constituted a reasonable reinvestigation within the bounds of the FCRA.

| 7 | Contrary to Plaintiff's assertions, Experian does not deny receiving Plaintiff's letter. (Br. at 6) Rather, Experian states that the letter was not sufficient to trigger the Section 1681i reinvestigation obligation, and Experian sent a letter requesting more information in response. |
|---|---|

*24 Plaintiff omits the fact that Mr. Browne, in that same deposition, differentiated between what Experian's system can do and what Experian's procedures mandate in order to comply with the FCRA. Specifically, Mr. Browne testified that when a consumer contacts Experian to request a copy of his or her file, Experian "always" asks for the consumer's social security number and that Experian "actually [does] require it." (R. 12, Ex. H, at 43:14-24.) Mr. Browne further testified that, although Experian has the physical and technical capability of accessing a consumer's file using only a name and address, Experian requires a social security number as a precaution against identity fraud or creating a "mixed file."9 (R. 12, Ex. H, at 44:4-8; R. 9, Ex. 9, at ¶¶ 8-9). Obtaining full identifying information minimizes the risks of inaccurate or incomplete information in light of common names and addresses, misspellings of consumers' names,10 and mistakes that can and do occur in the transfer of information. (R. 9, Ex. 10, at ¶¶ 7-10). And, we know from this case that in addition to Plaintiff Lloyd Sarver of Illinois, there is another consumer named Lloyd Sarver, of Pennsylvania, who filed for bankruptcy.

| 8 | Plaintiff did not attempt to depose Mr. Browne in this case. |
|---|---|

| 9 | A "mixed file" situation can occur when credit information about customers with similar names or other identifying information becomes mixed. |
|---|---|

The ramifications of adopting the reinvestigation scheme suggested by Plaintiff can be seen by considering an example in the identity fraud context. In *Yelder v. Credit Bureau of Montgomery*, 131 F. Supp.2d 1275 (M.D. Ala. 2001), a creditor sent the plaintiff a new credit card based on a pre-approved offer of credit. *Id.* at 1279. The credit card was addressed to the plaintiff and *25 sent to an address listed as a former/other address on the plaintiff's credit file. *Id.* The address belonged to the plaintiff's step-daughter. *Id.* The plaintiff knew nothing about the new credit card. *Id.* The imposter/step-daughter made charges, the credit account quickly reached its limit, late and over-the-limit charges accrued, and the plaintiff was another victim of identity theft. *Id.* By Plaintiff's logic, if an imposter, such as the one in *Yelder*, after stealing the credit card intended for the fraud victim, then contacted Experian, provided the fraud victim's name and address, and requested that Experian investigate information about that credit card, Experian should perform such an investigation and send the results of that investigation, which include the victim's entire credit file, to the imposter. In that scenario, the fraud perpetrator would have received far more credit information than a single account, and the probable result would have been far more damage to the victim.

The district court was correct in recognizing that Experian's response to Plaintiff's letter complied with the FCRA as a matter of law, because it was the right result. Without sufficient identifying information, required under FCRA Section 1681i(a)(3)(A), no other course of action would have been reasonable under the FCRA, and, indeed, any other procedure ultimately could harm consumers.

**III. The District Court Properly Granted Summary Judgment Because Plaintiff Failed to Establish that Experian Did Not Follow Reasonable Procedures under § 1681e(b).**

*26 Plaintiff claims that, because his Cross Country Bank account appeared as "included in bankruptcy," Experian is liable to Plaintiff for failing to maintain reasonable procedures. Because Experian had no notice of the alleged inaccuracy on Plaintiffs credit file, Plaintiffs "reasonable procedures" claim under Section 1681e(b) must fail.

**A. Experian Is Not Liable for Inaccuracies of Which It Has No Notice.**

In preparing credit reports, credit reporting agencies are required to follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Even if information on a credit report is inaccurate, however, Congress recognized in drafting the FCRA that total accuracy in consumer reports is not a realistic objective and that credit reporting agencies should not be held strictly liable for inaccuracies. *Cahlin*, 936 F.2d at 1156;*Equifax v. FTC*, 678 F.2d 1047, 1048-49 (11th Cir. 1982); *Whelan*, 862 F. Supp. at

829;*Ladner v. Equifax Credit Info. Services, Inc.*, 828 F. Supp. 427, 430 (S.D. Miss. 1993). Rather than just pointing to an inaccuracy, the consumer must show that (a) the agency failed to follow reasonable procedures in generating the inaccurate report, and (b) that such failure caused an injury. *See Cahlin*, 936 F. 2d at 1156;*Zahran v. Trans Union Corp.*, No. 01 C 1700, 2003 WL 1733561, at *4 (N.D. Ill. Mar. 31, 2003); *Whelan*, 862 F. Supp. at 829. Plaintiff can do neither.11 Plaintiff's section 1681e(b) claim fails because Experian never *27 was notified of the inaccurate information. *Whelan*, 862 F.Supp. at 830;*see also Zahran*, 2003 WL 1733561, at *5.

