**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

<table>
<tr><td>

MICHAEL T. DREHER,
*Individually and on behalf of a class of*
*similarly situated persons*,

      Plaintiff,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC.,
CARDWORKS, INC., and
CARDWORKS SERVICING, LLC,

      Defendants.

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

Civil Action No. 3:11-CV-00624-JAG

</td></tr>
</table>

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S REBUTTAL TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The sole question before the Court on this Motion for Partial Summary Judgment is whether Experian violated *clearly established* law when it listed "Advanta" as the source of information for Advanta Bank Corp. originated accounts after the bank went into receivership with the FDIC.  Experian is entitled to summary judgment as a matter of law because there is *no* authority—let alone "pellucid" statutory text, federal court of appeals rulings, or authoritative agency interpretation required by *Safeco Insurance Co. of America v. Burr*[1]—establishing that a

---

[1] 551 U.S. 47 (2007).

servicer is the "source" of the information in a consumer's file,[2] rather than the originating credit card issuer.[3]

As the Supreme Court in *Safeco* demonstrated, and as subsequent decisions continue to show, district courts regularly and appropriately adjudicate FCRA willfulness claims at the summary judgment stage. *See, e.g., Safeco*, 551 U.S. 47; *Fuges v. Sw. Fin. Servs., Ltd.*, No. 11-4504, 2012 WL 6051966 (3rd Cir. Dec. 6, 2012)[4]; *Birmingham v. Experian Info. Solutions, Inc.*, 633 F.3d 1006 (10th Cir. 2011); *Edo v. Geico Casualty Co.*, 512 F.3d 566 (9th Cir. 2008); *Spano v. Safeco Corp.*, 511 F.3d 1206 (9th Cir. 2008); *Shannon v. Equifax Info. Servs., LLC*, 764 F. Supp. 2d 714 (E.D. Pa. 2011); *Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596 (E.D. Pa. 2008). The Court is not only permitted to decide the issue of willfulness on summary judgment, it is *obligated* to dispose of such claims when "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In this case, the material facts are not in dispute. Plaintiff even admits that what did or did not happen is not at issue.[5] Because Experian's conduct was *not* objectively unreasonable in

---

[2] *See* 15 U.S.C. § 1681g(a)(2).

[3] Indeed, Experian's listing of the credit card issuer as the "source" of the consumer information was a reasoned business and FCRA-compliance decision. *See* Henke Decl. ¶¶ 10-16. Experian sought to enhance consumer recognition of the particular debt and make it easier for the consumer to resolve any dispute. *See id.*

[4] The slip opinion of *Fuges v. Southwest Financial Services, Ltd.*, No. 11-4504 (3rd Cir. Dec. 6, 2012), is attached to this Rebuttal as Exhibit A.

[5] Of Defendant's list of 35 facts, Plaintiff only "disputes" four items – Paragraphs 11, 18, 20, and 32. Three of the four challenges are not disputes at all, but disagreements with word choice or characterization. *See* Pl.'s Opp. to Def., Experian Information Solutions, Inc.'s Mot. for Part. Summ. Judg. (Dkt. No. 76) (hereinafter "Pl.'s Opp.") at 17-18. Plaintiff attempts to discredit the declaration of long-time Experian employee Peter Henke in an effort to dispute Paragraph 32. *Id.* at 18-19. Yet none of the testimony Plaintiff cites contradicts the assertion that "Experian's common practice is to use an associated subscriber name that will aid the consumer in recognizing the obligation so that the consumer can correct any inaccuracies or lodge disputes if necessary. *Cf.* Ex. E (Henke Dep. at 83:4-21, 84:13-18, 84:22-85:3, 86:25-87:11) (explaining Mr. Henke's personal knowledge of Experian's goal of consumer recognition). Thus, there is no genuine dispute as to any material fact.

light of clearly established law, Experian is entitled to summary judgment on the issue of willfulness as it relates to Plaintiff's Class Claims.

## I.    UNDISPUTED MATERIAL FACTS

For the Court's convenience, Experian summarizes[6] the undisputed facts material to this motion as follows:

1.    Advanta Bank Corp. issued small business credit cards.  Decl. in Supp. of Def. Mot. for Partial Summary. Judgment (Dkt. No. 56) (hereinafter "Clark Decl."), Ex. A (Office of Material Loss Reviews, Federal Deposit Insurance Corporation, Report No. MLR-11-002, *Material Loss Review of Advanta Bank Corp., Draper, Utah*, Executive Summary (October 2010) ("*Material Loss Review*")).

