IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICHAEL T. DREHER,

          Plaintiff,

v.                                        Case No. 3:11-cv-00624-JAG

EXPERIAN INFORMATION SOLUTIONS, INC.,
*et al*,

          Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on the plaintiff's Motion to Certify Class. (Dk. No. 140.) The Court GRANTS the motion.

This case arises from a credit report provided to the plaintiff, Michael T. Dreher, by the defendant, Experian Information Solutions, Inc. Without Dreher's permission, a scoundrel had opened a charge account in Dreher's name at Advanta Bank. The account went into default, and the default showed up on Dreher's credit report. Dreher asked for, and received, a credit report from Experian. The report showed that Experian had received notice of the delinquency from Advanta Bank. Advanta, however, had gone out of business, and a company named Cardworks managed the old Advanta accounts. Cardworks, not Advanta, provided Experian with the information about Dreher's supposed delinquency.

Under the Fair Credit Reporting Act (FCRA), Dreher has sued Experian for not telling him that Cardworks was the actual source of the information about the delinquent account. Apparently, many consumers with old Advanta accounts requested credit reports from Experian, and all of the reports listed Advanta, not Cardworks, as the source of information about the old

Advanta accounts. Dreher has brought a class action on behalf of consumers who received inaccurate information from Experian about the Advanta/Cardworks accounts.

The issue before the Court is whether the Court should certify the following class:

> All natural persons who: (1) requested a copy of their consumer disclosure from Experian on or after August 1, 2010; (2) received a document in response that identified "Advanta Bank" or "Advanta Credit Cards" as the only source of the information for the tradeline; (3) and whose "date of status" or "last reported" field reflected a date of August 2010 or later.

Before the Court can certify the case as a class action, the plaintiff must demonstrate that the case satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. The Court finds that Dreher has met those requirements.

## I. Fed. R. Civ. P. 23(a) Requirements

The Court finds, first, that Dreher's proposed class meets each of the requirements of Fed. R. Civ. P. 23(a).

First, the class satisfies the numerosity requirement; Dreher says the class consists of more than 88,000 class members, a figure drawn from Experian's own records to which Experian has not objected.

Second, the class meets the commonality requirement. The common factual and legal issues include: (1) whether, as of August 1, 2010, Experian knew that Cardworks had been appointed, by the FDIC, as the new servicer on the (now-defunct) Advanta accounts; (2) whether Experian's failure to list "Cardworks" as a source of information violated § 1681(g)(a)(2); and finally, (3) whether Experian's violation of that statutory section was willful.

Third, Dreher's proposed class meets the typicality requirement.

> [T]he appropriate analysis of typicality must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members. To conduct that analysis, we begin with a review of the elements of plaintiffs' *prima facie* case and the facts on which the plaintiff would necessarily rely to prove it. We then determine the extent to which those facts would also prove the claims of the absent class members.

2

*Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006). To succeed on his § 1681(g)(a)(2) claim, Dreher must show that (1) the information Experian provided was inaccurate, (2) in violation of § 1681(g)(a)(2) of the FCRA, and (3) Experian's violation was willful. Experian identically handled all requests for credit reports dealing with old Advanta accounts. The evidence Dreher will rely on to establish each element of the case will similarly establish the claims of each absent class member. Whether Dreher suffered any actual injury—in distinction to absent class members—does not detract from the typicality of his *prima facie* case that Experian willfully violated § 1681(g)(a)(2) of the FCRA.

Fourth, the class meets Rule 23(a)'s adequacy requirement. Dreher's counsel reports him to be a motivated, diligent class representative, and Dreher's counsel is well-experienced in the arena of FCRA class action litigation.[1]

## II. Rule 23(b)(3) Requirements

Dreher's class action advances a Rule 23(b)(3) claim, which requires the Court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Experian disputes Dreher's ability to satisfy either prong. First, Experian argues that the question of individual statutory damages will predominate over any common questions regarding liability, because the Court will have to examine each class member's facts to see how badly the

---

[1] Experian contends that Dreher's impaired credibility creates a conflict of interest that should disqualify him as a class representative. For a conflict of interest to prevent class certification, it must "be fundamental" and "go to the heart of the litigation." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430–31 (4th Cir. 2003) (citations omitted). The dispositive issue at stake in this case concerns *Experian*'s actions and policies. The jury's determinations as to whether Experian violated the FCRA, and whether that violation was willful, will not rise or fall on Dreher's credibility.

