IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

MICHAEL T. DREHER, *on behalf of himself
and all others similarly situated,*

    Plaintiffs,

v.                                                             Case No. 3:11-cv-624

EXPERIAN INFORMATION SOLUTIONS, INC.,

    Defendant.

## MEMORANDUM OPINION

This class action arises principally from the failure of Experian Information Solutions, Inc. ("Experian"), a consumer reporting agency, to disclose the true source of information on certain credit reports. According to Michael T. Dreher and the class plaintiffs (collectively "Dreher"), Experian's decision to hide the true source of information for their credit reports was a willful violation of the Fair Credit Reporting Act ("FCRA" or "the Act"), 15 U.S.C. § 1681 *et seq.* Dreher also brings individual claims arising from his personal interactions with Experian when he discovered a discrepancy on his credit report.

The matter now comes before the Court on the parties' motions for partial summary judgment. Experian moves the Court to dismiss the class claim because Dreher and the class members lack standing. Both Experian and Dreher seek summary judgment on the class claim on the issue of Experian's liability for a willful violation of the Act. Finally, Dreher seeks summary judgment on the accuracy element of his individual claims.

The Act creates a statutory right to receive the "sources of information" for one's credit report. When a consumer reporting agency fails to disclose the sources, it violates that right, thus creating a sufficient injury-in-fact for constitutional standing. Additionally, the disclosure requirements of the Act create a right to access information, the violation of which causes an informational injury that can be redressed in federal court. Because Dreher possesses statutory rights that Experian infringed, he sufficiently states an injury-in-fact that can be redressed by this Court. Accordingly, Dreher and the class plaintiffs have standing to pursue their claims.

In determining whether a defendant willfully violated the Act, a court must determine whether the company's interpretation of the Act is objectively unreasonable. If, in light of statutory, judicial, and agency guidance, the defendant behaved reasonably, it cannot have been reckless. But if context demonstrates that a defendant's violations of the Act were objectively unreasonable, then the defendant was reckless, and thus willful.

Section 1681g(a)(2) requires Experian to "clearly and accurately disclose to the consumer . . . [t]he sources of information" found in the consumer's credit report. Experian listed either "Advanta Bank" or "Advanta Credit Cards" as the only source of information on a disputed line in Dreher's credit report, but Experian's sole supplier of that information was an entity known as CardWorks. The Act clearly requires Experian to disclose *at least* CardWorks. Experian cannot marshal any facts in the record that overcome this clear and most basic reading of the statute. For that reason, Experian's decision to intentionally omit CardWorks so obviously violated the language of the Act that it cannot be seen as objectively reasonable. Accordingly, the Court finds that Experian willfully violated 15 U.S.C. § 1681g(a)(2). The Court, therefore, will grant Dreher's motion for summary judgment (and deny Experian's motion) on the issue of willfulness.

Finally, despite Dreher's advice that the Court should ignore the inconsistent testimony of his cousin, the person who allegedly took out the Advanta account in Dreher's name, a genuine dispute of material fact remains regarding the accuracy of the Advanta line on Dreher's credit report. Accordingly, the Court denies Dreher's motion for partial summary judgment as it relates to the accuracy element of his individual claims.

## I. BACKGROUND[1]

Michael Dreher underwent a background check to receive a security clearance in 2010. In November of that year, the federal government advised him that its investigator had discovered a delinquent credit card account listed under the name "Advanta Credit Cards." The listing dumbfounded Dreher.[2] In an effort to save his security clearance, Dreher requested his credit report from Experian. Experian provided a series of credit reports from November 2010 to November 2011, each of which listed a delinquent account under "Advanta Credit Cards."

As it turned out, Advanta Bank Corp. ("Advanta Bank"), a Utah-based company, was no more. In early 2010, the Utah Department of Financial Institutions shut Advanta down, and the Federal Deposit Insurance Corporation ("FDIC") stepped in to oversee the bank as a receiver. In July 2010, the FDIC approved the appointment of CardWorks, Inc., and CardWorks Servicing, LLC ("CardWorks"), to service the Advanta accounts. In that role, CardWorks served as a

---

[1] Summary judgment is appropriate when the movant establishes that there is no genuine dispute of any material fact and is thereby entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view the facts in the light most favorable to the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), resolve all genuine factual disputes and inferences in favor of the non-moving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam), and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant," *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991).