| 10 | Indeed, Plaintiff's counsel misspelled Plaintiff's name in the Complaint filed in this case. (R. 1, at ¶ 4 and signature line.) |
|---|---|

It is not known why Cross Country Bank reported Plaintiff's account history to Experian as "included in bankruptcy."12 This fact, however, is immaterial. Regardless of how or why Cross Country Bank erred, such error by Cross Country Bank does not translate into FCRA liability for Experian because Experian cannot be liable for inaccuracies of which it has no notice.

| 11 | As described in Section I, Plaintiff cannot sustain his claim that he suffered cognizable damages. |
|---|---|

Until Plaintiff filed his Complaint on October 30, 2002 and explained his dispute and the account at issue, Experian did not have sufficient knowledge or reason to doubt the accuracy of any accounts appearing on Plaintiff's credit report. (R. 8, at ¶ 15.) Moreover, because Plaintiff failed to provide sufficient information for Experian to access his file and conduct an investigation upon receipt of his August 29, 2002 letter, Experian did not have notice or reason to doubt the accuracy of any items on Plaintiff's credit report prior to the filing of Plaintiff's lawsuit. *(See supra* Section I.A; R. 9, Ex. 5, at ¶ 13.)

Plaintiff claims that Experian should have undertaken some sort of "proactive intervention" to account for a supposed "anomaly" in Plaintiff's file, even without notice from Plaintiff, which "should have alerted" Experian that there was an inaccuracy. (Br. at 13) This assertion directly contradicts the FCRA's lack of strict liability, and the legal requirement that the credit reporting agency must receive notice of an inaccuracy before it can be held *28 liable for failing to maintain reasonable procedures. *See Henson*, 29 F.3d at 285;*Lee*, 2003 WL 22287351, at *3;*Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 23467, at *11; *Zahran*, 2003 WL 1733561, at *5 ("[I]ndependent verification of information provided by creditors is not needed absent knowledge that the information may be inaccurate."). The FCRA does not require that Experian conduct independent factual investigations into the information reported to it by a source such as Cross Country, but allows Experian to report credible information obtained from reliable sources. *See, e.g.*, FTC Commentary to the FCRA, 16 C.F.R. Pt. 600, App., Section 607 at § 3.A. ("This section [1681e(b)] does not hold a consumer reporting agency responsible where an item of information that it receives from a source that it reasonably believes to be reputable appears credible on its face, and is transcribed, stored and communicated as provided by that source."). Plaintiff offers nothing to counter Experian's evidence that it receives credit information from over 40,000 sources, with whom Experian not only has contractual relationships requiring accurate information, but a history of business credibility upon which to rely. (R. 9, Ex. 9; *see also* R. 8, at ¶ 6 (describing rigorous procedures applied to credit data before allowing that data to be reported on consumer files)).

Plaintiff's August 29, 2002 letter is also insufficient to notify Experian about any inaccuracy regarding Plaintiff's Cross Country account.13 Plaintiff *29 twice received copies of his Experian credit file. (R. 9, Exs. 3 & 4). The last page of each credit file is a dispute form. The form identifies Plaintiff, along with information needed by Experian to conduct a reasonable reinvestigation. Instead of returning the form, Plaintiff's three-sentence letter includes no information to identify Plaintiff other than "Lloyd Sarver," and no information identifying the account disputed. But Experian did not disregard Plaintiff's letter. To the contrary, Experian reviewed Plaintiffs letter and notified Plaintiff that he needed to provide sufficient identification of himself and of his dispute before Experian could reinvestigate. (R. 9, Ex. 8; R. 12, Ex. 6).14 Under its procedures, as discussed above, Experian could do nothing more - not even record its receipt of Plaintiff's letter. Plaintiff acknowledges that he received this notice from Experian. (R. 12, at ¶ 11; R. 8, at ¶ 13; R. 11, at ¶ 13). Yet, rather than provide the basic information requested by Experian, Plaintiff filed suit.