2.    Through a series of transactions, the receivables in a portfolio of Advanta Bank Corp. originated credit card accounts and payments thereon became the assets of the Advanta Business Card Master Trust.  Clark Decl., Ex. B (Underwriting Agreement among Advanta Business Receivables Corp., Advanta Bank Corp., and Deutsche Bank Securities Inc. and Greenwich Capital Markets, Inc., each as a representative of the Underwriters, section 1 (Oct. 31, 2007) ("Underwriting Agreement")).

3.    Advanta Bank Corp. was appointed "Servicer" of the assets of the Advanta Business Card Master Trust on August 1, 2000, and served in that capacity through July 31, 2010.  *Id.*; Clark Decl., Ex. C, (Notice of Termination of Advanta Bank Corp. as Servicer and Appointment of Successor Servicer (July 20, 2010) ("Notice of Termination") at CWS 1396; *In re Muller*, 479 B.R. 508, 515-16 (Bankr. W.D. Ark. 2012).

---

[6] For a more detailed explication of the facts, please see Experian's Memorandum in Support of Its Motion for Partial Summary Judgment (Dkt. No. 55) at 2-8.

4.  On March 19, 2010, Advanta Bank Corp. went into receivership with the FDIC. Clark Decl., Ex. A (*Material Loss Review* at Exec. Summary).

5.  After Advanta Bank Corp. went into receivership, Experian continued to communicate with employees of Advanta Corporation or its affiliates.  Ex. M to Pl.'s Opp. (Dkt. No. 77-12) at EXPDREH000297-99 (Experian activity log entries dated 3/26/2010 through 10/25/2010).

6.  On July 19, 2010, the Indenture Trustee of the Advanta Business Card Master Trust (Deutsche Bank Trust Company Americas) terminated Advanta Bank Corp. as "Servicer" of the trust assets and, with consent and agreement of the FDIC, appointed CardWorks, Inc. and CardWorks Servicing, LLC (jointly "CardWorks") as "Successor Servicer," effective August 1, 2010.  Clark Decl., Ex. C (Notice of Termination at CWS 1396).

7.  As "Successor Servicer," CardWorks does not own the Advanta Bank Corp. originated accounts it services.  Ex. D (Nowell Dep. at 62:5-25).

8.  After Advanta Bank Corp. went into receivership, and after CardWorks began servicing Advanta Bank Corp. originated accounts, Experian reported "Advanta" as the source of information in Plaintiff's consumer credit file.   Experian's Answer to Pl.'s Second Amended Compl. ¶ 8 (Dkt. No. 22).

9.  Utilizing the information provided in his Experian consumer reports, Plaintiff disputed the delinquency attributed to him and requested validation of the debt.  Clark Decl., Ex. F (Pl.'s Fed. R. Civ. P. 26(a)(1) Disclosures at Dreher - 000037-40, 000083-84).

10. Plaintiff received a response to his dispute, including copies of an on-line credit application and a billing statement dated March 7, 2011.  *Id.* at Dreher - 000042-45.

While Plaintiff spends approximately 19 pages of his Opposition reviewing the "facts" of the case, he cannot manufacture a genuine dispute where none exists.[7]  In his attempt to distract the Court from the appropriate willfulness inquiry, Plaintiff adduces a series of quasi-factual assertions that are immaterial,[8] unsupported,[9] internally inconsistent,[10] and/or patently false.[11]  In sum, Plaintiff's Opposition equates to nothing more than an uncorroborated conspiracy theory. As the Supreme Court has noted, "in the face of the defendant's properly supported motion for summary judgment, the plaintiff [can] not rest on his allegations of a conspiracy to get to a jury without 'any significant probative evidence tending to support the complaint.'" *Anderson v.*

---

[7] *See* n.5, *supra*.  For a detailed examination of Plaintiff's assertions in the "Facts" section of his Opposition, see Exhibit B, filed contemporaneously with this Rebuttal.

[8] The first 15 pages of Plaintiff's Opposition boil down to a bad faith argument.  Yet, as discussed in Section II.A., *infra*, evidence of "the defendant's intent or subjective bad faith . . . is irrelevant when there is an objectively reasonable interpretation of the statue that would allow the conduct in question." *Fuges v. Sw. Fin. Servs., Ltd.*, No. 11-4504, slip op. at 18 (3d Cir. Dec. 6, 2012) (internal quotation marks omitted).