3

class member was injured. Second, Experian alleges, evidence of Dreher's personal suffering will inappropriately increase the award of allowable statutory damages.

Neither concern prevents certification of the class. First, the question of Experian's liability represents the central, dominant issue before the Court, and while some questions may exist as to *how* to best apportion statutory damages, those questions do not preclude the common issue of liability from predominating. Second, because (1) the existence and extent of Dreher's actual injuries are not relevant factors in the jury's determination as to the appropriate statutory damages figure, and (2) the up-or-down nature of the specific violation at issue lends itself to a simple, per-violation statutory damages calculation, Experian's fear of emotionally-inflated damages is unfounded.

### A. *Individual Statutory Damages Issues Do Not Predominate*

The Fourth Circuit has rendered a series of unpublished decisions addressing the issue predominance in the context of statutory damages.

Experian relies on a 2012 unpublished opinion, which said that "statutory damages . . . typically require an individualized inquiry." *Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 265 (4th Cir. 2012). *Soutter*, however, cited as authority for this premise a cautionary statement in Judge Wilkinson's concurrence in the unpublished decision, *Stillmock v. Weis Markets, Inc*, 385 F. Appx. 267, 273 (4th Cir. 2010).[2] In *Stillmock*, the majority opinion held that "where, as here, *the qualitatively overarching issue by far is the liability issue of the defendant's willfulness*, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner, the individual statutory

---

[2] *Soutter* did *not* hold, significantly, that the question of individual statutory damages alone defeated class certification, instead describing the issue as an "exacerbat[ing]" factor in the Court's conclusion that the plaintiff could not demonstrate Rule 23(a)(3) typicality. *Id.* at 264-66.

damages issues are insufficient to defeat class certification under Rule 23(b)(3)." *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (emphasis added). In other words, even though *Stillmock* raised questions involving the award of statutory damages, the *predominant* issue remained the question of liability.

Three months after *Soutter*, the Fourth Circuit again addressed the issue of predominance, in *Ealy v. Pinkerton Government Services, Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013). In *Ealy*, the Court reaffirmed *Stillmock*'s majority holding that the *existence* of individual statutory damage issues does not preclude class certification.[3] *Id.* at 305. Instead, a Court's determination of whether "common issues of liability . . . still predominate" requires that the Court undertake a qualitative, not quantitative, assessment of the various issues before the Court. *Id.* (citing *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 429 (4th Cir. 2003)).[4]

The Fourth Circuit's direction that district courts conduct a "balancing test of common and individual issues" to determine which category predominates does not imply that the district court may neglect consideration of either. Accordingly, *Soutter*'s admonition that a district court *consider* the issue of individual damages restates, rather than revises, its previous (*Gunnell, Stillmock*) and subsequent (*Ealy*) discussions of Rule 23(b)(3)'s predominance requirements.

The "overarching issue" in this case concerns Experian's willfulness: whether Experian acted in objectively reasonable fashion in failing to identify Cardworks as a source of information.[5] The individual questions of statutory damages (the very existence of which hinge, of course, on the jury's resolution of Experian's willfulness) are secondary considerations.

---

[3] Judge Wilkinson, whose special concurrence in *Stillmock* Experian relies heavily upon, was a member of the three-judge, unanimous *Ealy* panel.

[4] "Quantitatively, almost by definition there will always be more individual damages issues than common liability issues . . . Qualitatively, however, . . . liability issues may far exceed in complexity the more mundane individual damages issues." *Gunnells*, 348 F.3d at 429.

[5] There is no real debate that the answer to this question is common to all proposed plaintiffs.

5

Because the common issue of liability predominates over the question of how to best apportion statutory damages, Dreher's proposed class satisfies Rule 23(b)(3)'s predominance requirement.