[2] Discovery in this case uncovered that Dreher's cousin Todd Apfel took out the business credit card in Dreher's name in order to cover expenses for his failing bowling alley in Indiana. The parties dispute whether Dreher gave his blessing to Apfel. *See infra* II.C.

customer-service intermediary for the bank and handled all communications with customers regarding their accounts. Since October 2011, CardWorks has serviced the vast majority of the Advanta accounts.[3]

The FCRA requires that consumer reporting agencies disclose the "sources of information" associated with the content of a credit report. Despite the fact that CardWorks directly supplied the Advanta account information to Experian, CardWorks specifically requested to go unlisted on the credit reports and asked Experian to list only "Advanta Credit Cards." Experian happily obliged.

Dreher brings one class claim.[4] He alleges that Experian willfully violated § 1681g(a)(2) as to him and the class members by failing to clearly and accurately disclose the source of the Advanta trade lines in their respective credit reports. Experian previously sought summary judgment and defended its conduct as objectively reasonable, but the Court denied that motion. *Dreher v. Experian Info. Solutions, Inc. ("Dreher I")*, 2013 WL 2389878 (E.D. Va. May 30, 2013). Earlier this year, the Court certified the following class:

> All natural persons who: (1) requested a copy of their consumer disclosure from Experian on or after August 1, 2010; (2) received a document in response that identified "Advanta Bank" or "Advanta Credit Cards" as the only source of information for the trade line; and (3) whose "date of status" or "last reported" field reflected a date of August 2010 or later.

*Dreher v. Experian Info. Solutions, Inc. ("Dreher II")*, 2014 WL 2800766, at *6 (E.D. Va. June 19, 2014). Both Dreher and Experian now ask the Court to enter summary judgment on the issue of Experian's liability for willfully violating the Act.

---

[3] There were other institutions involved, too. Deutsche Bank was the indenture trustee of Advanta Bank. After Dreher initiated his communications with Experian, Vion Holdings II, LLC, later acquired the rights to the revenue in Advanta's accounts. The ownership roles and fiduciary duties of these institutions play no role in the Court's decision.

[4] Dreher's original complaint contained three class claims, but he abandoned Counts I and II at the class certification stage. (*See* Dk. No. 141 at 8 n.4; Dk. No. 156 at 1-2.)

Dreher also brings four individual claims. Count Four alleges Experian violated § 1681i(a)(1) by failing to conduct a reasonable investigation to uncover whether the Advanta trade line was inaccurate and either record the current status of that information or delete it from Dreher's file. Count Five alleges Experian violated § 1681(a)(2) by failing to give CardWorks all the relevant information regarding Dreher's dispute over the Advanta trade line. Count Six alleges Experian violated § 1681(a)(4) by failing to review and consider all the relevant information Dreher submitted in relation to his dispute over the Advanta trade line. Count Seven alleges that Experian violated § 1681(a)(5)(A) by failing to promptly delete the disputed Advanta trade line from Dreher's credit report after reinvestigating the matter. Each of these claims hinges upon the accuracy of the information reported by Experian.

## II. DISCUSSION

### A. Standing

The concept of standing "depends not upon the merits, but on whether the plaintiff is the proper party to bring the suit." *McBurney v. Cuccinelli*, 616 F.3d 393, 401 (4th Cir. 2010) (quoting *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 460 (4th Cir. 2005)). Standing must exist in order "[t]o invoke the jurisdiction of an Article III court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing, also called constitutional standing, a plaintiff must generally satisfy a three-part test: (1) the plaintiff "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). Experian takes issue

with the first element of constitutional standing—the injury-in-fact requirement—and argues that the erroneous credit reports caused no harm and therefore no injury occurred.

Experian argues Dreher and the class members cannot bring their class claims because they lack standing. To justify its position, Experian pounces on a statement by the Court in its opinion certifying the class in this action: "[i]t is difficult to see how anyone suffered any injury from Experian's error." *Dreher II*, 2014 WL 2800766, at *3 n.6. But the Court made that aside in the context of discussing the Act's alternative remedies of actual versus statutory damages, not in the context of constitutional standing. Dreher and the class members have standing to pursue their claims because Congress created a legal right under the Act, the violation of which constitutes an injury sufficient for constitutional standing purposes.

"Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth v. Seldin*, 422 U.S. 490, 514 (1975). Here, Congress created rights to consumers and the cause of action to enforce them under the Act. *See* 15 U.S.C. § 1681n(a) ("Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . . ."); *see also Robins v. Spokeo*, 742 F.3d 409, 412-13 (9th Cir. 2014) (finding standing under the FCRA without showing actual harm); *Hammer v. Sam's East, Inc.*, 754 F.3d 492, 498-99 (8th Cir. 2014) (same).

This conclusion also makes sense when considered alongside the recognition of informational injuries. *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 22 (1998) (holding that a plaintiff may satisfy the injury-in-fact requirement by alleging the violation of a statute that provides a right to receive particular information); *Salt Inst. v. Leavitt*, 440 F.3d 156, 159 (4th Cir. 2006) (recognizing that standing exists when a plaintiff alleges the violation of a legal right

to certain information). Here, under the Act, consumers have the right to receive certain information from consumer reporting agencies, including the sources of information on their credit reports. The alleged failure of Experian to provide the sources of information violated that right. That is enough to satisfy the injury-in-fact requirement of constitutional standing.[5]

Accordingly, the Court denies Experian's motion as it relates to standing.

### B. Willfulness Liability under *Safeco*

The parties focus their arguments on Experian's liability for violating § 1681g(a)(2). The Act provides a cause of action to consumers when a company commits either willful or negligent violations. *See* 15 U.S.C. §§ 1681n (willful violations) & 1681o (negligent violations). Dreher raises his class claims against Experian for only willful violations. In *Safeco Insurance Company v. Burr*, 551 U.S. 69 (2007), the Supreme Court held that willful violations of the Act included not only knowing and intentional violations but also reckless violations.[6] *Id.* at 59-60. This conclusion grew from the fact that Congress did not define "willful" in the Act, so the Court applied "the general rule that a common law term in a statute comes with a common law meaning, absent anything pointing another way." *Id.* at 58 (citing *Beck v. Prupis*, 529 U.S. 494,

---

[5] Experian's citation to *David v. Alphin*, 704 F.3d 327 (4th Cir. 2013), misses the mark. Although *Davis* warns against "conflat[ing] statutory standing with constitutional standing," the Fourth Circuit gave that warning when confronted with an ERISA action where, by statute, the plaintiffs could not make a personal recovery. *Id.* at 332. Here, not only does the FCRA provide a personal right and remedy for willful violations, but it also grants the consumer the right to receive certain information. Accordingly, both *Warth* and *Akins* support the conclusion that Dreher has constitutional standing. By contrast, whereas the *David* appellants lacked a redressable personal injury, Dreher sufficiently alleges an individual and personal injury that gives rise to his class claim. Each member of the class suffered that same injury.

[6] In his opening brief, Dreher argues new evidence shows Experian's omission of CardWorks "was a knowing violation," and so he asks the Court to reconsider the prior conclusion that the record lacked any evidence that Experian knew the omission violated the Act. Pl.'s Brief 9 n.3. To the extent Dreher seeks summary judgment that Experian knowingly violated the Act, the Court denies the motion. Taken into consideration with the rest of the factual record, the evidence cited by Dreher does not show that Experian *knew* its conduct would violate the Act.

7

500-01 (2000)). Under the common law understanding of "willfulness," the term included "not only knowing violations of a standard, but reckless ones as well." *Id.* (citations omitted). The Court subsequently characterized recklessness by way of the common law: "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Accordingly, a company recklessly violates the Act when its interpretation is "objectively unreasonable." *Id.* at 70.[7]

The Supreme Court also held, however, that a company does not act recklessly when its conduct is "objectively reasonable" in light of the available statutory, judicial, and authoritative agency guidance. *Id.* at 69-70. As described by other courts, this objective-reasonableness inquiry creates a "safe harbor" for companies that may have violated the Act but did so under a "reasonable interpretation of FCRA's coverage." *Fuges v. Sw. Fin. Svcs., Ltd.*, 707 F.3d 241, 248 (3d Cir. 2012). Experian argues that it is entitled to *Safeco*'s "safe harbor" because it reasonably chose to list Advanta but not CardWorks on Dreher's credit report.