| 12 | Another "Lloyd Sarver" did, in fact, file for bankruptcy in the Western District of Pennsylvania (R. 13, at 7-8), and perhaps Cross Country Bank confused Plaintiff with that person. |
|---|---|

| 13 | The district court determined that Plaintiff's August 29, 2002, provided Experian with notice of an inaccuracy in Plaintiff's credit file, despite Experian's uncontroverted evidence that it could not and did not enter the August 29, 2002 letter into Plaintiff's file because of its lack of sufficient information to indicate that the letter should go into a particular "Lloyd Sarver's" file. Nevertheless, despite its finding that plaintiffs August 29, 2002 letter put Experian on notice, the district court still correctly found that, because no denials of credit occurred following Experian's notice of an inaccuracy, Plaintiff utterly failed to demonstrate the damages element of his 1681e(b) claim. |
|---|---|

Moreover, Plaintiff's Section 1681e(b) claim fails to the extent he asserts a violation during the time period before Plaintiff sent his August 29, 2002 *30 letter because Experian had no reason to question the accuracy of any information appearing in Plaintiff's credit file. *See Lee,* 2003 WL 22287351, at *3; *Whelan,* 862 F. Supp. at 830 (holding that Plaintiff's failure to notify the credit reporting agency of an inaccuracy was "fatal" to Plaintiff's Section 1681e(b) claim).

Plaintiffs response is that merely pointing to an inaccuracy is always enough to survive summary judgment and send his Section 1681e(b) "reasonable procedures" case to a jury. (Br. at 14). Plaintiff's argument that "any inaccuracy on [his] credit report both shifts the burden of proof to Experian as to its use of reasonable procedures and also absolutely entitles [Plaintiff] to present the issue of reasonable procedures to a jury ... *misreads the cases* and, even more significantly, *is at odds with both common sense and the [FCRA]." Lee,* 2003 WL 22287351, at *3 (emphasis added).

The "reasonable procedures" element of a section 1681e(b) claim has been succinctly framed as follows:
> Most often the question of reasonable procedures is a jury question *(Crabill v. Trans Union, LLC,* 259 F.3d 662, 664 (7th Cir. 2001)). There are however situations in which a court can determine that the procedures used by a particular consumer reporting agency are reasonable as a matter of law - where the reasonableness of the procedures used by the consumer reporting agency is beyond question. *(Id.)* For example, *Henson v. CSC Credit Servs.,* 29 F.3d 280, 285 (7th Cir. 1994) held as a matter of law that consumer reporting agencies are not liable for reporting information from a judgment docket unless the agency has prior notice from the consumer that the information might *31 be inaccurate. And that *requirement of prior notice logically extends to the nonimposition of agency liability for any other type of inaccuracy.* (see, e.g., *Zahran [v. Trans Union Corp.,* No. 01 C 1700, 2003 WL 1733561, at *5 (N.D. Ill. Mar. 31, 2003)]).

*Lee,* 2003 WL 22287351, at *3; *see also Whelan,* 862 F. Supp. at 830. And, unlike the credit reporting agencies in *Parker v. Parker,* 124 F. Supp. 2d 1216 (N.D. Ala. 2000), and *Cahlin* cited by Plaintiff, Experian had no notice here of inaccurate information appearing on Plaintiff's credit file. Nor does Plaintiff's citation of *Stewart v. Credit Bureau, Inc.,* 734 F.2d 47 (D.C. Cir. 1984), overcome the notice requirement for § 1681e(b) claims that the Seventh Circuit articulated in *Henson.*

Similarly, Plaintiff's reliance on *Sheffer,* an unreported decision out of the Eastern District of Pennsylvania, is unavailing. In *Sheffer,* the credit reporting agencies were on notice of an inaccuracy because the consumer disputed the information, the credit reporting agencies conducted reinvestigations, and the disputed information remained on the consumer's files. The consumer in *Sheffer* obtained copies of his credit files from two consumer reporting agencies, Equifax and Trans Union, and noted a Sears account purportedly opened in 1965 (several years before the consumer was born) and indicating "CONSUMER DECEASED." The consumer then notified both credit reporting agencies that he was very much alive and requested a reinvestigation of the Sears account. Both consumer reporting agencies then conducted reinvestigations with Sears, Sears verified the reported information in both instances, and the Sears account remained on the consumer's files. The *32*Sheffer* court denied summary judgment in light of the facts that the credit reporting agencies were on notice of an inaccuracy with the Sears account, and that the Sears account contained inconsistent data including the account being opened before the consumer was born, and a status of "deceased" when the consumer was alive. The *Sheffer* court found that on these facts, it was for the trier of fact to determine the reasonableness of procedures under 1681e(b) and adequacy of the reinvestigation under 1681i. Unlike the account information at issue in *Sheffer,* the Cross Country Bank account in this case did not contain inconsistent information on life's certainties, *i.e.,* birth and death. Moreover, unlike the credit reporting agencies in *Sheffer,* Experian was not on notice that the Cross County account here contained inaccurate information. There is no record evidence that Cross Country Bank was an unreliable source of information, nor is there any record evidence that Plaintiff notified Experian that his Cross Country Bank account included an inaccurate history.