[9] For example, without citing any evidence, Plaintiff alleges "Advanta Bank was only the account servicer and these accounts were not Advanta Bank or FDIC-controlled assets." Pl.'s Opp. at 11.  In fact, Advanta Bank was the original creditor, the account issuer, and the "Servicer" of the assets of the Advanta Business Card Master Trust. Clark Decl., Ex. A (*Material Loss Review* at 2); Clark Decl., Ex. B (Underwriting Agreement, Section 1); Ex. D (Nowell Dep. at 72:2-19).  Furthermore, the FDIC, as receiver for Advanta Bank Corp., instructed CardWorks regarding how to report the Advanta accounts to Experian. Ex. D (Nowell Dep. at 106:1-107:4, 107:18-23); Clark Decl., Ex. C (Notice of Termination at CWS 1393-94).

[10] For example, on page 3 of his Opposition, Plaintiff claims the Advanta "account was never removed until [Plaintiff] commenced this litigation."  On page 4, however, Plaintiff correctly states that Experian confirmed it had "deleted" the "Advanta Credit Cards" trade line in the August 5, 2011, dispute results Plaintiff received months before he filed this lawsuit.  For another example of Plaintiff's contradictions, see note 11, *infra*.

[11] On page 11 of his Opposition, Plaintiff falsely asserts Vion Holdings II, LLC "served as 'creditor' and the principal to whom the servicer, CardWorks, was responsible."  Vion Holdings was *not* the creditor, but the beneficiary of the revenue stream related to certain Advanta credit card accounts. Ex. D (Nowell Dep. at 62:17-63:7); *see also In re Muller*, 479 B.R. 508, 515-16 (Bankr. W.D. Ark. 2012) (overruling a debtor's objection that "Advanta Bank [wa]s not the party with the legal right to enforce the claim because the debt was sold to a securitized trust" and allowing Advanta Bank's claim in its entirety).  Moreover, Deutsche Bank Trust Company Americas, the Indenture Trustee of the Advanta Business Card Master Trust, was the entity that contracted with CardWorks to set up the servicing relationship, a fact Plaintiff admits. Pl.'s Opp. at 11 ("The credit card portfolio trustee, Deutsche Bank, could not fire Advanta Bank (and the FDIC) as servicer and replace it with CardWorks until three months after the March 2010 dissolution.").  Plaintiff's statement on page 11 of his Opposition regarding Deutsche Bank's ability to "fire Advanta Bank" three months after its dissolution also contradicts Plaintiff's continued assertion that Advanta Bank ceased to exist the moment it went into receivership with the FDIC on March 19, 2010.  Logically, one organization cannot "fire" another organization if that second organization does not exist.

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290 (1968)).   Plaintiff's baseless conspiracy theory regarding an alleged scheme to conceal CardWorks' true identity from consumers cannot defeat Experian's properly supported motion for summary judgment.

## II.   ARGUMENT

### A.   Advanta Bank Corp.'s Dissolution Is A Legal Fiction

Plaintiff's entire argument hinges on the idea that when Advanta Bank Corp. went into FDIC receivership it ceased to exist.   Although a failed institution may, in a strict legal sense, no longer exist as a distinct legal entity following its closure and the appointment of FDIC as receiver, the failed institution does not simply "dissolve" as asserted by Plaintiff.   Rather, the FDIC steps into the shoes of the failed institution.   *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994) ("[T]he FDIC as receiver steps into the shoes of the failed [bank].") (internal quotations marks omitted).   The failed institution is "placed into receivership" with the FDIC for the purpose of liquidating or winding-up the affairs of the failed institution.   *See, e.g.*, *Charter Federal Savings Bank v. Office of Thrift Supervision*, 976 F.2d 203, 207 (4th Cir. 1992); *Quantam Varde Asset Fund LLC v. Zuffle*, 73 Fed. Appx. 672, 673 (5th Cir. 2003); *West Park Assocs. v. Butterfield Savings & Loan Assn.*, 60 F.3d 1452, 1453 (9th Cir. 1995); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 781 (11th Cir. 2005); *Landmark Land Co. v. FDIC*, 256 F.3d 1365, 1371 (Fed. Cir. 2001).

When the FDIC is appointed as receiver for a failed insured depository institution, it succeeds by operation of law to all of the failed institution's rights, titles, powers, and privileges, and takes possession of the failed institution's assets and liabilities.   *See* 12 U.S.C. § 1821(d)(2)(A)(i).   In its capacity as receiver, the FDIC has the power to take over the assets and operations of the failed institution and to conduct all of its business.   12 U.S.C.