### B. *Calculation of Statutory Damages*

#### 1. Actual Injury Irrelevant

Attempting to cloud the waters, Experian focuses on the actual damages of Dreher compared with other class members. The FCRA draws a clear distinction, in the event of a defendant's willful violation of the statute, between a plaintiff's alternative remedies: damages equal to "any *actual* damages sustained by the consumer as a result of the failure *or* damages of not less than $100 and not more than $1,000." 15 U.S.C.A. § 1681n(a)(1)(A) (emphasis added). Experian tries to confuse this issue by conflating actual and statutory damages.

A statutory damages analysis—the latter of the plaintiff's remedies—does not focus on the plaintiffs' injuries (or very possibly, lack thereof). If a plaintiff can demonstrate an *actual* injury attributable to the violation, he is free to seek recovery under the "actual damages" prong of the statute, unrestrained by any cap on recovery. If, however, the plaintiff cannot or chooses not to plead actual damages, the FCRA offers a second, tightly constrained remedy. Given the nature of the violation in this case, it is unlikely that anyone suffered actual injury.[6]

Experian, however, says that a court must compute the second alternative—statutory damages—based on evidence of the actual harm to the consumer. This argument ignores a basic rule of statutory construction: the "whole-text canon." This rule "calls on a judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its

---

[6] It is difficult to see how anyone suffered any injury from Experian's error. Apparently, when a consumer called Advanta with a question about her bill, she actually spoke to someone from Cardworks without even knowing the person on the phone was not with Advanta. In practical outcome, it is no different from any consumer calling her bank. In fact, until recently, Experian was adamant that the proposed class members had not suffered damages (or were even aware of Experian's violation), greatly diminishing the likelihood those individuals would seek to hold Experian liable for its violations.

6

many parts." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012).

Here, Congress has drafted a statute that refers to two types of damages. The first is actual damages. Actual damages—the result of the alleged injury—typically consist of monetary losses, physical injuries, or mental suffering. *See Birdsall v. Coolidge*, 93 U.S. 64 (1876).

The second is commonly called statutory damages: "damages of not less than $100 and not more than $1,000." The statute provides no guidance as to how a court should determine where a statutory damage award should fall in the range between $100 and $1,000, so Experian argues that this calculation must involve consideration of the actual harm to the plaintiff.

Experian's interpretation of the statute goes nowhere. The statutory language refers to two separate kinds of damages. One is referred to as "actual" damages. If Congress had meant for the second kind of damages to be actual damages, it would have said a plaintiff can recover "actual damages, or in the alternative, actual damages of not less than $100 and not greater than $1,000." This locution would, of course, be absurd. Or, Congress could have defined statutory damages as "damages of not less than $100 and not greater than $1,000, depending on the amount of actual injury to the consumer." Or, if both damages are based on actual harm, Congress could have left the word "actual" out of the enactment altogether. To argue, as Experian does, that the second type of damages is simply another species of "actual" damages is either to render the word "actual" in the statute superfluous or to insert a redundancy into the law.

A more sensible reading of the statute will take all the statutory words into account. Since the second type of damages is not defined as "actual," actual damages are not covered by the second category. "[A] matter not covered is to be treated as not covered." Scalia & Garner, *supra*, at 93.

Thus, in this second instance, the consumer's *actual* injuries must be *irrelevant* to the amount of statutory damages.[7] Accordingly, the existence and extent of *Dreher*'s injuries (such as the frustration he endured) are not proper considerations for a jury tasked with deciding an appropriate monetary figure for statutory damages.

The calculation of statutory damages should focus, instead, on the particular *violation* in question, not the varying actual effects the violation may have had on individual plaintiffs:

> The Court concludes the factor most germane to the amount of a statutory-damages award to class members is the jury's perception of the importance, and hence the value, of the rights and protections conferred on the consuming public by FCRA's adverse-action notice requirements. *Any individualized harm to each class member is irrelevant because none of the class members is seeking actual damages.* Thus, as long as Plaintiffs establish Defendants acted in reckless disregard of their obligations under FCRA, the Court concludes the degree of their misconduct above that threshold is irrelevant.