In Experian's first motion for summary judgment, this Court utilized the Third Circuit's helpful elaboration of *Safeco* from *Fuges*. See *Dreher I*, 2013 WL 2389878, at *4. The *Fuges* decision draws out the three bases for the Supreme Court's determination of objective reasonableness. *See also Hammer v. Sam's East, Inc.*, 754, 492, 502 (8th Cir. 2014) (using these three factors to determine whether *Safeco*'s safe harbor applied). First, a court considers whether

---

[7] Experian argues that *Safeco* requires a two-step analysis, and only the first step asks whether Experian's conduct was objectively unreasonable. Def.'s Opp'n Brief 18. *Safeco* does not stand for that proposition. The "objective unreasonableness" standard in *Safeco* subsumes within it the determination that the defendant's conduct involved "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). The Court's conclusion today is that Experian's conduct met that high threshold by blatantly ignoring the Act's clear and simple command to disclose the "sources of information" for the Advanta trade lines, the most obvious of which was the company that *actually gave Experian the information*. "It is this high risk of harm, objectively assessed, that is the essence of recklessness at common law." *Id.* at 69.

8

the Act provides "clear guidance" as to the meaning of particular statutory language, *Fuges*, 707 F.3d at 251, or instead contains "less-than-pellucid statutory text." *Safeco*, 551 U.S. at 70. Second, a court considers whether the defendant's proposed interpretation "had a 'foundation in the statutory text.'" *Fuges*, 707 F.3d at 252 (quoting *Safeco*, 551 U.S. at 69-70). Third, a court asks whether the defendant was "interpreting the statute in the absence of any contrary authority on the meaning" of the statutory language in question "because 'no court of appeals had spoken on the issue, and no authoritative guidance has yet come from the FTC.'" *Id.* (quoting *Safeco*, 551 U.S. at 70). Judicial or agency silence can be "persuasive as to the reasonableness of the adoption of that interpretation, [but] it is not dispositive." *Id.* at 253 n.21. Taken together, these three factors illuminate whether the company conducted itself in an objectively reasonable manner, thus finding its way into *Safeco*'s safe harbor.

### 1. The Act's Language

The Court previously explained that the first factor weighed heavily against Experian. *See Dreher I*, 2013 WL 2389878, at *4. The language of the Act has not changed since that time, and neither does the Court's conclusion. Although Experian can imagine a variety of meanings for the word "sources," the Act's language gives "clear guidance" on the meaning of "sources of information." The Act states, in relevant part:

> Every consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer:
>
> > (1) All *information* in the consumer's file at the time of the request . . . and
> >
> > (2) *The sources of the information*; except that the sources of information acquired solely for use in preparing an investigative consumer report and actually used for no other purpose need not be disclosed: Provided, That in the event an action is brought under this subchapter, such sources shall be available to the plaintiff

> under appropriate discovery procedures in the court in which the
> action is brought.

15 U.S.C. § 1681g(a) (emphasis added). The "information" contemplated by the Act is the actual content of the credit items listed on the consumer's credit report. By law, the consumer reporting agency must disclose the "sources" of that actual content. Although gifted legal minds can create myriad interpretations for how many sources or what kinds of sources should be included in the disclosure, the term "sources" clearly includes, at the very least, the entity that gives that information directly to the consumer reporting agency. In Experian's case, that entity was CardWorks, not Advanta.

Because the statutory language and common sense give "clear guidance" about a consumer reporting agency's obligations under § 1681g(a)(2), Experian faces a steep burden to prove that its decision to list Advanta and omit CardWorks was objectively reasonable. Experian forwards three justifications. First, Experian argues that CardWorks actually operated under the Advanta name, so its disclosure met the requirements of the Act. Second, Experian claims the Federal Deposit Insurance Corporation directed it to list Advanta and not CardWorks on consumers' credit reports. Third, Experian posits that industry-standard practices supported its decision to exclude CardWorks in favor of Advanta. As discussed below, none of these explanations for Experian's conduct makes it objectively reasonable, so *Safeco*'s safe harbor does not apply.

### 2. Foundation in the Statutory Text

The second factor shows that Experian's CardWorks-as-Advanta explanation has no "foundation in the statutory text." Experian argues that it was objectively reasonable to list only Advanta because "CardWorks" was merely the "formal corporate name" for Advanta. Def.'s Brief 24. Experian presents no documentation of CardWorks' registered trade names or any

form of legal recognition of CardWorks as Advanta. Instead, Experian points out that CardWorks received Advanta's mail, answered its phone lines, corresponded with its account holders on Advanta letterhead, and operated its website. *Id.*

Section 1681g(a) requires the disclosure of the "sources of information" on a credit report, and "source" refers to, at the very least, Experian's immediate supplier of the information. Experian's interpretation—that it is obligated to disclose only the name a company uses when it interfaces with the consumer even though that name is not the same one it uses when giving information to Experian—finds no foundation in the statutory text.[8] The distinction Experian attempts to draw out does not derive from the text of the Act. Experian's one-as-the-other interpretation of the Act is not objectively reasonable.