As a matter of law, Plaintiff can not establish that any reporting of the Cross Country Bank account history was due to Experian's failure to follow reasonable procedures. Because Experian had no reason to doubt the accuracy of the information from Cross Country and Plaintiff did not provide any evidence to the contrary, Plaintiff's Section 1681e(b) claim fails. *See Zahran,* 2003 WL 1733561, at *4; *Field,* 2002 WL 849589, at *4 (N.D. Ill. May 3, 2002); *Tinsley v. Trans Union Corp.,* 879 F. Supp. 550, 552 (D. Md. 1995); *Whelan,* 862 F. Supp. at 829.

**\*33 IV. Plaintiff is Not Entitled to Statutory Damages Under Section 1681n(a) Because There is No Evidence that Experian Acted Willfully.**

Plaintiff's failure to show even a negligent FCRA violation, or damages therefrom, dooms his claim for statutory damages. Even if Plaintiff were able to survive summary judgment on his claim for actual damages, summary judgment was still properly granted on his claim for statutory damages because any alleged violation was not willful.

To recover statutory damages, Plaintiff concedes that he must prove that Experian "willfully fail[ed] to comply" with the

FCRA. 15 U.S.C. § 1681n. Plaintiff carries the heavy burden of proving that Experian "knowingly and intentionally committed an act in conscious disregard for the rights of others." *Field,* 2002 WL 849589, at *7 (quoting *Stevenson v. TRW, Inc.,* 987 F.2d 288, 293 (5th Cir. 1993)); *see also Lee,* 2003 WL 22287351, at *7 (finding that plaintiff had no evidence to demonstrate that Experian "knowingly and intentionally" failed to comply with the FCRA so as to "exhibit intentional disregard for a consumer's rights"). Stated another way, Plaintiff must show that Experian "took 'deliberate and purposeful action' that was directed specifically at [him] to make out a willful noncompliance claim." *Zahran,* 2003 WL 1733561, at *7 (quoting *Casella,* 56 F.3d at 476). Acts such as "willful concealment, misrepresentations, or systematic deprivation of consumers' rights could justify an award *of*" damages under § 1681n(a). *Lee,* 2003 WL 22287351, at *7;*Ruffin-Thompkins,* 2003 U.S. Dist. LEXIS 23647. Plaintiff cites *Sheffer* in support of his proposition that punitive damages may be **\*34** warranted where evidence shows that inaccuracies in credit reports arise from something more than an isolated instance of human error that was promptly cured. *Id.* at *8. There is no such evidence here to support an inference of any intentional, systematic noncompliance with the FCRA.

In this case, as in *Lee,* "no facts support an inference of intentional systematic noncompliance in this case. Far from being in willful noncompliance with the act, Experian has offered ample evidence to show that consumers' rights are adequately protected." *Lee,* 2003 WL 22287351, at *8. Plaintiff's assertion that Experian "did nothing" when faced with Plaintiff's inadequate letter rings false--Experian immediately replied to Plaintiff to inform him of its need for more information to process his dispute. Experian attempted to continue a dialogue with Plaintiff to solve his problem. Moreover, this was the first and only time Plaintiff contacted Experian to seek an investigation. Such conduct on Experian's part can hardly be deemed "intentional disregard for a consumer's rights" or a "systematic deprivation" entitling Plaintiff to statutory damages. The district court was correct to grant summary judgment to Experian on Plaintiff's claim for statutory damages.

## V. CONCLUSION

Defendant-Appellee Experian Information Solutions, Inc. respectfully requests that this Court affirm the district court's award of summary judgment based on the grounds that (i) Plaintiff failed to demonstrate actual, emotional, or statutory damages; (ii) Experian complied with the FCRA in response to Plaintiff's dispute under Section 1681i(a); and (iii) that Experian had no notice **\*35** of an alleged inaccuracy that would give rise to a potential for Section 1681e(b) liability.

| | |
|---|---|
| 14 | Experian's September 11, 2002 correspondence conspicuously states:<br>If you already have your personal credit report [Plaintiff had two] and believe that information is inaccurate, visit *www.experian.com/consumer* and click on "Request an investigation," or you may call the number on your report to request an investigation.<br>If you write to us to request an investigation, please send all of the identification information listed above, and list each item on your report that you believe is inaccurate, the account number and the specific reason you feel the information is incorrect. There is no charge for requesting an investigation.<br>(R. 9, Ex. 8 at p. 2) (emphasis in original). |

End of Document © 2012 Thomson Reuters. No claim to original U.S. Government Works.