§ 1821(d)(2)(B)(iii). Following its appointment, the FDIC will seek to maximize the value of the assets of the failed institution, liquidate them, and distribute the proceeds to the institution's depositors and other creditors. *See* FDIC Resolutions Handbook at 70, *available at* http://www.fdic.gov/bank/historical/reshandbook/ch7recvr.pdf (last visited Dec. 27, 2012).

Advanta Bank Corp. was closed by the Utah Department of Financial Institutions and placed into receivership with the FDIC on March 19, 2010. Presently, Advanta Bank Corp. remains in receivership with the FDIC. The receivership has not been terminated or dissolved by the FDIC. Indeed, according to publicly available financial information the FDIC discloses on its website, Advanta Bank Corp. still has substantial amounts of assets, liabilities, and unpaid deposit claims outstanding as of September 30, 2012. *See* "ADVANTA BANK CORP - Receivership Balance Sheet Summary (Unaudited) for the period ending September 30, 2012," *available at*: http://www2.fdic.gov/drrip/bal/ (last visited Dec. 27, 2012) (select "Advanta Bank Corp." from the drop-down menu).

Further evidence of the Advanta receivership's continued existence is that "Advanta Bank Corp." continues to pursue claims against debtors in bankruptcy. For example, on October 2, 2012, just three days before Experian filed its Motion for Partial Summary Judgment, a bankruptcy court allowed Advanta Bank Corp.'s claim against a debtor in its entirety. *In re Muller*, 479 B.R. 508, 515-16 (Bankr. W.D. Ark. 2012). Even after acknowledging the relationship between Advanta Bank Corp., the FDIC, the Advanta Business Card Master Trust, Deutsche Bank, CardWorks, and Resurgent Capital Services (an agent of CardWorks), the court overruled the debtor's objection, rejecting the debtor's argument that "Advanta Bank [wa]s not the party with the legal right to enforce the claim because the debt was sold to a securitized trust." *Id.*

Even more telling, since the FDIC receivership commenced in March 2010, "Advanta Bank Corp." has been a party to no less than 13 different federal cases, including as a plaintiff.[12] Simply put, Advanta Bank Corp.'s "dissolution" is a legal fiction, and Plaintiff's argument that the bank ceased to exist the moment it went into receivership necessarily fails.[13] Under these circumstances, Experian's identification of "Advanta" as the source of information for Advanta Bank Corp. originated accounts was objectively reasonable, as well as consistent with the underlying purposes of the FCRA.[14]

### B. Plaintiff Must Prove Objective Unreasonableness, Which Renders Experian's Subjective Intent Irrelevant

Contrary to Plaintiff's assertions, this is not a "conscious disregard" case. Experian did not have actual knowledge of an FCRA violation, and Plaintiff has not come forward with any evidence to the contrary. Regardless, under *Safeco*, Experian's subjective intent is irrelevant. *See* 551 U.S. at 70 n.20.

Plaintiff obfuscates the issue of actual knowledge in his failed attempt to prove willfulness. No one disputes that Experian knew that Advanta Bank Corp. went into receivership with the FDIC. But that is not the question. Instead, the operative inquiry for the conscious disregard standard would be whether Experian knew listing "Advanta" as the source of information in a consumer's file after Advanta Bank Corp. went into receivership violated the

---

[12] See the appendix of cases attached to this Rebuttal as Exhibit C. Vion Holdings, LLC has sought to intervene in only one of the 13 actions. *See Advanta Bank Corp. v. Damron*, No. 1:10-cv-725-LY, Dkt. No. 26 (W.D. Tex. June, 6 2012). By naming Advanta Bank Corp. as a defendant-petitioner in its motion to intervene, Vion Holdings II, LLC acknowledges, as it must, Advanta Bank Corp.'s right to enforce a legal claim – the collection of an arbitration award – to the potential detriment of Vion's legal and financial interests. *Id.* at 2.

[13] The continued existence of the Advanta Bank receivership also renders the declarations of Hendricks (Ex. H to Pl.'s Opp.) and De Armond (Ex. U to Pl.'s Opp.) meaningless, because they both rely on the premise that the bank ceased to exist as of March 19, 2010.

[14] *See* § II.C.1.b., *infra* (discussing how the text of the FCRA and court of appeals decisions such as *Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938 (7th Cir. 2007), support Experian's interpretation of § 1681g(a)(2)).