*Ashby*, 592 F. Supp. 2d at 1318 (emphasis added).

Because affixing a monetary "value" to the statutory right in question may present a somewhat abstract proposition to jurors, the Court agrees with Experian that the jurors may be tempted to conflate Dreher's suffering with the value of that statutory protection. The Court, however, will not allow this to occur. The plaintiff cannot have it both ways. If the plaintiff seeks to recover statutory damages, he may not introduce evidence of the horrible angst Dreher has suffered by reading the word "Advanta" and later finding out that it should have said "Cardworks."

---

[7] *See Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008) ("The Court rejects the proposition that actual harm is a relevant factor when determining the amount of statutory damages under FCRA because FCRA expressly imposes a heavier burden on class members seeking statutory damages (*i.e.*, proof of the defendant's willfulness) than it does on those seeking only actual damages."); *In re Farmers Ins. Co., Inc., FCRA Litig.*, 741 F. Supp. 2d 1211, 1224 (W.D. Okla. 2010).

In essence, Experian asks the Court to rewrite the statute. This the Court cannot do. "Granted the right and duty of the court to interpret the document, it has not been given the duty or the opportunity to rewrite the words." Edward H. Levi, *The Nature of Judicial Reasoning, in* Law and Philosophy: A Symposium 263, 274 (Sidney Hook ed., 1964).

### 2. Mathematical Calculation Appropriate

The jury's calculation of statutory damages must focus on the nature of the particular statutory violation in question. *Ashby, supra.* That violation—in this case, Experian's alleged failure to disclose Cardworks as a source of information about consumer credit—is the same for each plaintiff, in each instance. The only variation among the individual plaintiffs, then, concerns the number of discrete statutory violations as to each.

This "individual question" of statutory damages, then, is reduced to mouse-clicking simplicity by virtue of Experian's own advanced, data-sorting software. From Experian's records, anyone can find the number of consumer reports each class member received after August 1, 2010, in which Advanta was listed as a source of information. Individualizing the statutory damage award due each plaintiff, then, will consist of multiplying the number of offending reports each plaintiff received by the statutory damage figure selected by the jury.

The Fourth Circuit has approved of just such an abacus-like approach:

> Pragmatically, the only substantive difference between putative class members for purposes of affixing the statutory damages figure within the statutory damages range of $100 to $1,000 or in awarding punitive damages *is the number of receipts received by a single class member during the approximately eighteen months at issue.* And indeed, this difference does not complicate matters very much at all *given that the class can be broken down into subcategories based upon the number of violating receipts received per putative class member.*

*Stillmock*, 385 F. App'x 267, 273 (4th Cir. 2010). This Court will apply the Fourth Circuit's logic and approach in this factually similar FCRA case.

### *C. Class Action Superior Method for Adjudication*

Finally, Dreher's proposed class meets the second requirement of Fed. R. Civ. P. 23(b)(3). A class action is the superior method for adjudicating this case: (1) the class members do not have a strong interest in individually prosecuting the case, (2) while the Court is aware of similar litigation in the District of Maryland, "the extent and nature" of that related litigation does not disqualify this class,[8] (3) the Court finds this an appropriate forum for the action, and (4) the Court does not foresee any difficulty managing this case as a class action.

Accordingly, the Court GRANTS the motion to certify the following class:

All natural persons who: (1) requested a copy of their consumer disclosure from Experian on or after August 1, 2010; (2) received a document in response that identified "Advanta Bank" or "Advanta Credit Cards" as the only source of the information for the tradeline; (3) and whose "date of status" or "last reported" field reflected a date of August 2010 or later.

It is so ORDERED.

Let the Clerk send a copy to all counsel of record.

Date: June 19, 2014
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[8] That case, *Mostofi v. Experian Information Solutions, Inc.*, No. 8:13cv2828 (D. Md. Sept. 25, 2013) involves an *individual* action, brought by a pro se plaintiff, currently facing a motion to dismiss.

10