### 3. Authoritative Guidance

The third factor considers a company's conduct in light of the guidance from the courts of appeals or the Federal Trade Commission on the meaning of the specific statutory language in dispute. *Fuges*, 707 F.3d at 252. Conduct contrary to clear guidance of the courts or FTC would clearly be objectively unreasonable. Here, as in *Safeco*, no appeals court or regulatory agency has given a definitive definition of the scope of "sources of information." *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1334 (9th Cir. 1995) (recognizing the "paucity of case law interpreting" the phrase "sources of information."). But the absence of case law or regulatory authority does not give a credit reporting agency violating that provision "a pass because the issue has never been decided." *Fuges*, 707 F.3d at 253 n.21 (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 722 (3d Cir. 2010)). Moreover, the fact that the FTC and appeals courts have not tackled "sources of information" does not necessarily inject ambiguity as to its meaning

---

[8] Nor does Experian's argument have a foundation in reality. The evidence shows that Experian corresponded with CardWorks acting as CardWorks, not as Advanta. *See* Def.'s Brief, Ex. C.

11

and give Experian greater latitude to meet its obligations under § 1681g(a)(2). The dearth of interpretation likely means just the opposite: the term's meaning is self-evident. The phrase "sources of information" has remained undefined in the Act since its enactment more than four decades ago. *See* Pub. L. 91-508, § 609, 84 Stat. 1114, 1131 (1970).

Despite the clear guidance of the language, Experian now argues that it acted under the guidance of a federal agency: the Federal Deposit Insurance Corporation. Def.'s Brief 17. Although the Supreme Court mentioned only FTC guidance as bearing on the reasonableness inquiry, Experian argues that looking to guidance from other agencies might serve as a basis for finding its conduct reasonable. Def.'s Reply Brief 11. That may be so, but how and from whom the advice arrived affects Experian's reasonableness in relying upon it.

Experian supplies three documents in support of its FDIC justification: an e-mail from the FDIC to CardWorks, *id.*, Ex. B; a letter from CardWorks to Experian, *id.*, Ex. C; and a declaration from Tom Wineland, the FDIC official who wrote the e-mail and signed the letter, *id.*, Ex. A. Experian claims this evidence demonstrates that the FDIC directed Experian to list Advanta and omit CardWorks from Advanta account holders' credit reports, thus making the decision to do so objectively reasonable.

First, Experian's reliance on these sources fails to be reasonable because it is not clear that Experian received anything authoritative from the FDIC regarding Experian's disclosure obligations under the Act. The e-mail cited by Experian was *not* sent to Experian. Instead, Wineland sent the e-mail to several employees of the major players in Advanta's receivership: the FDIC, Deutsche Bank, Deloitte Consulting, and CardWorks. Although the e-mail says "CardWorks does not use its name when servicing credit card portfolios for others" and "CardWorks will use the name Advanta Credit Cards," Def.'s Brief, Ex. B, it is far from obvious

that an e-mail summarizing CardWorks' internal practice on how it identifies itself to consumers, not sent to Experian, has any bearing on how Experian should comply with the Act.

The letter gets a little closer, but only because CardWorks actually addressed it to Experian. Written by a CardWorks Vice President on CardWorks letterhead, it states "the desire to allow CWS [CardWorks] to contact and work with Experian as an issuer." Def.'s Brief, Ex. C. The letter explains that CardWorks "would like for this new code to report on the consumer trade line as Advanta Credit Cards." *Id.* The letter contains authorization signatures from CardWorks, Advanta, and Wineland, who signed above the caption "FDIC as Receiver for ABC." Again, Experian claims that this letter offers proof of the FDIC's direction for Experian to list Advanta and omit CardWorks from the trade lines. But the letter does not purport to do that. Instead, it provides formal documentation of Advanta's dissolution and CardWorks' role in taking over Advanta's old accounts. Far from providing official guidance from the FDIC regarding how Experian should meet its obligations under § 1681g(a), Wineland's signature vouched for CardWorks' assumption of Advanta's credit card servicing duties.[9]

Finally, Wineland's declaration simply provides context for the e-mail and letter. In explaining the letter, he states that he "believed it was appropriate for Experian to report 'Advanta Credit Cards' in the trade lines for the Advanta accounts serviced by CardWorks." Def.'s Brief, Ex. A ¶ 19. But the letter does not purport to give direction to Experian about how to comply with § 1681g(a). Wineland's signature "as Receiver for ABC" makes clear that his

---

[9] The penultimate paragraph of the letter states:
> Below you will find signatures from authorized representatives of the following entities, the FDIC as Receiver for Advanta Bank Corp, a former Advanta Bank Corp employee (currently assisting the FDIC with the operational transition) and CardWorks Servicing *indicating their desire to allow CWS to contact and work with Experian* as an issuer would so that we can effectively and efficiently service the ABC MasterCard Portfolio and their consumers.