FCRA.  Experian vehemently denies that listing "Advanta" under these circumstances violates any provision of the FCRA, and "the record contains no evidence that [Experian] knew that it was in violation of FCRA."  *See  Fuges v. Sw. Fin. Servs., Ltd.*, No. 11-4504, 2012 WL 6051966, slip op. at 16, n.13 (3d Cir. Dec. 6, 2012).

Experian is entitled to summary judgment because Plaintiff cannot demonstrate that Experian's conduct was objectively unreasonable and, thus, in reckless disregard of the rights of consumers under the statute.  In *Safeco*, the Supreme Court "established a safe harbor against liability for willfulness.  A company cannot be said to have willfully violated FCRA if the company acted on a reasonable interpretation of FCRA's coverage." *Fuges*, No. 11-4504, slip op. at 14.  "Thus, even when a court disagrees with a party's reading of FCRA, it may not impose liability for a reckless, and therefore willful, violation of the statute unless that party's reading is 'objectively unreasonable.'" *Id.* at 15.

The inquiry the Court must conduct to resolve this Motion for Partial Summary Judgment is neither factual nor subjective.  It is a pure legal inquiry without reference to the defendant's intent or other subjective factors.  *Safeco*, 551 U.S. at 70 n.20; *Fuges*, No. 11-4504, slip op. at 18; *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1319 (11th Cir. 2009); *see also Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 726 (7th Cir. 2008) (noting that standard for willfulness announced in *Safeco* is "objective").

Plaintiff spends numerous pages of his Opposition discussing Experian's use of the phrase "source of the information" in other contexts.[15]  Plaintiff's argument is, "in essence, an assertion about the defendant's intent or subjective bad faith, and, as such, it was 'expressly

---

[15] Notably, the examples Plaintiff cites do not exclude Experian appropriately forwarding a dispute to, or receiving data from, a servicer or agent authorized to act on behalf of the source of the information.

foreclosed by *Safeco*,' because such evidence 'is irrelevant when there is an objectively reasonable interpretation of the statute that would allow the conduct in question.'" *Fuges*, No. 11-4504, slip op. at 18 (quoting *Long v. Tommy Hilfiger U.S.A.*, 671 F.3d 371, 377 (3d Cir. 2012) and citing *Safeco*, 551 U.S. at 70 n.20).  Hence, the Court must disregard Plaintiff's arguments about other uses of the phrase "source of the information."[16]  In sum, Experian is entitled to summary judgment because Plaintiff cannot identify "pellucid" statutory text, a single court of appeals decision, or binding agency authority that proves Experian's conduct was objectively unreasonable, or for that matter, unlawful at all.

### C.     Reporting "Advanta" As The Source Of Information For Advanta Bank Corp. Originated Accounts Was *Not* Objectively Unreasonable

No legal guidance exists to say how a CRA should report the source of information regarding accounts originated by banks that subsequently went into receivership,  and the FCRA offers no explanation or elaboration—let alone a "pellucid" one—of what entity should be deemed the "source" in such circumstances.  That alone is dispositive under *Safeco*, which requires summary judgment in the absence of definitive authority establishing the unlawfulness of the defendant's alleged conduct.  551 U.S. at 70.  Neither the Federal Trade Commission ("FTC") nor the Consumer Financial Protection Bureau ("CFPB") nor the courts have considered the precise issue of how to report the source of information for credit card accounts originated by banks before going into receivership.  Taking an even broader view of the issue to be decided on summary judgment, no authoritative legal guidance exists regarding whether the bank that originally issued a credit card to a consumer, the credit card servicer, or another stakeholder must be deemed the "source" of a trade line in a consumer's credit disclosure.  Tellingly, Plaintiff does

---

[16] Furthermore, the Court must disregard the declarations of Hendricks (Ex. H to Pl.'s Opp.) and De Armond (Ex. U to Pl.'s Opp.) to the extent they opine on Experian's subjective intent.

not cite *one* case or piece of agency authority that instructs a CRA to list the credit card servicer, instead of the credit card issuer, as the source of information in a consumer report.[17]  Given this legal landscape, reporting "Advanta," the name of the credit card issuer, as the source of the information was *not* objectively unreasonable.