Def.'s Brief, Ex. C (emphasis added).

concern was Advanta's best interest and the FDIC's opinion vis-à-vis Advanta. No jury could find that the e-mail or letter provide any objectively reasonable basis for Experian to violate the clear language of the statute.

Second, even if the FDIC had authorized Experian to omit CardWorks from the credit reports, reliance on that guidance would still be objectively unreasonable because the FDIC lacks supervisory authority over consumer reporting agencies. In *Safeco*, the Supreme Court indicated that the relevant agency to look to for authority in assessing willfulness is the FTC. *Safeco*, 551 U.S. at 70. The focus on the FTC made sense, because the FTC holds exclusive enforcement authority over credit reporting agencies under the Act. *See* 15 U.S.C. § 1681s(a)(1) (2006) (empowering the FTC with enforcement authority under the Act "with respect to consumer reporting agencies").[10] The Act gives the FDIC some authority, but only over banks and savings associations, not consumer reporting agencies. *See id.* § 1681s(b)(1)-(2) (2006).[11] In other words, Experian has never answered to the FDIC under the Act. Experian's reliance on the FDIC would be no more reasonable than an airline relying on the advice of NASA to ensure compliance with the Clean Air Act. As such, it was objectively unreasonable.

### 4. Industry-Standard Practices

Experian's final argument regarding industry-standard practices does not fit neatly into the three-factor analysis from *Fuges*, but this Court previously explained that "[i]ndustry-standard practices clearly bear on the reasonableness of Experian's decision to list only Advanta in Dreher's credit report." *Dreher I*, 2013 WL 2389878, at *7. According to one of Experian's

---

[10] After the passage of the Dodd-Frank Act, the FTC shares power over consumer reporting agencies with the Consumer Financial Protection Bureau. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 2088 (codified as amended at 15 U.S.C. § 1681s).

[11] Dodd-Frank shifted this provision but did not substantively change it. *See* 15 U.S.C. § 1681(b)(1)(A).

experts, consumer reporting agencies often list a creditor and omit the servicer as the source of information on a credit report, "because this designation is likely to be more useful to consumers." Def.'s Brief, Ex. E at 10. Because consumers would be familiar with Advanta but not CardWorks, the argument goes, Experian's decision to list Advanta and omit CardWorks as a source of information was objectively reasonable.

Where, as here, the Court has already concluded that "sources of information" clearly requires the disclosure of the immediate provider of the information, industry-standard practices that contravene that understanding cannot earn Experian safe harbor. The Court's previous discussion of the relevance of industry-standard practices came in the context of discussing Experian's decision *not* to follow the "Metro2" format, which allows the identification of multiple sources for a single trade line. *Dreher I*, 2013 WL 2389878, at *7. Experian's decision to do as CardWorks asked and keep the immediate source off the credit report was objectively unreasonable, in part, because Experian easily could have disclosed both Advanta and CardWorks. Experian now essentially argues that the industry-wide practice of listing only a single entity, even when that entity is not the immediate provider of trade line content, makes its conduct objectively reasonable. No jury could rightly conclude that the argument of "everyone else did it that way" is objectively reasonable. *See Van Straaten v. Shell Oil Prods. Co. LLC*, 678 F.3d 486, 489 (7th Cir. 2012) ("'Everyone knows' is no substitute for support in the text.").[12]

---

[12] Moreover, even if such an industry-standard practice could provide a reasonable explanation for Experian's conduct, the parties dispute the industry standard. Contrary to Experian's expert testimony that consumer reporting agencies customarily list only the creditor as a source of information, Dreher's expert claims that the industry's understanding of "'source' has always meant the 'furnisher' who actually submitted the credit trade line to the consumer reporting agency." Pl.'s Brief, Ex. 23 ¶ 8. Dreher also presents evidence suggesting that Experian's own employees initially offered to code the trade lines to include both Advanta and CardWorks and

15

No jury could find Experian's intentional omission of CardWorks was objectively reasonable. The Court concludes that a jury would find the opposite: Experian's interpretation of "sources of information" to include any variety of entities *other* than the one that actually provided the information is objectively *un*reasonable. Accordingly, the Court denies Experian's motion for summary judgment and grants Dreher's motion as it relates to willfulness liability.