### 1.    Experian Cannot Be Held Liable For Willful Noncompliance With The FCRA

In *Fuges v. Southwest Financial Services, Ltd.*, No. 11-4504, 2012 WL 6051966 (3d Cir. Dec. 6, 2012), the Third Circuit Court of Appeals upheld the district court's entry of summary judgment for the defendant CRA on the issue of willfulness.[18]  *Id.*, slip op. at 28-29.  In its decision, the court outlined a three-step process for analyzing FCRA willfulness claims under *Safeco*.  *Id.*, slip op. at 23-26.  First, the court examined whether the phrases "consumer reporting agency" and "consumer report," which were the FCRA terms at issue in the case, were ambiguous as they related to the defendant's particular business model.  *Id.*, slip op. at 23.  Second, the court analyzed whether the defendant's reading of the applicable provisions of the

---

[17] Plaintiff cites several court of appeals cases, but they are inapposite. *See* Pl.'s Opp. at 25.  For example, Plaintiff cites *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 416-17 (4th Cir. 2001), claiming that "the Fourth Circuit clearly identified the 'source' of the disputed information as the clerk, and not the creator of the original underlying record."  Pl.'s Opp. at 25.  With this statement, Plaintiff contradicts his own arguments.  Under Plaintiff's "furnisher" as the "source" theory, the clerk could not be the § 1681g(a)(2) "source of information," as the public record information was not furnished to the CRA by the clerk directly but by a third party investigator. *See, Dalton*, 257 F.3d at 413 (describing roles of multiple subvendors in acquiring criminal record information from clerk).  Plaintiff also claims that the FTC's use of the phrase "original source of information" to describe furnishers in a 2004 Report to Congress indicates that the FTC "has interpreted 'source of the information' to mean the entity that was the credit furnisher governed by 15 U.S.C. § 1681s-2(b)."  Pl.'s Opp. at 25 (citing "Report to Congress Under Sections 318 and 319 of the Fair and Accurate Credit Transactions Act of 2003," FTC, October 2004. http://www.ftc.gov/reports/facta/041209factarpt.pdf ("FTC Report to Congress")).  No such interpretation is present in the report – which instead simply attempts to describe what a furnisher is for the reader. *Compare* FTC Report to Congress at 18 ("These requirements recognize that furnishers – the original source of the information – have a critical role to play in the overall accuracy of consumer report information.") *with* Pl. Opp. at 25 (presenting same quotation with "[were]" and "[and]" added to relevant quotation to change meaning).  Even if Plaintiff's assessment of the FTC's use of the phrase were correct, a report to Congress is far from the binding agency authority required by *Safeco*, 551 U.S. at 70.

[18] Besides being a recent and definitive willfulness opinion from a federal court of appeals, the *Fuges* decision was appealed from the Eastern District of Pennsylvania,  which—along with the Eastern District of Virginia—is a hotbed for FCRA class actions and has extensive knowledge and experience with these cases.

FCRA had some foundation in the statutory text. *Id.*, slip op. at 24-25. Third, the court looked for judicial or agency guidance that would suggest that the defendant's reading of the FCRA was contrary to the intended meaning of the provisions in question. *Id.*, slip op. at 25-26. Following the model set forth in *Fuges*—which is consistent with the courts' analysis in *Safeco*, 551 U.S. 47, and *Levine*, 554 F.3d 1314—an examination of Experian's interpretation of the FCRA demonstrates that reporting "Advanta" as the source for Advanta Bank Corp. originated accounts was not objectively unreasonable.

> a.      **The Definition Of "Source Of The Information" Is Ambiguous**

First, we examine the phrase "source of the information" as it relates to Advanta Bank Corp. originated accounts. Unlike in *Fuges*, the FCRA terminology at issue in this case is not defined in the statute itself. Without the guidance of a statutory definition, Plaintiff argues that the "source of the information" in a consumer report is the "furnisher" or "supplier of information." Firstly, if Congress intended § 1681g(a)(2) to read "furnisher of the information," it would have used that term, as it does throughout the statute. *See, e.g.*, § 1681s-2 (enumerating the duties of "furnishers of information"). "'[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Thus, "source" and "furnisher" are *not* interchangeable.

As support for the definition of "source" as "supplier," Plaintiff cites the declaration of his purported expert De Armond. In her declaration, De Armond quotes Webster's dictionary definition of source as "the point of origin of a stream of water: FOUNTAINHEAD . . . a generative force or stimulus: CAUSE, INSTIGATOR . . . a point of origin or procurement: FOUNTAIN SUPPLIER . . . ." Ex. U to Pl.'s Opp. at 10. De Armond conveniently selects the

word "supplier" from this definition.  She does not discuss other parts of the definition like "point of origin," "generative force," "stimulus," "cause," or "instigator," all of which point to the entity that issues a credit card, *i.e.*, the creditor, as the "source" of the information for credit card accounts.  In fact, De Armond expressly acknowledges that "source" could mean "creditor." On page 12 of her declaration, De Armond states the following regarding identity theft debt:

> [T]he thief, not the consumer chooses the creditor, and thus the consumer will likely have had no contact of his or her own with the creditor.  Accordingly **the creditor, the source of the information in the report (to use a section 1681g(a) term)**, will be completely anonymous unless the consumer learns of the creditor's identity through some other means.  These means, clearly are the section 1681g(a) disclosures that Congress provided for.