### C. Accuracy under § 1681i

Finally, Dreher moves for summary judgment on the accuracy element of his individual claims against Experian. Section § 1681i describes how a consumer reporting agency should respond to a consumer's dispute regarding the completeness or accuracy of information in the consumer's credit report. Dreher alleges four claims under this section.[13] As relevant to those claims, the Act states:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . .

15 U.S.C. § 1681i(a)(1)(A). As a threshold matter, "a consumer who brings a § 1681i failure to reinvestigate claim must first show that his credit file contains inaccurate or incomplete information." *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 451 (E.D. Va. 2009) (quotation marks and citation omitted); *see also DeAndrade v. Trans Union, LLC*, 523 F.3d 61, 67 (1st Cir.

---

only excluded CardWorks when instructed to do so. Pl.'s Brief, Exs. 16-19. The Court could not grant summary judgment based on industry-standard practice, even if Experian's version provided a reasonable basis for its conduct. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

[13] Dreher brings Counts IV, V, VI, and VII individually against Experian for various violations of 15 U.S.C. § 1681i.

2008) ("[W]ithout a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail.").

According to Dreher, the evidence establishes conclusively that Experian inaccurately reported that Dreher took out the Advanta credit card. But the record presented to the Court gives directly conflicting accounts as to whether Dreher agreed to be liable on the Advanta account. As it turns out, the "scoundrel" this Court referred to in a previous opinion as having taken out the credit card in Dreher's name was Dreher's own cousin, Todd Apfel. Apparently, Apfel took out the card to cover business expenses for his bowling alley in Indiana. The parties dispute whether Dreher agreed to allow Apfel to take the card out in his name. If Dreher did allow it, then his claims requiring inaccuracy must fail.

Dreher states that no witness or evidence points to a conclusion that he "signed" or "agreed to pay the credit card which is the subject of this litigation." Pl.'s Brief 31. But Apfel's deposition testimony suggests that Dreher provided him with the documents and permission needed to take the Advanta account out in Dreher's name. *See* Pl.'s Brief, Ex. 31 at 40, 85-86, 181-82. An October 2012 sworn affidavit from Apfel states the same. *See* Pl.'s Brief, Ex. 36 ¶ 8. Dreher tries to minimize these facts by pointing to a September 2013 affidavit sworn out by Apfel that essentially recants his prior testimony and claims Dreher never applied for or used the Advanta credit card. *See* Pl.'s Brief, Ex. 35 ¶¶ 7-8. According to Dreher, Apfel's withdrawal of the previous affidavit leaves no genuine issue of material fact regarding the accuracy of Dreher's credit report. But Apfel's credibility clearly is at issue.

Summary judgment "may not be invoked where, as here, the affidavits present conflicting versions of the facts which require credibility determinations." *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979). The determination of the accuracy element of Dreher's individual

claims hinges on "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," responsibilities that belong to a jury. *Anderson*, 477 U.S. at 255.

Apfel's shaky testimony aside, Experian points to other evidence that suggests Dreher knew of the Advanta account, including an e-mail in which Dreher told his background investigator that he had the "bank records that show payments being made every month." Def.'s Opp'n Brief 24. Dreher argues that he simply wanted to minimize the issue for his background investigator because he worried about not being granted a security clearance, Pl.'s Reply Brief 21, but the factual inference must be drawn in favor of Experian. *See Diebold*, 369 U.S. at 655. Because the inaccuracy of Dreher's credit report is not beyond dispute, the Court denies Dreher's motion for summary judgment on the accuracy element of his individual claims.

### III. <u>CONCLUSION</u>

For the reasons set forth above, the Court denies Experian's motion for partial summary judgment and grants Dreher's motion for partial summary judgment on the willfulness liability issue. The Court denies Dreher's motion for partial summary judgment on the accuracy element of his individual claims.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

Date: <u>December 3, 2014</u>
Richmond, Virginia

/s/ 
John A. Gibney, Jr.
United States District Judge

18