Ex. U to Pl.'s Opp. at 12 (emphasis added).

Even if we set aside Plaintiff's purported expert's admission that "source" could mean "creditor" and accept that "source" means "supplier" of information, "the unbounded nature of th[is] definition renders [it] ambiguous when one tries to figure out just how broadly a sensible definition should reach."  *Fuges*, No. 11-4504, slip op. at 23. As Defendant previously explained to the Court, there are many players involved in the credit reporting for Advanta Bank Corp. originated accounts, including CardWorks, First Data Resources, and FIS.  *See* Def.'s Mem. (Dkt. No. 55) at 5.  While Plaintiff debates whether First Data Resources actually provides information to the credit reporting agencies or just "transmits" it, no one disputes that FIS is the entity that provides the payment information that is eventually reported to Experian.  *See* Ex. D (Nowell Dep. at 80:22-81:16).  Thus, under Plaintiff's definition, FIS is another "source of information." Taking Plaintiff's argument to its limits, any servicer, agent, or contractor that provides a

piece of credit reporting information to a CRA is a "source."[19]  *Cf. Fuges*, No. 11-4504, slip op. at 23.  Given the number of players involved in the credit reporting for Advanta Bank Corp. originated accounts, the phrase "source of the information" is ambiguous.

> **b.      Experian's Reading Of § 1681g(a)(2) Has Foundation In The Statutory Text, And Was Therefore Not Objectively Unreasonable**

Interpreting § 1681g(a)(2) to permit listing "Advanta" as the source of the information for Advanta Bank Corp. originated accounts has foundation in the statutory text.  As one court of appeals stated: "A primary purpose of the statutory scheme provided by the disclosure in 1681g(a)[] is to allow consumers to identify inaccurate information in their credit files and correct this information via the grievance procedure established under 1681i."  *Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 941 (7th Cir. 2007).  The court went on to explain: "The disclosure must be made in a manner sufficient to allow the consumer to compare the disclosed information from the credit file against the consumer's personal information in order to allow the consumer to determine the accuracy of the information set forth in her credit file."  *Id.*  The court further elucidated: "An accurate disclosure of unclear information defeats the consumer's ability to review the credit file, eliminating a consumer protection procedure established by Congress under the FCRA."  *Id.*

---

[19] Notably, Plaintiff contradicts his own definition of "source" as "furnisher" or "supplier" when he cites the public records case *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 416-17 (4th Cir. 2001), stating, "the Fourth Circuit clearly identified the 'source' of the disputed information as the clerk."  *See* Pl.'s Opp. at 25.  In *Dalton*, there were two subvendors (agents) between the court clerk and the CRA.  *Dalton*, 257 F.3d at 417.  This scenario is analogous to the relationship between Experian, CardWorks, FIS, and Advanta Bank.  In the *Dalton* scenario, Plaintiff identifies the clerk as the "source of the information," instead of either of the two subvendors.  Following Plaintiff's logic regarding *Dalton*, Advanta Bank would be the "source of the information" in this case.

Experian's interpretation of the "source of the information" as "Advanta," the name of the credit card issuer, comports with the statutory goal of providing clear and accurate disclosures. *See* § 1681g(a). Consumers with Advanta credit cards would not recognize an account listed as "CardWorks." Listing the credit card servicer instead of the credit card issuer would simply confuse consumers. As noted in *Gillespie*, "disclosure of unclear information defeats the consumer's ability" to engage in self-help, frustrating one underlying purpose of the FCRA. *See* 484 F.3d at 941. The only way for Advanta credit card customers to compare their personal information against their consumer reports would be to list "Advanta."[20] Thus, interpreting the FCRA to permit listing "Advanta" as the source of information for Advanta Bank Corp. originated accounts was entirely reasonable. This interpretation has a foundation in the statutory text, and at a minimum, renders Experian's conduct *not* objectively *un*reasonable.[21]

### c. There Is No Judicial Or Agency Guidance That Suggests Experian's Reading Of § 1681g(a)(2) Is Contrary To The Intended Meaning Of The FCRA

A thorough review of FCRA case law does not reveal any requirement that a CRA list the credit card servicer, the credit card issuer, or both as the "source" of information. As one court of appeals has stated regarding § 1681g(a)(2), "there is a paucity of case law interpreting this

---

[20] Plaintiff unconvincingly argues that an identity theft victim needs the legal name of the credit card servicer to correct inaccurate information in his credit file. Since an identity theft victim would not recognize a credit card servicer's name anymore than he would recognize a credit card issuer's name, the most important information for an identity theft victim would be the contact information for the entity that handles account disputes. In this case, the contact information Plaintiff obtained from his consumer reports enabled him to contact CardWorks, the servicer who handles consumer disputes for Advanta credit accounts. It is undisputed that Plaintiff received a response to his dispute. Clark Decl., Ex. F ((Pl.'s Fed. R. Civ. P. 26(a)(1) Disclosures at Dreher - 000042-45). Plaintiff would not have resolved his dispute any more satisfactorily had he been given the name "CardWorks," as opposed to "Advanta."

[21] As discussed in Section II.C.1.a., *supra*, even Plaintiff's own "expert" equates "the creditor" with "the source of the information" in a consumer report, which further demonstrates that Experian's interpretation was not objectively unreasonable. *See* Ex. U to Pl.'s Opp. at 12.

provision." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1334 (9th Cir. 1995). Furthermore, "authoritative guidance" regarding § 1681g(a)(2) "has yet to come from the FTC" or the CFPB. *See Safeco*, 551 U.S. at 70. In short, there is *no* authority, let alone *clearly established* authority, on the meaning of "source" as used in § 1681g(a)(2).

Given that (1) the definition of "source of information" is ambiguous, at best; (2) Experian's interpretation of this phrase has a foundation in the text of the FCRA;[22] and (3) no authority exists to suggest Experian's reading is contrary to the intended meaning of § 1681g(a)(2), Experian did not act recklessly and cannot be held liable for a willful violation of the FCRA. *See Fuges*, No. 11-4504, slip op. at 27.

## III.    CONCLUSION

Experian's reporting of "Advanta" as the source of information regarding Advanta Bank Corp. originated accounts plainly was not "objectively unreasonable" under *Safeco*, as there was *no* authority—let alone *clearly established* authority—that this approach was unlawful under the FCRA. Indeed, Experian's identification of "Advanta" as the source was far more reasonable an interpretation of § 1681g(a)(2)—and more consistent with the purposes of the FCRA—than Plaintiff's contention that Experian should have identified CardWorks, which would have been highly likely to confuse consumers. Moreover, consumers suffer no identifiable harm when Experian provides, as it did here, the information necessary to lodge disputes or correct inaccuracies in their consumer credit disclosures. Accordingly, Experian is entitled to judgment as a matter of law on the issue of willfulness as it relates to Plaintiff's Class Claims.

---

[22] Listing "Advanta" as the source of information for Advanta Bank Corp. originated accounts comports with  the requirement of § 1681g(a) to make clear and accurate disclosures. *See* § II.C.1.b., *supra*.

Dated:  December 28, 2012

Respectfully submitted,

*/s/ Joseph W. Clark*
Joseph W. Clark (VSB No. 42664)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001
Tel: 202.879.3697
Fax: 202.626.1700
jwclark@jonesday.com

*Counsel for Defendant Experian Information Solutions, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of December, 2012, I electronically filed a copy of

the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of

such filing (NEF) to the following:

Leonard Anthony Bennett
Consumer Litigation Associates, PC
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: 757.930.3660
Fax: 757.930.3662
lenbennett@clalegal.com
*Counsel for Plaintiff*

Kristi Cahoon Kelly
Surovell Isaacs Petersen & Levy PLC
4010 University Dr., Suite 200
Fairfax, VA 22030
Tel: 703.251.5400
Fax: 703.591.9285
kkelly@siplfirm.com
*Counsel for Plaintiff*

Susan Mary Rotkis
Consumer Litigation Associates, PC
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: 757.930.3660
Fax: 757.930.3662
srotkis@clalegal.com
*Counsel for Plaintiff*

Dated:  December 28, 2012

*/s/ Joseph W. Clark*
Joseph W. Clark (VSB No. 42664)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001
Tel: 202.879.3697
Fax: 202.626.1700
jwclark@jonesday.com

*Counsel for Defendant Experian Information
Solutions, Inc.*